## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **DONDERRIOUS WILLIAMS,** | **Case No.: 2:23-cv-00406-RAH-SMD** |
| **Plaintiff,** | |
| **v.** | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| **JEREMY PELZER, MICHAEL JONES, STEVEN PARKER, CHRISTOPHER COTTLES, C. ALLEN, F. ALLEN, THOMAS HINES, JOHN KETTEMAN, DEMETRIUS CHARLEY, C. SIMPSON, LUTHER SMITH, DEBORAH TONEY, WILLIAM STREETER, JOHN HAMM.** | |
| **Defendants.** | |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 2

PROCEDURAL HISTORY ............................................................................................... 3

LEGAL STANDARD ........................................................................................................ 4

ARGUMENT ..................................................................................................................... 5

   I.      Plaintiff Sufficiently Sets Forth a Retaliation Claim ....................................... 5

      A.     Defendants Streeter, Toney, and Hamm are Subject to Supervisory Liability........... 11

      B.     Defendants Are Not Entitled to Qualified Immunity for Retaliation ........................ 14

   II.     Plaintiff Voluntarily Withdraws His Free Exercise Claim Under Section 1983............ 18

   III.    Plaintiff Has Stated a Claim Against Pelzer and Jones for Violating His Right to Counsel ............................................................................................................ 18

      A.     Defendants Fail to Meet Their Burden of Showing the Claim is Insufficiently Pleaded 19

      B.     Pelzer and Jones Are Not Entitled to Qualified Immunity ........................................ 25

   IV.    Plaintiff Sufficiently Sets Forth an Excessive Force Claim ........................................... 26

      A.     Plaintiff Has Adequately Pled the Subjective Element ............................................... 29

      B.     Plaintiff Has Adequately Pled the Objective Element................................................. 32

      C.     Defendants Are Not Entitled to Qualified Immunity ................................................. 33

   V.     Plaintiff Has Stated a Claim Against the Supervisory Defendants for Failure to Protect 34

      A.     The Complaint Alleges That the Count V Defendants Had Notice of a History of Widespread Use of Excessive Force at Limestone, And Failed to Correct It...................... 36

      B.     Plaintiff Pleads Facts Supporting an Inference that Pelzer Directed His Subordinates to Commit Excessive Force Against Plaintiff, or That He Knew They Would Do So and Failed to Stop Them ................................................................................................ 42

      C.     Defendants Are Not Entitled to Qualified Immunity ................................................. 43

   VI.    Plaintiff has Stated a Failure-to-Intervene Claim Against the Count VI Defendants .... 47

      A.     Allegations Relating to Defendant Pelzer .................................................................. 49

      B.     Allegations Relating to Defendant Hines .................................................................. 50

      C.     Allegations Relating to the Excessive Force Defendants ........................................... 51

      D.     None of the Count VI Defendants Are Entitled to Qualified Immunity ................... 53

   VII.   Plaintiff Has Sufficiently Set Forth a Deliberate Indifference Claim Regarding the February 5, 2022 Assault ............................................................................................... 56

      A.     The Supervisory Defendants Are Subject to Supervisory Liability ........................... 59

      B.     Defendants Are Not Entitled to Qualified Immunity ................................................. 61

VIII.    Plaintiff Has Sufficiently Set Forth a Racial Discrimination Claim ............................. 62

    A.    Defendants Are Not Entitled to Qualified Immunity for Race Discrimination.......... 67

IX.    Plaintiff Sufficiently Sets Forth a Religious Discrimination Claim............................. 68

    A.    Defendants Are Not Entitled to Qualified Immunity ................................... 70

X.    Plaintiff Sufficiently Sets Forth a Due Process Claim ...................................... 71

    A.    Defendants Fail to Show That Plaintiff's Claim is Insufficiently Pleaded, And Instead Seek Refuge in an Incorrect Reading of *Edwards v. Balisok* ............................... 72

    B.    Defendants Are Not Entitled to Qualified Immunity ................................... 75

XI.    Plaintiff Adequately Pled a Deliberate Indifference Claim Regarding the Use of Pepper Spray on People in Solitary Confinement.......................................................... 78

    A.    Excessive Force Defendants ....................................................... 80

    B.    Supervisory Defendants.......................................................... 80

    C.    Defendants Are Not Entitled to Qualified Immunity ................................... 84

XII.    All of Plaintiff's Claims Accrued Within the Statute of Limitations............................. 85

XIII.    Defendants Are Not Entitled to Eleventh Amendment Immunity from Claims for Prospective Relief in Their Official Capacity.......................................................... 86

CONCLUSION.......................................................................... 87

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ray v. Spirit Airlines, Inc*
836 F.3d 1340, 1347-48 (11th Cir. 2016) .................................................................. 5

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................................................ 5, 41

*Watts v. Fla. Int'l Univ*
495 F.3d 1289 (11th Cir. 2007) ................................................................................. 5

*Brophy v. Jiangbo Pharms. Inc*
781 F.3d 1296 (11th Cir. 2015) ................................................................................. 5

*Farrow v. West*
320 F.d 1235 (11th Cir. 2003) .................................................................................. 6

*Smith v. Fla. Dep't of Corr*
731 F.3d 1059 (11th Cir. 2013) ................................................................................. 6

*Cain v. Lane*
857 F.2d 1139 (7th Cir. 1988) ................................................................................... 6

*Wright v. Newsome*
795 F.2d 964 (11th Cir. 1986) ........................................................................... *passim*

*Marbury v. Estes,* No. 4:16-cv-01152-AKK-JHE
2017 U.S Dist. LEXIS 72734 (N.D. Ala. May 1, 2017) ........................................... 6

*Thomas v. Evans*
880 F.2d 1235 (11th Cir. 1989) ................................................................................. 6

*Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*
637 F.3d 1178 (11th Cir. 2011) ................................................................................. 5

*Williams v. Corr. Officer Radford*
64 F.4th 1185 (11th Cir. 2023) .......................................................................... *passim*

*Fitzpatrick v. Koch Foods of Ala., LLC,* No. 2:19-cv-553-JTA
2022 U.S Dist. LEXIS 25802 (M.D. Ala. Feb 14, 2022) ...................................... 11

*Dunn v. Dunn*
219 F. Supp. 3d 1100 (M.D. Ala. 2016) .................................................................. 10

*Bennett v. Hendrix*
423 F.3d 1247 (11th Cir. 2005) ......................................................................... 7, 15

*Ga. Ass'n of Educators v. Gwinnett County Sch. Dist.*
856 F. 2d 142 (11th Cir. 1988) ................................................................................ 15

*Hope v. Pelzer*
536 U.S. 730 ...................................................................................................... *passim*

*United States v. State of Alabama,* No. 2:20-cv-01971-JHE
(N.D. Ala. 2020) ...................................................................................................... 18

*Wolff v. McDonnell*
418 U.S. 539 (1974) .......................................................................................... *passim*

*Martinez v. Court of Appeal of California, Fourth Appellate Dist.*

528 U.S. 152 (2000) ................................................................................................ 20
*Stanley v. Vining*
602 F.3d 767 (6th Cir. 2010) .................................................................................. 20
*Al-Amin v. Smith*
511 F.3d 1317 (11th Cir. 2008) ......................................................... 21, 22, 23, 25
*Taylor v. Sterrett*
532 F.2d 462 (5th Cir. 1976) ............................................................................ 22, 25
*Pittman v. Tucker*
213 Fed. Appx. 867 (11th Cir. 2007) ........................................................................ 6
*Cruz v. Beto*
405 U.S. 319 (1972) ........................................................................................... *pessim*
*Moton v. Cowart*
631 F. 3d 1337 (11th Cir. 2011) .............................................................................. 7
*Smith v. Mosley*
532 F. 3d 1278 (11th Cir. 2008) .............................................................................. 7
*Lozman v. City of Riviera Beach*
39 F. Supp. 3d 1392 (S.D. Fla. 2014) ..................................................................... 8
*Wildberger v. Bracknell*
869 F.2d 1467 (11th Cir. 1989) ......................................................................... 8, 15
*Williams v. Radford,* No. 18-cv-14107
2018 U.S Dist. LEXIS 142856 (S.D. Fla. Aug. 21, 2018) ................................. 8, 9, 12
*Cottone v. Jenner*
326 F. 3d 1352 (11th Cir. 2003) ............................................................. 11, 12, 35
*Council v. Hamm,* 2:23-cv-00658
(M.D. Ala.), Doc 1 (filed Nov. 10, 2023) ............................................................ 13
*Crocker v. Beatty*
995 F.3d 1232 (11th Cir. 2021) .............................................................................. 14
*Mullenix v. Luna*
577 U.S. 7 (2015) ................................................................................................. 14
*Brosseau v. Haugen*
543 U.S. 194 (2004) ............................................................................................. 14
*Ford v. Coleman*
2015 U.S. Dist. LEXIS 67788 (M.D. Fla. May 26, 2015) ..................................... 23
*Smith v. Bartalotta*
2009 U.S. Dist. LEXIS 30932 (M.D. Fla. Apr.13, 2009) ...................................... 23
*Superior Energy Servs., LLC v. Boconco, Inc.*
2010 U.S. Dist. LEXS 3019 ................................................................................. 24
*Lowe v. Metabolife Int'l*
206 F.Supp.2d 1195 (S.D. Ala 2002) .................................................................... 24
*Guajardo v. Estelle*
580 F.2d 748 (5th Cir. 1978) ................................................................................. 25
*Safford Unified School Dist. No. 1 v. Redding*
557 U.S. 364 (2009) ............................................................................................... 26

*Skrtich v. Thornton*
    280 F.3d 1295 (11th Cir. 2002) ......................................................... 28, 34, 46
*Fundiller v. City of Cooper City*
    777 F.2d 1426 (11th Cir. 1985)................................................................*passim*
*Sconiers v. Lockhart*
    946 F.3d 1256 (11th Cir. 2020) ........................................................................ 29
*Ort v. White*
    813 F.2d 318 (11th Cir. 1987) ......................................................................... 29
*Whitley v. Albers*
    475 U.S. 312 (1986) ........................................................................................ 29
*Danley v. Allen*
    540 F.3d 1298 (11th Cir. 2008) ...............................................................*passim*
*Randall v. Scott*
    610 F.3d 701 (11th Cir. 2010) ......................................................................... 31
*Kingsley v. Hendrickson*
    576 U.S. 389 (2015) ........................................................................................ 31
*Bozeman v. Orum*
    422 F.3d 1265 (11th Cir. 2005) ................................................................. 31, 61
*Carter v. McCullen,* No. 22-10499
    2023 U.S. App. LEXIS 24795 (11th Cir. Sep. 19, 2023) ............................. 32
*Davis v. Locke*
    936 F.2d 1208 (11th Cir. 1991) ................................................................. 32, 33
*Harris v. Chapman*
    97 F.3d 499 (11th Cir. 1996) .......................................................................... 32
*Johnson v. Breedon*
    280 F.3d 1308 (11th Cir. 2002) ...................................................................... 33
*Dobbins v. Giles*
    451 F. Appx 849 (11th Cir. 2012) ................................................................. 34
*Cox v. Nobles*
    15 F.4th 1350 (11th Cir. 2021) ....................................................................... 34
*Marbury v. Warden*
    936 F.3d 1227 (11th Cir. 2019) ...................................................................... 34
*Daniels v. Felton*
    823 F. Appx 787 (11th Cir. 2020) .................................................................. 35
*Gonzalez v. Reno*
    325 F.3d 1228 (11th Cir. 2003) ...............................................................*passim*
*Bell Atlantic Corp v. Twombly*
    550 U.S. 544 (2007)..................................................................................*passium*
*Terrell v. Smith*
    668 F.3d 1250 ()............................................................................................. 43
*Lewis v. City of W. Palm Beach*
    561 F.3d 1288 (11th Cir. 2009) ...................................................................... 43
*Mercado v. City of Orlando*

407 F.3d 1152 (11th Cir. 2005) ................................................................. 43
*Nelson v. Tompkins*
2024 U.S. App. LEXIS 337 (11th Cir. Jan 25, 2024)................................... 43
*Farmer v. Brennan*
511 U.S. 825 (1994)............................................................................. 44, 46
*Jacoby v. Mack*
755 Fed. Appx. 888 (11th Cir. 2018).......................................................... 44
*Johnson v. Kosanovich*
2021 U.S. Dist. LEXIS 173985 (N.D. Fla., Aug. 24. 2021)........................ 44
*Gowins v. Bland*
2020 U.S. Dist. LEXIS 271549 (N.D. Fla., Oct. 26, 2020)......................... 45
*Caldwell v. Warden, FCI Talladega*
748 F.3d 1090 (11th Cir. 2014) ........................................................... 45, 46
*Brown v. Hughes*
894 F.2d 1533 (11th Cir. 1990) ................................................................. 46
*Taylor v. Hale*
909 F. Supp. 2d 1320 (N.D. Ala. 2012)...................................................... 46
*Johnson v. White*
725 F. Appx. 868 (11th Cir. 2018) ....................................................... 47, 55
*Sebastian v. Ortiz*
918 F.3d 1301 (11th Cir. 2019) ................................................................. 47
*Priester v. City of Riveria Beach*
208 F.3d 919 (11th Cir. 2000) ................................................................... 48
*Ensley v. Soper*
142 F.3d 1402 (11th Cir. 1998) ................................................................. 48
*Murphy v. Taupin*
159 Fed. Appx. 945 (11th Cir. 2005).......................................................... 48
*Patel v. Lanier County, Ga*
969 F.3d 1173 (11th Cir. 2000) ................................................................. 48
*Sabir v. Cardarelli*
2022 U.S. Dist. LEXIS 156238 (S.D. Fla., Aug. 30, 2022) .................. 50, 52
*Files v. Pettway*
2024 U.S. Dist. LEXIS 1076 (N.D. Ala. Jan. 3, 2024).............................. 50
*Johnson v. Boyd*
701 Fed. Appx. 841 (11th Cir. 2017).......................................................... 54
*Byrd v. Clark*
783 F.2d 1002 (11th Cir. 1986) ................................................................. 54
*Ledea v. Metro Dade County Police Dept.*
681 Fed. Appx. 728 (11th Cir. 2017).......................................................... 54
*Harris v. Chanclor*
537 F.2d 203 (5th Cir. 1976) .................................................................... 55
*Hill v. Dekalb Regional Youth Detention Ctr*
40 F.3d 1176 (11th Cir. 1994) .................................................................. 56

*McElligott v. Foley*
  182 F.3d 1248 (11th Cir. 1999) ............................................................................ 57, 61
*McNeeley v. Wilson*
  649 F. Appx 717 (11th Cir. 2016) ...................................................................... 58, 62
*Myrick v. Fulton City*
  69 F.4th 1277 (11th Cir. 2023) ............................................................................. 59, 81
*Mathews v. Crosby*
  480 F.3d 1265 (11th Cir. 2007) ............................................................................ 59, 81
*Greason v. Kemp*
  891 F.2d 829 (11th Cir. 1990) .............................................................................. 60, 62
*Jones v. Ray*
  279 F.3d 944 (11th Cir. 2001) .................................................................................... 63
*Damiano v. Fla. Parole & Prob. Comm'n*
  785 F.2d 929 (11th Cir. 1986) .................................................................................... 63
*Campbell v. Rainbow City, Ala.*
  434 F.3d 1306 (11th Cir. 2006) .................................................................................. 63
*Grider v. City of Auburn, Ala.*
  618 F.3d 1240 (11th Cir. 2010) .................................................................................. 63
*Johnson v. California*
  543 U.S. 499 (2005) .................................................................................................... 63
*Chames v. Wade,* No. 1:21-cv-1571-CLM
  2023 U.S. Dist. LEXIS 137776 (N.D. Ala. Aug. 8, 2023) ........................................ 64
*Yick Wo v. Hopkins*
  118 U.S. 356 (1886) ............................................................................................... 65, 66
*Brown v. City of Fort Lauderdale*
  923 F.2d 1474 (11th Cir. 1991) .................................................................................. 67
*Sweet v. Sec'y, Dep't of Corr.*
  467 F.3d 1311 (11th Cir. 2006) .................................................................................. 68
*Lofton v.Williams,* No. CV415-146
  2016 U.S. Dist. LEXIS 3195 (S.D. Ga. Jan. 11, 2016) ........................................ 69, 70
*Heck v. Humphrey*
  512 U.S. 477 (1994) .................................................................................................... 72
*Edwards v. Balisok*
  520 US. 641 (1997) .......................................................................................... 72, 73, 74
*Osterback v. Crosby*
  2003 U.S. Dist. LEXIS 13803 (N.D. Fla., Mar. 5, 2003) .......................................... 73
*Huey v. Stine*
  230 F.3d 226 (6th Cir. 2000) ...................................................................................... 73
*Muhammad v. Close*
  540 U.S. 749 (2004) .................................................................................................... 73
*Wilkerson v. Wheeler*
  772 F.3d 834 (9th Cir. 2014) ...................................................................................... 73
*Jenkins v. Haubert*

179 F.3d 19 (2d Cir. 1999) ................................................................ 74
*Brown v. Plaut*
327 U.S. App. D.C. 313 (D.C.Cir. 1997) ....................................... 74
*DeWalt v. Carter*
224 F.3d 607 (7th Cir. 2000) .......................................................... 74
*Leamer v. Fauver*
288 F.3d 532 (3rd Cir. 2002) .......................................................... 74
*Ramirez v. Galaza*
334 F.3d 850 (9th Cir. 2003) .......................................................... 74
*Haines v. Kerner*
404 U.S. 519 (1972)......................................................................... 75
*Wilwording v. Swenson*
404 U.S. 249 (1971)......................................................................... 75
*Screws v. United States*
325 U.S. 91 (1945)........................................................................... 75
*Armstrong v. Manzo*
380 U.S. 545 (1965).......................................................................... 75
*Kirby v. Siegelman*
195 F.3d 1285 (11th Cir. 1999) ...................................................... 76
*O'Bryant v. Finch*
637 F.3d 1207 (11th Cir. 2011) ...................................................... 76
*Superintendent v. Hill*
472 U.S. 445 (1985).......................................................................... 76
*Williams v. Fountain*
77 F.3d 372 (11th Cir. 1996) ................................................... 76, 78
*Magluta v. Samples*
375 F.3d 1269 (11th Cir. 2004) ............................................... 77, 78
*Thomas v. Bryant*
614 F.3d 1288 (11th Cir. 2010) ............................................. *passim*
*Townsend v. Jefferson County*
601 F.3d 1152 (11th Cir. 2010) ...................................................... 78
*Thomas v. McNeil,* No. 3:04-cv-917-J-32JRK
2009 U.S. Dist. LEXIS 1208 ().......................................................... 79
*Chandler v. Crosby*
372 F.3d 1278 (11th Cir. 2004) ...................................................... 79
*Helling v. McKinney*
509 U.S. 25 (1993)............................................................................ 79
*Wallace v. Kato*
549 U.S. 384 (2007).......................................................................... 85
*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*
522 U.S. 192 (1997).......................................................................... 85
*Mullinax v. McElhenney*
817 F.2d 711 (11th Cir. 1987) ........................................................ 85

*Owens v. Okure*
    488 U.S. 235 (1989) ................................................................ 85
*Mitchum v. Foster*
    407 U.S. 225 (1972) ................................................................ 86
*Ex Parte Young*
    209 U.S. 123 (1909) ................................................................ 87
*Scott v. Taylor*
    405 F.3d 1251 (11th Cir. 2005) ............................................... 87
*Hunt v. Myers,* No. 12-00752-WS-B
    2015 U.S Dist. LEXIS 150880 (S.D. Ala. Sep. 30, 2015) ............................ 87


**FEDERAL STATUTES**
42 U.S.C. § 1983 . .......................................................................... *passim*


**RULES**
Fed. R. Civ. P. 8 . ........................................................................... 8, 27
Fed. R. Civ. P. 12(b)(6) . ................................................................ *passim*

# INTRODUCTION

Plaintiff Donderrious Williams brings this 42 U.S.C. § 1983 action to vindicate his constitutional rights to speak out against Defendants' misconduct, freely exercise his religion, and access counsel. Plaintiff challenges Defendants' retaliation, racial and religious discrimination, excessive force, due process violations, and deliberate indifference to his medical needs as well as the substantial risks of harm currently present within the ADOC. Plaintiff's Second Amended Complaint (Doc. 57) pleads claims for relief under the First, Sixth, Eighth, and Fourteenth Amendments, which Defendants have moved to dismiss. (Doc. 59).

Plaintiff has sufficiently stated claims for relief for each of his counts, meeting and exceeding the appropriate, low threshold at the Rule 12(b)(6) stage, contrary to Defendants' assertions and myriad misstatements of caselaw in their motion to dismiss. Moreover, Defendants' actions have violated clearly established caselaw and frequently been antithetical to human dignity, and therefore they are not entitled to qualified immunity. All of Plaintiff's claims accrued within the applicable statutes of limitations and are therefore not time-barred. Finally, Defendants are not entitled to sovereign immunity as Plaintiff seeks prospective relief from their Defendants' unconstitutional patterns and practices rather than solely monetary damages.

Accordingly, the Court should deny Defendants' Motion to Dismiss in its entirety and allow this matter to proceed to discovery.

## FACTUAL BACKGROUND

Plaintiff Donderrious Williams is a former Islamic minister, a man of sincerely-held religious convictions, and a leader in the Black and Muslim communities within the Alabama Department of Corrections ("ADOC"). (Doc. 57 ¶¶ 1, 18, 20). The named Defendants are all current or former correctional employees of Limestone Correctional Facility ("Limestone"), the ADOC prison where Plaintiff was incarcerated from December 2018 to October 2022. *Id*. ¶¶ 2-15. This lawsuit stems from a series of unconstitutional acts committed against Plaintiff by the Defendants during his term of incarceration at Limestone, including acts of grossly excessive force of the exact sort earlier described by the United States Department of Justice in a pair of landmark Reports documenting officers' habitual, unjustified use of excessive force against male inmates – particularly inmates who peaceably refuse to obey an officer's command – at Limestone and other ADOC prisons. *Id.* ¶¶ 21-36. During Plaintiff's confinement at Limestone, Defendants further discriminated against and verbally abused him on the basis of his race and religion, *id.* ¶¶ 1, 18, 20, 36-55, 96-155, 199; retaliated against him for engaging in protected conduct by, *inter alia,* manufacturing a basis to subject him to solitary confinement, destroying legal correspondence from his attorney, subjecting him to a sham disciplinary hearing and extending his unlawful sentence to solitary confinement, *id.* ¶¶ 1, 18, 20, 34, 36-55, 56-86, 96-155; and used excessive force

against him while forcibly shearing his hair and beard, which he wore long in keeping with his religious beliefs.  *Id.* ¶¶ 96-155.

Given the significant length of both the operative Complaint and the legal arguments below, Plaintiff has elected not to produce a full factual background here. At each separate Count discussed below, Plaintiff offers a comprehensive overview of the factual allegations contained in the Second Amended Complaint that support that Count, which Plaintiff hopes will allow the Court to fully understand the factual basis for each claim, and which will hopefully counteract Defendants' numerous attempts to minimize or otherwise misrepresent Plaintiff's allegations.

## PROCEDURAL HISTORY

On June 30, 2023, Plaintiff filed the original Complaint in this action, asserting thirteen federal constitutional and statutory claims against the sixteen Defendants identified in the caption.  (Doc. 1).

Defendants moved to dismiss the original Complaint on November 17, 2023. (Doc. 30).  That motion was mooted by the Court's granting Plaintiff leave to file a First Amended Complaint correcting the spelling of one Defendant's name, which Plaintiff did on December 12, 2023.  (Doc. 49).  Defendants subsequently renewed their motion to dismiss on December 21, 2023.  (Doc. 52).  That motion was again mooted by Plaintiff's filing a Second Amended Complaint with leave of Court, on January 11, 2024.  (Doc. 57).  The Second Amended Complaint reflects Plaintiff's

first substantive amendments to the original Complaint and also streamlines Plaintiff's suit by removing two causes of action and two Defendants listed in the First Amended Complaint. *Id.*

On January 25, 2024, Defendants filed the instant motion to dismiss Plaintiff's Second Amended Complaint. (Doc. 59).

In reviewing Defendants' motion, Plaintiff's counsel recognized for the first time that counsel had inadvertently removed Plaintiff's free-exercise claim under the Religious Land Use and Institutionalized Persons Act from the Second Amended Complaint instead of Plaintiff's free-exercise claim under 42 U.S.C. § 1983, as they intended. Consequently, on February 5, 2024, Plaintiff moved the Court for leave to file a Third Amended Complaint for the limited purpose of replacing Plaintiff's Section 1983 free-exercise claim with the correct, statutory free-exercise claim. (Doc. 61). Defendants opposed the motion. *Id.* On February 12, 2024, the Court ordered Defendants to file a brief showing cause why Plaintiff's requested relief should not be granted. (Doc. 62). On February 15, 2024, Defendants filed their response to Plaintiff's motion for leave to amend, which, at the time of this writing, remains pending. (Doc. 63).

In the interim, Plaintiff now responds to Defendants' motion to dismiss Plaintiff's Second Amended Complaint.

## LEGAL STANDARD

4

A pleading must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347-48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that "succeeds in identifying facts that are suggestive enough to render [elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).[1]

## ARGUMENT

### I.    Plaintiff Sufficiently Sets Forth a Retaliation Claim

Count I alleges that Defendants Pelzer, Jones, Parker, Cottles, C. Allen, F. Allen, Hines, Ketteman, Charley, Simpson, Smith, Toney, Streeter, and Hamm

---

[1] When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015). If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683–84 (11th Cir. 2001)).

retaliated against him on multiple occasions for engaging in multiple activities protected by the First Amendment. "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). To prevail on a claim for retaliation under the First Amendment, an incarcerated person must establish that "(1) [they] engaged in constitutionally protected conduct; (2) the defendant's retaliatory act adversely affected the protected conduct; and (3) there is a causal connection between the retaliatory act and the adverse effect on the conduct." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013). Such a causal connection may be shown by a chronology of events that create a plausible inference of retaliation. *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988). *See also Wright v. Newsome*, 795 F.2d 964 (11th Cir. 1986) (prisoner stated a retaliation claim and a claim of denial of access to the courts based on the confiscation of legal materials); *Marbury v. Estes*, No. 4:16-cv-01152-AKK-JHE, 2017 U.S. Dist. LEXIS 72734, at *23-24 (N.D. Ala. May 1, 2017); *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989).

Plaintiff offers sufficient specific factual allegations that he engaged in protected activity. First, filing a grievance in a prison is a protected activity under the First Amendment. *Pittman v. Tucker*, 213 Fed. Appx. 867, 870 (11th Cir. 2007). As documented in the Second Amended Complaint, Plaintiff has filed multiple grievances and made several complaints about the conditions in Limestone. (Doc.

57 ¶¶ 157-167). Plaintiff also engaged in the protective activity of expressing his religious beliefs. *Id.* at ¶¶ 97. 98. *See, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972) (First and Fourteenth Amendments protect right of incarcerated people to free exercise of religion).

Second, "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). In the Eleventh Circuit, "placing an inmate in disciplinary/segregated confinement constitutes an adverse action for purposes of a First Amendment retaliation claim." *Williams v. Corr. Officer Radford*, 64 F.4th 1185, 1193 (11th Cir. 2023). Defendants Pelzer and Jones placed Plaintiff in disciplinary segregation. Defendants Pelzer, Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, and Simpson organized and/or participated in the use of excessive force in retaliation against Plaintiff for expressing his religious beliefs. (Doc. 57 ¶¶ 96-154).

Third, [t]o establish causation, a plaintiff need only "show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights." *Moton v. Cowart*, 631 F. 3d 1337, 1341 (11th Cir. 2011) (citing *Smith v. Mosley*, 532 F. 3d 1270, 1278 (11th Cir. 2008)). As is characteristic of their motion, Defendants confuse the standard applicable at a motion to dismiss with the standard for summary judgment. There is no requirement that plaintiffs

plead, let alone prove, that their speech was the but-for' cause of the alleged retaliatory action. Defendants inappropriately cite a summary judgment decision for the proposition that a "plaintiff must prove that his speech was the 'but-for' cause of the alleged retaliatory action." (Motion at 28) (citing *Lozman v. City of Riviera Beach,* 39 F. Supp. 3d 1392, 1405 (S.D. Fla. 2014) (denying motion for summary judgment on retaliation claim where plaintiff alleged defendants subjected him to multiple arrests and eviction actions and destruction of property in retaliation for a lawsuit he filed against them).

The instant dispute is analogous to binding Eleventh Circuit case law. In *Wright v. Newsome*, the plaintiff alleged that prison officials had confiscated and destroyed his legal materials in retaliation for his past grievances and propensity to sue them. 795 F.2d 964, 968 (11th Cir. 1986). The Eleventh Circuit found this chain of events to create a plausible inference of retaliation. Similarly, in *Wildberger v. Bracknell*, the Eleventh Circuit reversed a dismissal of a complaint where the plaintiff alleged that he had been disciplined because he had filed several grievances in the past. 869 F.2d 1467, 1468 (11th Cir. 1989). Moreover, courses of retaliation can take place over extend periods of time, especially in a context like a prison. In *Williams v. Radford*, the plaintiff alleged that after he complained to an assistant warden about a captain, the captain began to retaliate against him. No. 18-CV-14107, 2018 U.S. Dist. LEXIS 142856, at *13-15 (S.D. Fla. Aug. 21, 2018). First, the

captain told the plaintiff, "you disrespect[ed] me [...] you [are] going to try to go over my head?" and the captain placed the plaintiff in disciplinary segregation. *Id.* The plaintiff filed a grievance against the captain for that. *Id.* Then, about six years later, the captain inspected the plaintiff's cell and threatened to take the plaintiff 'to jail.' *Id.* A month after that, a different correctional officer came to the plaintiff's cell and searched it and told him to stop filing grievances against the captain. Later that month, four correctional officers allegedly planted a knife under the plaintiff's pillow as a pretext to take him to disciplinary confinement where they assaulted him. Despite the six-year period during which this course of retaliation occurred, the court still found a claim of retaliation had been adequately pled. *Id* at *18. Reviewing this case on appeal of a grant of summary judgment, the Eleventh Circuit later reversed, finding the plaintiff had made the proper allegations. *Williams*, 64 F.4th at 1193.

Plaintiff alleged that after he complained to Defendant Pelzer about his racism,[2] Defendant Pelzer began a course of retaliation against Plaintiff, during which he and other defendants repeatedly subjected Plaintiff to race- and religion-based verbal abuse, harassment, and unjustified violent force, as well as extended

---

[2] To the extent that Defendants argue that Plaintiff's original December 2018 complaint about racism was not filed officially as an administrative grievance, it must be noted that "Alabama is an outlier; it is one of the few 'state penal institutions [that do] not have an administrative remedy program to address prison conditions, and thus there are no available administrative remedies to exhaust' with respect to many conditions-related claims." *Dunn v. Dunn*, 219 F. Supp. 3d 1100, 1113 (M.D. Ala. 2016) (quoting *Alexander v. Hawk*, 159 F.3d 1321, 1327 (11th Cir. 1998)).

and unjustified confinement in Limestone's administrative segregation, which continued throughout Plaintiff's period of incarceration at Limestone. (Doc. 57 ¶40). Specifically, Defendant Pelzer's course of retaliation included destroying Plaintiff's legal mail; denying him due process along with Defendants Jones, Streeter, and Toney; and sentencing him to solitary confinement. *Id.* ¶155. Defendant Pelzer also allowed Defendants Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, Smith, and Simpson to assault Plaintiff and violate his religious and spiritual beliefs. *Id.* ¶155. Moreover, in the weeks leading up to the use of excessive force against Plaintiff, Defendant Smith had told Plaintiff to shave his hair. *Id.* ¶101. Plaintiff explained that he would not shave his hair because it was an expression of his religion and cultural beliefs. *Id.* ¶102. A few weeks later, in retaliation, Defendants Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, Smith, and Simpson subjected Plaintiff to grossly excessive force through the use of pepper spray. *Id.* ¶¶ 102-154. Each of these issues was causally connected.

In *Fitzpatrick v. Koch Foods of Ala., LLC*, this Court found that the plaintiff had sufficiently alleged retaliation by alleging that after defendants "stereotyped and ridiculed her as a voodoo practitioner because she is African, […] she complained of this conduct[,…] and as a result, Defendant terminated her employment." There, the plaintiff stood up for her right to be free of discrimination and the Court found that the plaintiff had "sufficiently alleged discrimination on the basis of race to state

a cognizable retaliation claim." No. 2:19-cv-553-JTA, 2022 U.S. Dist. LEXIS 25802, at *11 (M.D. Ala. Feb. 14, 2022) (using the same framework for a §1981 case as a §1983 case). Here, Plaintiff has also stood up for his right to be free of discrimination, by complaining about race and religion discrimination. (Doc. 57 ¶ 40) (complaining about Defendant Pelzer's racial classification), *id.* ¶112 (plaintiff peacefully protested discriminatory actions to cut his hair in violation of his religious and African cultural beliefs). Defendants have retaliated against him for doing so. *Id.* at ¶155 (destroying legal mail, sentencing to solitary confinement, use of excessive force). Accordingly, Plaintiff has adequately pled that Defendants retaliated against him for expressing his religious beliefs.

A.    Defendants Streeter, Toney, and Hamm are Subject to Supervisory Liability

The Eleventh Circuit has held that supervisors who are not alleged to have personally participated in the constitutional violation which gave rise to the Section 1983 action may nonetheless be liable for a constitutional deprivation "when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F. 3d 1352, 1360-61 (11th Cir. 2003). Such a causal connection may be established: (1) by a history of widespread abuse which puts the supervisor on notice of the need to correct the deprivation and he fails to do so, (2) when a supervisor's "custom or policy ... result[s] in deliberate

indifference to constitutional rights," or (3) *"when [the] facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."* *See Cottone*, 326 F. 3d at 1360-61. (citations and internal quotation marks omitted) (emphasis added).

Here, a causal connection is created by the first prong. In *Williams v. Radford*, the court found that where the plaintiff made a "plausible showing that [the captain] exhibited a prolonged campaign of harassment to intimidate or otherwise punish [p]laintiff for filing grievances," the plaintiff had successfully pled a supervisory liability deliberate indifference claim. *Williams*, 2018 U.S. Dist. LEXIS 142856 at *28 . Plaintiff has shown that Defendant Pelzer waged a prolonged campaign of harassment to punish Plaintiff for filing grievances and engaging in other protected activity.

Plaintiff has also alleged that the ADOC has a pattern, practice, and custom of retaliating against people who assert their rights. (Doc. 57 ¶155). Plaintiff additionally references complaints made by other incarcerated people who have alleged several incidents of "retaliation by Lt. Pelzer or others, including assaults […] by correctional officers followed by fabricated grounds to place [people] in solitary confinement as retaliation and as a way to limit and chill […] organizing, advocacy, and litigation efforts against them." (Doc. 57 ¶ 41, n.7) (citing *Council v.*

*Hamm*, Case 2:23-cv-00658 (M.D. Ala.), Doc. 1 (filed Nov. 10, 2023) (detailing Defendant Pelzer's "wide range of criminal and unconstitutional retaliation and violence against Plaintiff Council and other [people incarcerated at] Limestone," preceding Plaintiff's experiences, including excessive force, fabrication of disciplinary charges to hold people in solitary confinement, and use of pepper spray in solitary confinement to chill plaintiff's and others' litigation efforts)).[3] *Council v. Hamm* includes allegations of several incidents of retaliation at Limestone including multiple uses of pepper spray and incitements of lethal violence against Black leaders similar to Plaintiff. *Id.*, *Council v. Hamm*, Doc. 1 at 14. The 2020 DOJ Report also addressed the high risk of retaliation people like Plaintiff are subject to and recommended that Defendant Hamm and the ADOC institute policies with explicit prohibitions on "the use of force to retaliate against a prisoner." (Doc. 57-3 at 26). However, Defendants failed to take any necessary action to redress this risk of

---

[3] In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). However, "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, "undisputed" means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). And "a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [this Court] may consider such a document." *Id.* (cleaned up).

retaliation. (Doc. 57 ¶36). Accordingly, Defendants Streeter, Toney, and Hamm are liable under supervisory liability.

      B.    <u>Defendants Are Not Entitled to Qualified Immunity for Retaliation</u>

Defendants' retaliatory actions against Plaintiff violated clearly established law and are therefore not entitled to qualified immunity. The doctrine of qualified immunity can apply in certain circumstances to shield state actors from accountability for their constitutional violations. Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Crocker v. Beatty*, 995 F.3d 1232, 1239 (11th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). A two-pronged test has emerged to determine whether state actors are entitled to qualified immunity. Under the first prong, an officer must have acted within his discretionary authority. As to "the second prong, only decisions of the United States Supreme Court, this Court, or the highest court in a state can 'clearly establish' the law. Because only clearly established law gives an officer "fair notice that her conduct was unlawful," *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004), the Supreme Court has held that the contours of the constitutional right at issue "must be sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

The Eleventh Circuit "has held since at least 1988 that it is 'settled law' that the government may not retaliate against citizens for the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1256 (11th Cir. 2005) (denying motion to dismiss and qualified immunity as to claims that police officers retaliatorily harassed individuals who sought to shrink their power). *See also Ga. Ass'n of Educators v. Gwinnett County Sch. Dist.*, 856 F.2d 142, 145 (11th Cir. 1988) ("The Government may not retaliate against individuals or associations for their exercise of First Amendment rights 'by imposing sanctions for the expression of particular views it opposes.'")).

As of 1984, the Eleventh Circuit had held that the destruction of his possessions and materials can constitute unconstitutional First Amendment retaliation. *Williams v. Corr. Officer Radford*, 64 F.4th 1185, 1192-93 (11th Cir. 2023) (citing *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986)). The Eleventh Circuit also considered the facts in *Wildberger v. Bracknell*, to raise a quite similar constitutional issue as those in *Wright v. Newsome*. 869 F.2d 1467, 1468 (11th Cir. 1989) ("This Court has decided a number of cases dealing with quite similar constitutional issues"). The facts of both of those cases are quite similar to the facts here, where Plaintiff has alleged that he has disciplined for, *inter alia*, filing grievances in the past. (Doc. 57 ¶158-168). Therefore, there is clearly established

caselaw demonstrating that Count I Defendants violated Plaintiff's rights and they are not entitled to qualified immunity.

In *Hope v. Pelzer*, the Supreme Court denied qualified immunity to Sgt. Mark Pelzer and other prison officials at Limestone who had handcuffed an incarcerated person to a hitching post for an extended period of time in retaliation for his refusal to comply with a verbal order. The Court reasoned that

> The obvious cruelty inherent in this practice should have provided [the guards] with some notice that their alleged conduct violated Hope's constitutional protection against cruel and unusual punishment. Hope was treated in a way antithetical to human dignity—he was hitched to a post for an extended period of time in a position that was painful, and under circumstances that were both degrading and dangerous. This wanton treatment was not done of necessity, but as punishment for prior conduct. Even if there might once have been a question regarding the constitutionality of this practice, the [circuit court] precedent … , as well as the DOJ report condemning the practice, put a reasonable officer on notice that the use of the hitching post under the circumstances alleged by Hope was unlawful. The "fair and clear warning" … that these cases provided was sufficient to preclude the defense of qualified immunity at the summary judgment stage.

536 U.S. 730, 745-76. The *Hope* case is instructive for the qualified immunity analysis here for several reasons.

First, *Hope* establishes the principle that officers can still be held liable for violating constitutional rights despite the absence of factually similar caselaw in the Supreme Court or circuit, if the treatment is 'antithetical to human dignity.'

Second, these facts are strikingly similar to those in *Hope* itself, as Plaintiff was also "hitched […] for an extended period of time in a position that was painful,"

and under circumstances that were both degrading and dangerous. Of particular relevance to Plaintiff's retaliation claim, the factual similarity extends to both cases involving retaliatory "punishment for prior conduct." *Hope*, 536 U.S. at 745. Moreover, here as in *Hope,* the officers were put on notice by an earlier "DOJ report condemning the practice[s]" used by the defendant officers, which would have put a reasonable officer on notice that the use of [force] under the circumstances alleged by [the plaintiff] was unlawful. *Id*. at 745-46. Here, of course, Defendants also had significant advance notice of the unconstitutionality of their actions via DOJ reports released in 2019and 2020 about the rampant Eighth Amendment violations being committed by corrections officer throughout ADOC. *See* SAC, Exhs. 1, 2. These reports specifically alleged that correctional officers (1) use excessive force on prisoners who are restrained or who are complaint, (2) unlawfully use force as punishment or retribution, and (3) use chemical spray inappropriately. These allegations formed the basis for a 2020 CRIPA suit by the DOJ against the ADOC, filed in the Northern District of Alabama. *See United States v. State of Alabama,* No. 2:20-cv-01971-JHE (N.D. Ala. 2020).

Third, the Defendants should have been on notice that this type of use of force was unlawful because not only did *Hope* also take place at the same Limestone Correctional Facility, but strikingly, the main defendant, Sgt. Mark Pelzer is the father of the main defendant here, Lt. Jeremy Pelzer. 563 U.S. at 733; (Doc. 57 ¶ 21,

n.1.) Taken together, Defendants had ample notice that their use of force against Plaintiff in retaliation for his actions was unconstitutional. They should therefore be denied qualified immunity.

## II. Plaintiff Voluntarily Withdraws His Free Exercise Claim Under Section 1983

As set forth in Plaintiff's pending Motion for Leave to File Third Amended Complaint (Doc. 61), Plaintiff did not intend to preserve the free exercise claim he brought under Section 1983. Because Plaintiff voluntarily withdraws this claim, he offers no response to the legal arguments proffered at this section of Defendants' motion. In the event that the Court grants Plaintiff leave to file a Third Amended Complaint, Plaintiff will substitute for this claim the free-exercise claim he brought under the Religious Land Use and Institutionalized Persons Act – a claim that his counsel inadvertently removed from the Second Amended Complaint instead of the Section 1983 claim, in an admitted redlining error. *See id.*

## III. Plaintiff Has Stated a Claim Against Pelzer and Jones for Violating His Right to Counsel

Count III of the Second Amended Complaint asserts that Defendants Pelzer and Jones violated Plaintiff's Sixth and Fourteenth Amendment rights to counsel when (1) Pelzer "opened, inspected, and destroyed" confidential legal correspondence to Plaintiff from his defense counsel regarding his criminal appeal outside of Plaintiff's presence and (2) Pelzer then cooperated with Jones to use the

destroyed mail as "a false basis to sentence Plaintiff to further solitary confinement." (Doc. 57, ¶177). Count III also incorporates factual allegations that Pelzer implausibly claimed he destroyed Plaintiff's legal mail because of his purported suspicion that Plaintiff's longtime lawyer "didn't exist" and that the pages were coated in the prison drug Flakka; that Pelzer refused to have his so-called suspicion verified by a drug lab before destroying the mail; and that Jones then relied entirely on Pelzer's obviously false and uncorroborated testimony to find Plaintiff guilty of facilitating contraband and hindering employees, which extended Plaintiff's improper sentence in solitary confinement. *Id.* at ¶¶56-86.

A.    Defendants Fail to Meet Their Burden of Showing the Claim is Insufficiently Pleaded

Defendants' argument in favor of dismissal, while cursory, still manages to be replete with inaccuracies. As an initial matter, Defendants mischaracterize Count III as based solely on "the opening of [Plaintiff's] legal mail outside of his presence" – a blatant misrepresentation of the facts of this case that fails to mention Pelzer's admitted destruction of the mail and all the other unconstitutional misconduct alleged at Count III. Of course, even the opening of an inmate's mail outside his presence, without more, has been acknowledged to be a constitutional violation by the U.S. Supreme Court. *See Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974) (the Sixth Amendment right to counsel requires prison officials to open and inspect privileged legal mail in the inmate's presence). However, for purposes of the instant

right-to-counsel claim, it is essential to note that Plaintiff has alleged the *destruction* of legal mail related to his criminal case with an improper motive.

Beyond their misrepresentation of the facts, the sum total of Defendants' argument that Count III should be dismissed is that the Supreme Court has held – albeit in the context of determining that a petitioner did not have the right to appellate self-representation in a criminal case – that there is no Sixth Amendment right to counsel on appeal. (Doc. 60 at 13) (citing *Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 159-60 (2000). Defendants' argument overlooks the fact that the instant claim was brought under both the Sixth and Fourteenth Amendments, in an acknowledgment of the overlap of constitutional rights implicated by Defendants' misconduct. *See, e.g., Stanley v. Vining,* 602 F.3d 767, 769-71 (6th Cir. 2010) (destruction of a prisoner's outgoing mail could potentially violate the prisoner's First, Sixth, or Fourteenth Amendment rights); *see also* Gregory Sisk, Michelle King, Joy Nissen Beitzel, Bridget Duffus & Katherine Koehler, Reading The Prisoner's Letter: Attorney-Client Confidentiality In Inmate Correspondence, 109 J. Crim. L. & Criminology 559, (2019) ("Whatever may be the parameters of the Fourteenth Amendment right to due process in post-conviction proceedings, it surely must include the right to be free from deliberate government intrusion into confidential letters between an inmate and his attorney challenging a criminal conviction or sentence."). Moreover, Defendants are silent about the fact

that the Supreme Court in *Wolff* affirmed the Sixth Amendment right of convicted prisoners to privacy in their communications with counsel – communications that, for obvious reasons, could not relate to a pending trial. *See Wolff,* 418 U.S. at 576-77.

Litigants have successfully brought claims for interference with their legal mail under various, sometimes overlapping theories of liability.    In *Al-Amin v. Smith*, 511 F.3d 1317 (11th Cir. 2008), for one, the plaintiff brought access-to-courts and free speech claims based on prison officials' repeatedly opening his legal mail outside his presence.   Despite the plaintiff's characterization of his claims, in considering the extent of the constitutional protections afforded to inmates in their legal communications, the Eleventh Circuit found that an incarcerated plaintiff's constitutional right to have his attorney mail opened in his presence exists to ensure "that prison officials will not read the mail and thus [will] not chill attorney-inmate communication") (marks omitted).  *Id.* at 1330-31.  The right to counsel is at the very heart of that consideration.  Likewise, in *Taylor v. Sterrett,* 532 F.2d 462, 475 (5th Cir. 1976), the Court found that:

> The basic prisoner interest is an uninhibited communication with attorneys.... [P]risoners have a vital need to communicate effectively with [their attorneys]. This is to insure ultimately that the judicial proceedings brought against or initiated by prisoners are conducted fairly. Since the prisoner's means of communicating with these parties are restricted sharply by the fact of incarceration, the essential role of postal communication cannot be ignored.

*Id; see also id.* at 478 (citing authority that was "grounded on" inmate plaintiffs' "Sixth *and Fourteenth Amendment rights to effective assistance of counsel*") (emphasis added). The *Taylor* Court found it unnecessary to consider whether opening and reading the incarcerated plaintiffs' legal mail constituted a right-to-counsel violation under the facts of that case, because the Court had already found liability based on the same facts on plaintiffs' access-to-courts claim and elected not to proceed further. *Id.* at 472. Nevertheless, the Court specifically noted "the role of effective assistance of counsel in the exercise of a prisoner's right of access to the courts" in considering the inextricably intertwined nature of plaintiffs' right-to-counsel and access-to-courts claims. *Id.* at 478. Thus, *Taylor* establishes both that (1) a plaintiff can bring a claim for interference with his legal mail under more than one theory of liability, and (2) of at least equal importance, a plaintiff can bring a right-to-counsel claim under the Sixth and/or the Fourteenth Amendments.

Accordingly, even if the Court finds that Plaintiff cannot bring his right-to-counsel claim under the Sixth Amendment, Plaintiff has also brought the claim under the Fourteenth Amendment, which does not contain any such limitation.

Other than their brief assertion that the instant claim cannot proceed under the Sixth Amendment, Defendants do not dispute that Pelzer's and Jones' conduct constitutes a constitutional violation. Indeed, trial courts have determined that an officer violated an inmate's constitutional rights for interference with legal mail

based on far less egregious facts than are present here.  *See, e.g., Ford v. Coleman,* 2015 U.S. Dist. LEXIS 67788 at *19 (M.D. Fla. May 26, 2015) (finding that "properly marked attorney mail should not be opened outside of an inmate's presence" and that "inspection of attorney-client privileged mail relating to criminal matters may impose an undue burden on the Sixth Amendment's right to counsel") (further quotation omitted); *Smith v. Bartalotta,* 2009 U.S. Dist. LEXIS 30932 at *8-9 (M.D. Fla. Apr.13, 2009) (analyzing right-to-counsel cases from various jurisdictions in rejecting claim based on incident of officials' "accidentally opening" the plaintiff's legal mail, "without any evidence of improper motive or resulting interference with [plaintiff's] right to counsel") (further citation and marks omitted).

Crucially, courts of this Circuit are clear that an incarcerated plaintiff alleging unconstitutional interference with (let alone destruction of) his legal mail need not show that his mail was repeatedly interfered with if the single instance of interference was committed with an improper motive.  *See, e.g., Al-Amin,* 511 F.3d at 1330 n.27 (citing authority noting that "an isolated incident, *without any evidence of improper motive or resulting interference with Smith's right to counsel* … does not give rise to a constitutional violation") (quotation omitted) (emphasis added); *Ford,* 2015 U.S. Dist. LEXIS 67788, at *25, *27.  Here, Plaintiff has alleged that Pelzer's conduct was deliberate, egregious, and intentional; that he told multiple lies about the nature of that mail; and that he colluded with Jones, who improperly accepted Pelzer's uncorroborated and implausible testimony, and did not question why Pelzer destroyed the mail, rather than send it to a lab for testing, in order to

create a false basis for sentencing Plaintiff to solitary confinement. (Doc. 57 ¶¶ 177, 62-76).

Of at least equal significance, having pinned all their hopes on the Sixth Amendment's alleged inapplicability here – and having ignored the fact that the claim is also brought under the Fourteenth Amendment – Defendants do not even attempt to meet their burden of showing how Plaintiff's allegations are insufficient to state a claim. *See Superior Energy Servs., LLC v. Boconco, Inc.,* 2010 U.S. Dist. LEXIS 3019, at *13 ("When attacking a complaint in a motion filed pursuant to Rule 12(b)(6), the moving party bears the burden to show that the complaint should be dismissed for failure to state a claim upon which relief may be granted"); *Lowe v. Metabolife Int'l, Inc.,* 206 F.Supp.2d 1195, 1202 (S.D. Ala. 2002) (holding that defendant's motion to dismiss "fails because [he] has failed to carry [his] burden of showing why the claims ought to be dismissed."). Accordingly, because the law of this Circuit mandates that far lesser offenses than those alleged here, such as an officer's opening and reading of inmate mail outside the recipient's presence, violate constitutional rights including the right to counsel, and, further, because Defendants do not show that Plaintiff's allegations fail to state a claim, it necessarily follows that the more egregious conduct alleged in the Second Amended Complaint states a right-to-counsel claim.

B.    <u>Pelzer and Jones Are Not Entitled to Qualified Immunity</u>

As of July 1, 2021, it was clearly established law in the Eleventh Circuit that simply reading an inmate's legal mail outside his presence constitutes a violation of the inmate's constitutional rights. *Al-Amin*, 511 F.3d at 1331; *id*. at 1332 ("opening mail in an inmate's presence 'insures that prison officials *will not read the mail'* and thus does not chill attorney-inmate communication") (quoting *Wolff,* 418 U.S. at 577) (emphasis in original); *see also Taylor v. Sterrett*, 532 F.2d 462 (5th Cir. 1976) (court order requiring that inmate legal mail be opened only in inmate's presence necessary to preserve inmates' Fourteenth Amendment right of access to the courts); *Guajardo v. Estelle*, 580 F.2d 748 (5th Cir. 1978) (same). *Al-Amin* specifically grounded the right to freedom from interference with legal mail in both the First *and the Fourteenth* Amendments. *Id.* at 1333-34. That it was obvious to Pelzer that interfering with Plaintiff's legal mail was a violation of Plaintiff's constitutional rights is further demonstrated by his absurd claim that Perkovich "did not exist," which demonstrates his recognition that interference with an inmate's attorney mail is illegal, while destruction of an inmate's personal mail would be effectively legally harmless.

Finally, it is noteworthy that, while there is no factually indistinguishable case in the Eleventh Circuit demonstrating the unconstitutionality of the destruction of an incarcerated plaintiff's legal mail, that is because the Court has thus far only had to

consider lesser conduct involving the opening and *reading* of inmate legal mail.  The instant claim – like an earlier civil rights claim arising out of egregious officer misconduct at Limestone, *Hope v. Pelzer*, 536 U.S. 730 (2002) – should withstand qualified immunity because of the obviousness of the Defendants' constitutional violation.  *See id.* at 741 (noting that "officials can still be on notice that their conduct violates established law even in novel factual circumstances," in finding that the wanton nature of Mark Pelzer's and other officers' conduct in violating plaintiff's Eighth Amendment rights was "so obvious" that general principles derived from the Court's prior Eighth Amendment cases "gave respondents fair warning that their conduct violated the Constitution").  Unfortunately, Limestone employees are once again responsible for unconstitutional misconduct that is unprecedented in its blatant illegality.  *See Safford Unified School Dist. No. 1 v. Redding*, 557 U.S. 364, 377-78 (2009) ("The unconstitutionality of outrageous conduct obviously will be unconstitutional, this being the reason, as Judge Posner has said, that '[t]he easiest cases don't even arise'") (further citation omitted).

## IV.   Plaintiff Sufficiently Sets Forth an Excessive Force Claim

Defendants Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, and Simpson ("the Excessive Force Defendants") subjected Plaintiff to excessive force in violation of the Eight Amendment, as set forth in the Second Amended Complaint. Defendants attack the pleading unconvincingly by claiming – without supporting

case law – that the claim should be dismissed because "it is impossible for eight people to cut one person's hair at the same time" or "spray 'riot mace' into a confined space" and that somehow, they are unable to respond to the allegations. (Motion at 15). Defendants materially misrepresent the allegations. Plaintiff stated with specificity that "Defendant Simpson forcibly sheared Plaintiff's hair and beard", (Doc. 57 ¶ 130), and that "at least Defendants Charley and Parker pepper-sprayed Plaintiff." *Id.* ¶116. Plaintiff also specifies several other certain actions taken by specific Defendants. "Defendant Ketteman held Plaintiff down by the neck, choking him." *Id*. ¶127. "Defendant Parker repeatedly stomped on the chain that ran between Plaintiff's hands and feet, continually contorting and cutting his body." *Id.* at ¶129. "[E]ach of the Excessive Force Defendants collectively picked Plaintiff up, slammed him to the ground, dragged him across the ground to a table, and shoved him face-first into the metal table in the dayroom." As required by Rule 8(a)(2), Plaintiff makes multiple "short and plain statement[s] of the claim showing that [he] is entitled to relief."

Regardless, Defendants' arguments are belied by caselaw addressing a common circumstance wherein a person suffering a collective beating cannot contemporaneously record which assailant is inflicting which injuries. As the Eleventh Circuit has made clear, "the force administered by each defendant in [a] collective beating" should not "be analyzed separately to determine which of the

defendants' blows, if any, used excessive force." *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002) (denying summary judgment and qualified immunity on Eight Amendment claim that cell extraction team collectively assaulted plaintiff). Moreover, though "[i]t is not necessary that a police officer [here, correction officers] actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Skrtich,* 280 F.3d at 1302 (citing *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985) (finding a claim for relief adequately pled for unlawful use of force against officers who, instead of rendering aid to a suspect who had been shot five times by an officer, dragged suspect from his car, placed him face down on the ground, and shackled his hands behind him, exacerbating his wounds)).

Once again, Plaintiff returns to the pleading standard. In the Eleventh Circuit, pleading an excessive force case under the Eighth Amendment requires "two elements—one subjective and one objective: the official must have both "acted with a sufficiently culpable state of mind" (the subjective element), and the conduct must have been "objectively harmful enough to establish a constitutional violation." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020). Plaintiff has met these standards.

A.    <u>Plaintiff Has Adequately Pled the Subjective Element</u>

"To establish a viable eighth amendment claim, the evidence must show that the measure taken inflicted unnecessary and wanton pain and suffering, or was totally without penological justification." *Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987) (internal citations omitted) (quoting *Whitley v. Albers*, 475 U.S. 312 (1986)). Per *Ort*, "the question whether a particular prison security measure inflicted unnecessary and wanton pain ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id.* (internal quotations omitted). Specifically, "such factors as the need for the application of force, the relationship between the need and the amount of force used, and the extent of the injury inflicted are all relevant to the ultimate determination." *Id.* "Prison officials step over the line of constitutionally permissible conduct if they use more force than is reasonably necessary in an existing situation or if they summarily and maliciously inflict harm in retaliation for past conduct." *Id.* at 325. Relatedly, the Supreme Court in *Hope v. Pelzer* identified particular criteria relevant to the use of excessive force test, holding that (1) where the incarcerated person had "already been subdued, handcuffed, [and] placed in leg irons," and (2) there was a "clear lack of an emergency situation" such that "[a]ny safety concerns had long since abated," then (3) subjecting the inmate to

"substantial risk of physical harm" and "unnecessary pain" serves no penological justification. *Hope v. Pelzer,* 536 U.S. 730, 738 (2002).

Each of these factors supports Plaintiff's case. By the time of the haircut, he had (1) "already been subdued, handcuffed, [and] placed in leg irons," (Doc. 57 ¶¶ 118, 124); (2) There was a "clear lack of an emergency situation" such that "[a]ny safety concerns had long since abated." In fact, there was never a safety concern. Plaintiff was peacefully alone in his cell before the Excessive Force Defendants arrived. Plaintiff continued to be peaceful once out of his cell. *Id.* at ¶¶ 112, 118, 120, 138; and (3) Defendants subjected Plaintiff to a "substantial risk of physical harm" and "unnecessary pain" which served no penological justification. As Plaintiff alleged,

> The shearing of Plaintiff's hair and beard did not bring his hair or beard closer to compliance with any prison policy or serve any legitimate penological interest. Instead, the Excessive Force Defendants cut only portions of Plaintiff's hair: when Defendant Simpson stopped forcibly shearing Plaintiff's hair, his hair was bald in some places and, in other places, remained the same length it had been before the ordeal.

*Id.* at ¶ 134. Therefore, no penological justification was accomplished using force, rather, the purpose of the force was to inflict pain and humiliation.

The Eleventh Circuit considered strikingly similar facts to the instant dispute, in *Danley v. Allen*, in which the plaintiff alleged that the defendant guard was liable for excessive force after he ordered another officer to spray the plaintiff with pepper

spray as punishment for plaintiff's peaceful refusal to return to his cell, and then pushed the plaintiff into a cell and closed the door. *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008), *overruled in part on other grounds*, *Randall v. Scott*, 610 F.3d 701, 2010 WL 2595585 (11th Cir. 2010).[4],[5]   The Court sided with the plaintiff on the reasoning that "subjecting a prisoner to special confinement that causes him to suffer increased effects of environmental conditions --here, the pepper spray lingering in the air and on him-- can constitute excessive force." The *Danley* court further held that[o]nce a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need." *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008). In *Danley*, as here, "[g]iven that he was disabled, there was no need for the jailers to continue using force after spraying him. The use of force in the form of extended confinement in the small, poorly ventilated, pepper spray filled cell, when there were other readily

---

[4] Since *Danley* was decided, the Supreme Court has since applied a lower objective standard to Fourteenth Amendment pre-trial detention claims such as that in *Danley*. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). However, *Danley* was decided before *Kingsley*, under the same Eighth Amendment subjective standard applicable here. *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008) (citing *Bozeman v. Orum,* 422 F.3d 1265, 1271 (11th Cir. 2005) ("[I]t makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees.'")).

[5] *Randall* clarifies that there is no heightened pleading standard for §1983 claims, overturning *Danley*'s application of the heightened standard. *Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) ("While *Swann, GJR*, and *Danley* reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, we agree with Randall that those cases were effectively overturned by the *Iqbal* court.")

available alternatives, was excessive. Therefore, binding case law dictates that the subjective prong has been met.

     B.    <u>Plaintiff Has Adequately Pled the Objective Element</u>

Similarly, the objective prong has also been met. The Eleventh Circuit has held "where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm, that use satisfies the Eighth Amendment's objective harm requirement." *Thomas*, 614 F.3d at 1311 (citation omitted). *Carter v. McCullen*, No. 22-10499, 2023 U.S. App. LEXIS 24795, at *11 (11th Cir. Sep. 19, 2023). As further support of Plaintiff's position, in *Davis v. Locke*, the Eleventh Circuit sustained a finding of excessive force where prison officers dropped an incarcerated person head-first from the back of a pickup truck while his hands were shackled behind his back after an escape attempt. 936 F.2d 1208, 1210 (11th Cir. 1991). The use of force was briefer than here, where Defendants hog-tied Plaintiff, picked him up, slammed him to the ground, and dragged and shoved him face-first into a table —which is not to mention the preceding violence, including the officers' excessive riot macing of Plaintiff and the subsequent forcible haircut, stomping on chains, and dragging of Plaintiff face-first upstairs again. (Doc. 57 ¶¶118-135).

Similarly, in *Harris v. Chapman*, the plaintiff claimed that a group of officers used excessive force including beating him and contorting his head in order to cut

his hair. 97 F.3d 499, 505-06 (11th Cir. 1996). Though the plaintiff in that case "resisted in a variety of ways throughout the five to six minute affair (he admitted threatening to kill the prison barber, among others)," the Eleventh Circuit assessed the "relationship between the need [for the application of force] and the amount of force used," among other facts, and sustained the Eighth Amendment excessive force claim. *Id.*

Here, Plaintiff was peaceful and did not resist, yet he was still subjected to an excessive amount of force than the facts present in *Davis* and *Locke*. Accordingly, Plaintiff has adequately pled an excessive force claim.

C.    Defendants Are Not Entitled to Qualified Immunity

Qualified immunity is unavailable to Defendants alleged to have used excessive force in violation of the Eight and Fourteenth Amendments. Long before Defendant's actions on February 5, 2022, the Eleventh Circuit "'held there is no room for qualified immunity' in Eighth and Fourteenth Amendment excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful." *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008) (quoting *Johnson v. Breeden,* 280 F.3d 1308, 1321-22 (11th Cir. 2002));  *see also Skrtich*, 280 F.3d at 1301 ("a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force maliciously and sadistically to

cause harm is clearly established to be a violation of the Constitution by the Supreme Court"); *Dobbins v. Giles*, 451 F. App'x 849, 851 (11th Cir. 2012) (denying qualified immunity where Plaintiff pleaded sufficient facts to support an excessive force claim.). Therefore, as Plaintiff has adequately pled an excessive force claim, Defendants cannot be entitled to qualified immunity.

## V.    Plaintiff Has Stated a Claim Against the Supervisory Defendants for Failure to Protect

Plaintiff's amended Count V alleges that Defendants Hamm (Commissioner of the ADOC), Toney (Warden of Limestone), Streeter (also a Warden of Limestone), and Pelzer (Correctional Lieutenant at Limestone) violated his Eighth Amendment rights when they failed to protect him from the acts of excessive force and torture committed against him by their subordinates. (Doc. 57 ¶ 185; *id* ¶¶ 21-155, 184-187). Defendants devote a substantial portion of their brief to unsuccessfully attempting to defeat this claim.

A plaintiff must ordinarily demonstrate three elements to establish a failure-to-protect claim: (1) prison conditions posing a substantial risk of serious harm; (2) a prison official's deliberate indifference to that risk; and (3) causation. *Cox v. Nobles,* 15 F.4th 1350, 1358 (11th Cir. 2021). The first element is assessed objectively and requires the plaintiff to show extreme conditions that "posed an unreasonable risk of serious injury to his future health or safety." *Marbury v. Warden,* 936 F.3d 1227, 1233 (11th Cir. 2019). The second element requires the

plaintiff to show (1) the defendants' subjective knowledge of the risk of serious harm; (2) their disregard of that risk; and (3) conduct on the part of the defendants that amounts to more than mere negligence. *Daniels v. Felton,* 823 F. Appx 787, 789 (11th Cir. 2020). Notably, Defendants concede that Plaintiff sufficiently alleges each one of these elements.

Instead, Defendants argue that Plaintiff fails to allege an extra element that applies only where a failure-to-protect defendant is a supervisory official not directly involved in the underlying use of force. A plaintiff in this scenario must further show "a causal connection" between the defendant's actions and the underlying constitutional violation. (citing *Cottone v. Jenner*, 326 F.3d 1352, 1360 (11th Cir. 2003)). A plaintiff can make this showing in multiple ways, including by, *inter alia,* alleging that the supervisor was put "on notice of the need to correct the alleged deprivation" by "a history of widespread abuse" that the supervisor failed to correct, or by alleging "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzales v. Reno,* 325 F.3d 1228 (11th Cir. 2003). Plaintiff has alleged both of these types of causal connections, as set forth below.

A.    The Complaint Alleges That the Count V Defendants Had Notice of a History of Widespread Use of Excessive Force at Limestone, And Failed to Correct It

The Second Amended Complaint comprehensively details a history of widespread abuse at Limestone. It describes the U.S. Department of Justice's publication in 2019 and 2020 of two landmark reports exposing its investigation into "the overall unconstitutional condition of ADOC prisons" – the second of which explicitly described how ADOC prisons, including Limestone, regularly used excessive force "with little justification" against prisoners who were restrained or did not otherwise pose a physical threat, typically as a form of retribution for a "response or behavior [that] may not accord with an officer's commands." (Doc. 57 ¶¶ 22, 28). Plaintiff quotes liberally from the second Report, which documented how the still-ongoing, widespread use of force against inmates at Limestone and 11 other facilities was occurring "pursuant to a pattern or practice of resistance to the full enjoyment of rights [of people incarcerated within the ADOC] protected by the Eighth Amendment." *Id*. ¶ 25; see also ¶ 187 (describing how "[t]he Count V Defendants were all familiar with the DOJ reports"). Contrary to Defendants' false assertion that the DOJ Reports contained only "general details" – an oxymoron if ever there was one – Plaintiff shows that the second Report exhaustively and presciently detailed the exact same behaviors that the Excessive Force Defendants would later commit against Plaintiff – including "the use of batons, chemical spray,

and physical altercations" on people "who were already handcuffed or who did not otherwise pose a physical threat, including by striking these incarcerated people with their hands, fists, feet, and batons, and spraying them" with chemical agents as a form of retribution "to punish them for not complying with a verbal order." *Id.* ¶¶ 25-28.

Plaintiff further details how the DOJ sued the ADOC in federal court following publication of the second Report, and how its suit described how men incarcerated in the named facilities "have continued daily to endure a high risk of death, physical violence, and sexual abuse," even after the Reports' publication, a practice which the DOJ concluded would not cease without a court order. *Id.* ¶ 32. This is, perhaps, the *ultimate* example of an uncorrected "history of widespread abuse," and Defendants do not make more than a token effort to claim otherwise. *See* Doc. 60 at 18 (Defendants arguing in passing that "general details of excessive force at nearly all Alabama male prisons does not show obvious, rampant, flagrant occurrences at" Limestone, notwithstanding the fact that *the DOJ specifically identified Limestone* as one of the facilities in which grossly excessive force against inmates was regularly occurring, and that "constitutional compliance cannot be secured by voluntary means"[6]).

---

[6] *See* Doc. 57 ¶ 32.

Because the Second Amended Complaint more than sufficiently alleges a history of widespread abuse, Defendants take another, equally futile tack. They argue that the DOJ Reports were insufficient to provide the Count V Defendants – who, again, were the Commissioner of the ADOC, and two Wardens and a correctional lieutenant at one of the facilities publicly excoriated by the DOJ – with notice of years of widespread unconstitutional conduct at their own place of employment, regularly committed by their subordinates against people like Plaintiff who peaceably resisted officer commands, over which their employer was ultimately sued by the United States. Defendants' argument is not credible, not least because they fail to challenge the sufficiency of Plaintiff's allegation that the Count V Defendants were all familiar with the contents of the reports.[7] (Doc. 57 ¶ 187). Rather, Defendants attempt to support their position by blatantly misrepresenting the significance of a half-phrase contained in the introductory paragraph of the second Report. *Id.* at 18. Quoted in full, the relevant language states as follows:

> The [DOJ] does not serve as a tribunal authorized to make factual findings and legal conclusions binding on, or admissible in, any court, and nothing in this Notice should be construed as such. Consequently, this Notice Letter is not intended to be admissible evidence and does not create any legal rights or obligations.

---

[7] Notably, the Notice Letter for both Reports was directly addressed to Defendant Toney. *See* Doc. 57-1 at 3; *see also* https://www.justice.gov/crt/case-document/file/1297026/dl?inline.

(Doc. 57-2 at 4). The import of these lines is clear – the Report, in and of itself, does not have the effect of binding law on the ADOC, which is why the United States brought a lawsuit to force Limestone and the other named facilities to, in the DOJ's words, stop "fostering a culture where unlawful uses of force are common." *Id.* at 6. Defendants do not dispute that the 2020 Report describes a lengthy history of widespread abuse. Instead, they refer the Court to the out-of-context statement that the Report was "not intended to be admissible evidence" to contend that the Report can never be invoked in any court case, even if it provided them with notice of the widespread abuse occurring on their watch. The argument is nonsensical on its face.

The Complaint further details additional forms of notice received by one or more of the Count V Defendants, only some of which Defendants choose address. Notably, Defendants fail to address Plaintiff's allegation that, in the regular course of his duties as ADOC Commissioner "Defendant Hamm receives information about litigation involving the ADOC," including active excessive force litigation noted within the Second Amended Complaint. *Id.* ¶¶ 35, 40 n.7. Likewise, Defendants fail to challenge the sufficiency of Plaintiff's allegation that "Defendant Hamm and each of the other [Count V] Defendants" were put on additional notice of widespread abuse through the "dozens of instances of excessive use of pepper spray and other force that had occurred at Limestone," of which they were aware. (Doc. 57 ¶ 155).

Defendants *do* challenge Plaintiff's allegation that Defendants Hamm and Streeter were also on notice of the rampant excessive force at Limestone because they "receive reports and updates about the aforementioned dangerous conditions at Limestone in the normal course of their duties." *Id.* ¶ 186.  However, their arguments on this point are unavailing.  Specifically, Defendants complain that the Complaint's reference to the "aforementioned dangerous conditions" is so generalized as to be meaningless – another out-of-context argument that ignores the fact that the preceding 30 paragraphs of the Complaint detailed Limestone's history of placing its inmates, particularly passively-resisting inmates, at high risk of being subject to excessive force. *See id*. ¶¶ 6-36.  Defendants further contend that this allegation is insufficient because Plaintiff does not detail "the contents" of individual reports received by Hamm and Streeter.   But Plaintiff is not required to provide that level of detail at this stage of the process, before discovery has commenced.   Under *Bell Atlantic Corp. v Twombly,* a plausible claim for relief requires only "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly,* 550 U.S. 544, 556 (2007).   Here, Plaintiff has pleaded facts showing the widespread use of excessive force at Limestone, especially against inmates like Plaintiff who decline to follow an officer's commands, in addition to facts showing that Hamm and Streeter receive regular reports about the "dangerous conditions" facing inmates there.   The Court can reasonably infer that the reports

received by Hamm and Streeter relate to the use of force against individual inmates, providing them with additional notice of ongoing, widespread Eighth Amendment violations at the facility. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also Twombly,* 550 U.S. at 556 (the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim).

Finally, Defendants concede the sufficiency of Plaintiff's allegations that the Count V Defendants failed to correct the widespread abuse against passively non-resisting inmates. *See* Doc. 57 ¶155 (summarizing the various ways in which Hamm and his Co-Defendants "were made aware of the extreme conditions at Limestone that posed an unreasonable risk of serious injury to the health and safety of people such as [Plaintiff]" and how they "failed to take corrective action, enabling the harms that occurred to [Plaintiff]"); *see also* ¶ 187. Accordingly, because Plaintiff has pled every element of a failure-to-protect claim based on supervisory knowledge of widespread abuse, Count V should survive dismissal. *Id*. ¶ 32.

**B.**   Plaintiff Pleads Facts Supporting an Inference that Pelzer Directed His Subordinates to Commit Excessive Force Against Plaintiff, or That He Knew They Would Do So and Failed to Stop Them

Moreover, Plaintiff has alleged that Defendant Pelzer had an even more direct role in failing to protect him from unconstitutional force.  The Second Amended Complaint describes how "Pelzer was the Lieutenant on duty and shift commander in charge of supervising the prison," on the day that Plaintiff was attacked by the Excessive Force Defendants, *id.* ¶ 102; that same day, another of Pelzer's subordinates, Defendant Hines, approached Plaintiff's cell to threaten him that a group of officers would "create problems for him" if he did not cut his hair and beard, *id.* ¶¶ 102-103; a witness observed the interaction and contacted Plaintiff's attorney to report that "a group of officers were threatening to harm" Plaintiff if he did not cut his hair, *id.* ¶ 104; the attorney immediately telephoned Limestone and spoke directly with Pelzer, informing him that Plaintiff "was in immediate danger of being assaulted by a group of officers" and urging him to ensure that no officers remove Plaintiff from his cell or otherwise initiate physical contact with Plaintiff, *id.* ¶¶ 105-07; Pelzer assured Plaintiff's attorney, Perkovich, that Plaintiff would not be contacted or removed from his cell *id.* ¶ 108; and how Pelzer nevertheless permitted his subordinate, Defendant Jones, to organize Plaintiff's assault in his dormitory.  *Id.* ¶ 102.  These allegations are more than sufficient to support an inference that Pelzer directed the Excessive Force Defendants to act

unlawfully against Plaintiff or an inference that he knew that they would act unlawfully and failed to stop them from doing so. *Gonzales*, 325 F.3d at 1235.

C. Defendants Are Not Entitled to Qualified Immunity

Because Plaintiff has alleged that the Count V Defendants' conduct constitutes a failure-to-protect violation, he proceeds to demonstrate that the right at issue was clearly established at the time of their misconduct on February 5, 2022. *Terrell v. Smith,* 668 F.3d at 1250. A plaintiff can show that a constitutional right was clearly established in multiple ways, including by "pointing to a broad statement of principle within the Constitution, statute, or case law that clearly establishes the constitutional right." *Lewis v. City of W. Palm Beach,* 561 F.3d 1288, 1291-92 (11th Cir. 2009) (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)); *see also Nelson v. Tompkins*, 2024 U.S. App. LEXIS 337, at *19 (11th Cir. Jan. 25, 2024) (relying on general principles to deny qualified immunity in a failure-to-intervene case).

Here, established constitutional and case-law principles combined to warn the Count V Defendants that failing to correct their subordinates' history of engaging in the widespread use of excessive force against passively-resisting inmates at Limestone was a violation of their duty to protect Plaintiff – a high-profile inmate at Limestone known for his peaceful resistance to cutting his hear and beard. *See* Doc. 57 ¶ 20. The Count V Defendants were on notice that the Eighth Amendment

prohibits state governments from inflicting "cruel and unusual punishments" on those in their custody. U.S. Const. amend. VIII. Further, it was a well-established principle at the time of the events in issue that the Eighth Amendment "imposes [a] dut[y] on [prison] officials" to "take reasonable measures to guarantee the safety of the inmates" in their care. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Added to these general principles, the Count V Defendants were aware of the opinion of the United States that their subordinates were regularly using unconstitutional excessive force as a form of retribution against inmates who failed to pose a physical threat but declined to comply with a verbal order, (Doc. 57 ¶¶ 22, 28), and that their failure to take reasonable measures to secure the safety of the affected inmates had resulted in "systemic unconstitutional conditions" at Limestone, for which there was "no accountability." *Id.* ¶¶ 25, 30. *See Jacoby v. Mack*, 755 Fed. Appx. 888, 895 (11th Cir. 2018) ("The touchstone of the 'clearly established' inquiry is whether the official had 'fair warning' and notice that his conduct violated the constitutional right in question") (internal quotation omitted).

Sister courts of this Circuit have repeatedly denied qualified immunity to prison officials on failure-to-protect claims based solely on broad statements of principles. *See Johnson v. Kosanovich,* 2021 U.S. Dist. LEXIS 173985, at *13 (N.D. Fla., Aug. 24, 2021) (denying qualified immunity on failure-to-protect claim solely on the basis that "the prohibition on use of excessive force and the duty to protect

were clearly established at the time of the incident at issue in this case," without requiring a factually similar case); *see also Gowins v. Bland,* 2020 U.S. Dist. LEXIS 271549, at \*19-\*20 (N.D. Fla., Oct. 26, 2020) (determining that qualified immunity should be denied to an officer who witnessed her fellow officers use excessive force against the plaintiff and failed to protect him, citing clearly-established law regarding the underlying use of excessive force and the general principle that the defendant "had a duty to protect [plaintiff] and failed to do so"). In a similar vein, in a case involving defendant prison officers' alleged failure to protect from inmate-on-inmate violence (rather than excessive force), the Eleventh Circuit vacated a grant of qualified immunity in *Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1102 (11th Cir. 2014), based on general principles from past cases establishing that an officer "violates a prisoner's Eighth Amendment right" when the officer knows of a substantial risk of serious harm to the plaintiff, "yet *fails to take any action to investigate, mitigate, or monitor that substantial risk of serious harm.*" *Id.* (emphasis added).

Defendant Pelzer arguably had even more notice of the unconstitutionality of his conduct. Plaintiff has alleged that Pelzer was the supervisor on duty in Plaintiff's dormitory on the night in issue, and so was fully able to intervene in the use of force. *See supra.* Equally important, Pelzer received a direct warning from Perkovich that Plaintiff had just been threatened by a subordinate officer that he

would be imminently assaulted by a group of fellow officers if he did not voluntarily submit to a haircut. *Id.* The Supreme Court has found liability where a defendant official "had been exposed to information concerning the risk [to the plaintiff] and thus 'must have known' about it." *See Farmer,* 511 U.S. at 842-43. That Pelzer was fully aware that his subordinates' plans for Plaintiff would violate Plaintiff's Eighth Amendment rights is further supported by his false assurances to Perkovich that he would protect Plaintiff from the threatened use of force. *See supra.* The Eleventh Circuit has repeatedly relied on principles from precedential cases to hold that qualified immunity should be denied to a defendant "who [was] present at the scene and who fail[ed] to take reasonable steps to protect the victim of another officer's use of excessive force. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)*; see also Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection"); *Taylor v. Hale,* 909 F. Supp. 2d 1320 (N.D. Ala. 2012) ("the duty of an officer to protect inmates in their care from assault by fellow officers had been clearly established for years prior to these defendants' alleged failure to intervene or protect Plaintiff on this occasion") (denying qualified immunity to deputy sheriff on failure-to-protect claim based on plaintiff's

allegations that sheriff was on scene at the time of the excessive force,  combined with the aforementioned legal principles).

Thus, because a supervising officer's duty to protect an inmate in his care from imminent excessive force by fellow officers was clearly established at the time of the events in issue, Defendant Pelzer cannot escape liability on this issue.

## VI.    Plaintiff has Stated a Failure-to-Intervene Claim Against the Count VI Defendants

Plaintiff's amended Count VI alleges that Defendants Pelzer and Hines, along with the Excessive Force Defendants (Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, Smith, and Simpson), violated his "Eighth Amendment right to be free from cruel and unusual punishment by failing to intervene to stop the use of grossly excessive force against Plaintiff," as they each knew of, witnessed, and/or perpetrated the use of excessive force and torture against Plaintiff, had the opportunity and were in a position to intervene on Plaintiff's behalf, and failed to do so."  (Doc. 57 ¶ 189).

To state a failure-to-intervene claim against an observing officer, a plaintiff must allege just two elements – namely, that the officer had "both the opportunity to intervene" in the underlying constitutional violation and that he "fail[ed] to do so." *Johnson v. White,* 725 F. Appx. 868, 878 (11th Cir. 2018) (internal citation omitted); *see also Sebastian v. Ortiz,* 918 F.3d 1301, 1312 (11th Cir. 2019) (to be held liable for failure to intervene, "the officer must both be in a position to intervene and fail

to do so") (internal quotation, marks and brackets omitted). An officer can be liable for failing to intervene when another officer uses excessive force. *Priester v. City of Riviera Beach,* 208 F.3d 919, 924-925 (11th Cir. 2000). *See also Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir.1998) ("[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable").

As a threshold matter, Defendants regrettably attempt to rely on two cases that did not involve an alleged failure to intervene in an attempt to require Plaintiff to plead additional elements. *See* Doc. 60 at 2 (citing *Murphy v. Taupin,* 159 Fed. Appx. 945 (11th Cir. 2005); *Patel v. Lanier County, Ga.,* 969 F.3d 1173, 1188 (11th Cir. 2020). Plaintiff trusts that this Court will follow the practice of the other district courts in the Eleventh Circuit to consider the issue and apply the correct failure-to-intervene standard from *Johnson* and *Sebastian*. *See, e.g.,* Sabir v. Cardarelli, 2022 U.S. Dist. LEXIS 156238 at *6 (S.D. Fla., Aug. 30, 2022); Files v. Pettway, 2024 U.S. Dist. LEXIS 1076, at *26 (N.D. Ala., Jan. 3, 2024).

In support of dismissal, Defendants make the straight-faced assertion that "Plaintiff alleges no facts demonstrating a failure to intervene," while declining to address any of the specific factual allegations incorporated under Count VI. (Doc. 60 at 21). Below, Plaintiff shows how the Second Amended Complaint sufficiently

sets forth a failure-to-intervene claim against each of the Defendants identified at Count VI.

    A.    <u>Allegations Relating to Defendant Pelzer</u>

    The same facts that support Plaintiff's failure-to-protect claim against Pelzer also demonstrate that Pelzer had the opportunity to intervene in his subordinates' use of excessive force against Plaintiff and failed or refused to do so. To wit: Pelzer was the "Lieutenant on duty and shift commander in charge of supervising the prison," on the day that Plaintiff was first threatened by Pelzer's subordinate, Hines, in full view of inmates in neighboring cells, and then was attacked by Pelzer's other subordinates, (Doc. 57 ¶ 102); Pelzer received a phone call that same day from Perkovich -- the very attorney Pelzer claimed did not exist – informing him that Plaintiff "was in immediate danger of being assaulted by a group of officers" and urging him to ensure that no officers remove Plaintiff from his cell or otherwise initiate physical contact with Plaintiff, *id.* ¶¶ 105-07; Pelzer assured Perkovich, that Plaintiff would not be contacted or removed from his cell, *id.* ¶ 108, demonstrating his awareness of the need for action to intervene to prevent a constitutional violation; and Pelzer nevertheless took *no* steps to prevent the use of violence and instead "enabled" his subordinate, Defendant Jones, to organize Plaintiff's assault in his dormitory. *Id.* ¶ 102. This is a textbook statement of allegations sufficient to

demonstrate the combination of opportunity and inaction that constitutes a failure to intervene.

    B.    <u>Allegations Relating to Defendant Hines</u>

With respect to Defendant Hines, Plaintiff alleges that, on the day that Plaintiff was attacked by the Excessive Force Defendants, Hines approached Plaintiff's cell to threaten him that a group of officers would "create problems for him" if he did not cut his hair and beard. *Id.* ¶¶ 102-103. That Hines was threatening Plaintiff with unlawful violence was apparent to an individual housed in a nearby cell, who attempted to intervene on Plaintiff's behalf by placing an emergency call to Plaintiff's lawyer. *Id.* It is plain from these allegations that Hines anticipated the Excessive Force Defendants' unconstitutional use of excessive force; that his presence on duty at the time provided him with the opportunity to intervene (not simply by taunting Plaintiff, but by taking steps to prevent the officers from attacking him), and that he failed to do so, as evidenced by the sustained, uninterrupted attack on Plaintiff. *Id.* ¶¶ 109-141; *Cf. Sabir,* 2022 U.S. Dist. LEXIS at *6 (noting that plaintiff failed to "allege any facts from which the [c]ourt can infer that [the defendant] *either anticipated the alleged unlawful conduct* or could have prevented [their fellow officer] from 'dropping'" plaintiff, in finding that plaintiff failed to state a failure-to-intervene claim) (emphasis added).

C.    Allegations Relating to the Excessive Force Defendants

Plaintiff makes a series of factual allegations regarding the nine Excessive

Force Defendants – each of whom was on site through the entirety of his attack –

showing both their opportunity and failure to intervene to prevent the use of

excessive force against him.  Plaintiff alleges that multiple officers, including at least

Defendants Charley and Parker, sprayed riot mace pepper spray into his cell and

directly into his face, "blinding him," and shut off the ventilation to his cell, (Doc.

57 ¶ 114); that the Excessive Force Defendants then beat him with batons, injuring

his groin, midsection and abdomen, *id.* ¶ 115; that "at least" Charley and Parker

again pepper-sprayed him and locked his tray hole, leaving him choking on

poisonous gas, *id.* ¶ 116; that they repeated the pepper-spraying after an interval of

ten minutes, impairing the breathing of not only Plaintiff, but others incarcerated in

the nearby cells, causing them to choke as well, *id.* ¶ 117; that, after another five to

ten minutes, a quasi-evaluation by a nurse intentionally arranged *before* Plaintiff was

subjected to even worse violence, and the nurse's subsequent exit (notwithstanding

Plaintiff's pleas that they would further assault him if she left), the Excessive Force

Defendants hog-tied Plaintiff, "collectively" picked him up and slammed him to the

ground, dragged him, shoved him face-first into a metal table, placed their weight

on him, knelt into his back and "severely restrict[ed] his breathing, *id.* ¶¶ 119-125;

and painfully twisted his arms and back into stress positions.  *Id.* ¶ 125.

In the final phase of the Excessive Force Defendants' attack, Plaintiff specifically alleges that Defendant Ketteman held him down by the neck, choking him in the presence of his Co-Defendants, *id.* ¶ 127; Defendant Parker "repeatedly stomped on the chain that ran between [Plaintiff's] hands and feet, continually contorting and cutting his body, *id.* ¶ 129; and Defendant Simpson forcibly sheared his hair and beard, all while Plaintiff prayed in Arabic and the remaining Excessive Force Defendants laughed and joked throughout.  *Id.* ¶¶ 130-133.

In the face of these detailed allegations, Defendants illogically assert that "[t]here are no facts showing which Defendant committed which act and no facts showing which [D]efendants were involved in certain stages of the alleged assault." (Doc. 60 at 22).  This is patently false, as Plaintiff specifically alleges that major acts of violence were carried out against him by Charley, Parker, Ketteman, and Simpson, while the other Excessive Force Defendants stood by or laughed and joked while Plaintiff struggled to breathe – in other words, while the remaining officers failed to intervene.  *See supra.* Moreover, to the extent that Defendants seek to exploit Plaintiff's inability to identify which Excessive Force Defendant was responsible for which act of force during the most chaotic moments of an act of group violence, after he had already been blinded by multiple attacks of pepper spray, Plaintiff again directs the Court to his assertion in the Second Amended Complaint that

> [t]he nature of the sustained attack on Plaintiff – sudden, shocking, violent, and committed by eight individuals, from all sides, after Plaintiff's vision was hampered by a virulent form of pepper spray – necessarily means that Plaintiff cannot attribute each act to a particular individual.  Plaintiff anticipates learning the extent of each Excessive Force Defendant's individual culpability during the discovery process.

(Doc. 57 ¶¶ 124 n.21).  Regardless, Plaintiff has pleaded more than enough specific facts from which the Court can reasonably infer (1) that every officer in the group attacked him, either singly or in combination with the others, and (2) that each officer had multiple opportunities, both during the attack and during the multiple intermissions during which the officers left Plaintiff alone and choking on pepper spray, to intervene and protect Plaintiff from further acts of violence by his cohorts (and himself).  *See supra.*  Plaintiff urges the Court to consider the Complaint itself rather than the Defendants' many misrepresentations of it.

Therefore, because Defendants fail to carry the burden of showing why Plaintiff has failed to allege both elements of a failure-to-intervene claim against the above-mentioned Defendants, the claim must survive dismissal.

      D.    <u>None of the Count VI Defendants Are Entitled to Qualified Immunity</u>

The unconstitutional nature of the Count VI Defendants' conduct was well-established as of February 2, 2022.  With regard to Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, and Simpson, the sheer length of the attack and the numerous opportunities that each officer had to try to reduce the harm to Plaintiff, make the constitutional violation here even more clear than the situation confronted

by the Eleventh Circuit in *Johnson v. Boyd,* 701 Fed. Appx. 841 (11th Cir. 2017), in which the Court vacated an order dismissing a failure-to-intervene claim based on allegations that the defendant officers watched an attack on the incarcerated plaintiff without intervening until 10 minutes had passed. *Id.* at 847-48. The officers' lack of intervention on Plaintiff's behalf was clearly established by principles established across a swath of precedential cases. *See, e.g., Fundiller v. City of Cooper City,* 777 F.2d 1436, 1442 (11th Cir.1985) ("an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance"); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir.1986) ("if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983"); *see also Ledea v. Metro Dade County Police Dept.,* 681 Fed. Appx. 728, 730 (11th Cir. 2017) (qualified immunity appropriately denied where "complaint alleged the minimum facts necessary to state a claim that [plaintiff's] constitutional rights were violated by the officers' failure to intervene").

Qualified immunity should likewise be denied to Pelzer and Hines. As an initial matter, Pelzer's supervisory status is of no significance to the instant claim, as long as the two elements of a failure-to-intervene claim are shown. *See Byrd*, 783 F.2d at 1007 (on-site supervising officer can be liable for failure to intervene in

excessive force committed by his subordinates); *Harris v. Chanclor,* 537 F.2d 203, 206 (5th Cir.1976) (same).

The only difference between Pelzer's and Hines's position, vis-à-vis that of the Excessive Force Defendants, is that neither officer is alleged to have been part of the group that assaulted Plaintiff.  Unsurprisingly, Defendants seize on this fact to suggest that Plaintiff cannot show that either officer was aware that unconstitutional force was "*currently*" being deployed against Plaintiff.  (Doc. 21) (emphasis in the original).  But this argument is only viable if one ignores the allegations in the Complaint.  Plaintiff has alleged that both Pelzer and Hines were on duty in Plaintiff's dorm during the attack – indeed, Pelzer was the officer in charge of supervising the Excessive Force Defendants at the time – that both were aware that the assault was imminent; and that the attack took place over an extended period of time.  *See supra; see also Johnson v. White,* 725 Fed. Appx. 868, 873 (11th Cir. 2018) ("[i]nstances of force that occur within seconds do not place officers in a realistic position to intervene").  A reasonable juror could infer from these facts that Pelzer and Hines in fact colluded in the planning of the attack, given the allegations that (1) Pelzer promised Perkovich that he would protect Plaintiff from an imminent use of excessive force, then took no measures to do so and (2) Hines threatened Plaintiff shortly before the attack.  This is not the behavior of officers who lacked the time or the knowledge to have the opportunity to intervene.    Thus, because

Plaintiff has stated a failure-to-intervene claim against both officers, the same clear principles in the case law that establish their Co-Defendants' liability dictate that qualified immunity should appropriately be denied to Pelzer and Hines as well.

## VII.   Plaintiff Has Sufficiently Set Forth a Deliberate Indifference Claim Regarding the February 5, 2022 Assault

Count VII alleges that Defendants Toney, Streeter, Pelzer, Jones, Parker, Cottles, C. Allen, F. Allen, Kettleman, Charley, Smith, and Simpson were deliberately indifferent to Mr. William's serious medical needs in the wake of the February 5, 2022 assault. In the Eleventh Circuit, "[t]o prove a deliberate indifference claim, a plaintiff must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008). Plaintiff has adequately pled each of these elements.

First, Defendants assault of Plaintiff created a serious medical need. One test of whether a medical need is serious enough to satisfy the first element is if the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1185 (11th Cir. 1994). Similarly, in *Danley*, "[t]hat Danley needed medical attention was apparent enough for another inmate to recognize it and try to get help for Danley is a fact weighing in favor of finding deliberate indifference." *Danley v. Allen*, 540 F.3d 1298, 1311 (11th Cir. 2008). Here, several other people in Mr. William's dorm

who witnessed his condition recognized the necessity for a doctor's attention and engaged in intense protest to attempt to ensure Plaintiff received a medical evaluation. (Doc. 57 ¶ 144). He did not. *Id*. ¶145. Plaintiff communicated that he was unable to breathe during their assault and haircut. *Id.* ¶ 131. Plaintiff also suffered severe bruising and lacerations across his body, particularly on his wrists, ankles, back, and face, injuries. *Id.* ¶ 141. In addition, as a result of Defendant's assault, Plaintiff was covered in burning pepper spray and Defendants refused to properly decontaminate him. *Id.* ¶ 114.

Moreover, the Eleventh Circuit has "recognized that, while not all pain will constitute a serious medical need, prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain," *Danley v. Allen*, 540 F.3d at 1311 (11th Cir. 2008) (citing *McElligott v. Foley,* 182 F.3d 1248, 1257 (11th Cir. 1999) (internal citations omitted)). Defendants failed to treat Plaintiff's pain for days. (Doc. 57 ¶ 141). He never received a body chart or proper decontamination. *Id.* ¶ 151. Therefore, Plaintiff has adequately pled that he had a serious medical need.

Second, Defendants were deliberately indifferent to Plaintiff's serious medical need. In *Danley*, the Eleventh Circuit found this prong had been pled by allegations that Defendants knew the plaintiff was actually suffering from injury from prolonged exposure to pepper spray because they heard his pleas for help and requests for medical treatment. *Danley*, 540 F.3d at 1312. After Plaintiff

communicated he could not breathe, Defendants continued their assault of Plaintiff and restriction of his breathing anyway. (Doc. 57 ¶ 131). After their assault, Defendants refused Plaintiff any medical care, even a body chart examination. *Id.* ¶ 143. Instead, Defendants left Plaintiff locked in his cell, mutilated, covered in pepper spray, with no way to decontaminate himself or the surfaces in his cell, no mattress, sheets, blankets, or any adequate protection from the cold, and dirty water up to his ankles, for several hours, until approximately 9:00 AM the following morning. *Id.*¶ 145.  In addition, the following day, Defendant Streeter spoke to Plaintiff in person but continued to deny Plaintiff a body chart. *Id.* ¶ 150. Other Limestone staff requested to follow protocol and conduct a body chart but Defendant Streeter said something to the effect of "we not taking no pictures." *Id.* Third, Count VII Defendants were more than grossly negligent. As to this prong, the *Danley* court directed that "[w]hen prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact may infer deliberate indifference." *Danley*, 540 F.3d at 1312.  Here, too, Defendants ignored Plaintiff's obvious serious medical needs. *Id.* at 143.

Similarly, in *McNeeley v. Wilson,* the Eleventh Circuit found corrections officers deliberately indifferent to a medical need caused by pepper spray where the officers extracted someone from his cell and bound him in a four-point restraint chair, and refused to allow him to decontaminate even though he complained that he

was having extreme difficulty breathing, his skin was burning, and his eyes were red. 649 F. App'x 717, 724 (11th Cir. 2016). Much like in *McNeely*, Defendants here sprayed Plaintiff with pepper spray then bound him with hog-ties and their own bodies, refused to allow him to decontaminate despite his complaints about breathing, and then restrained him again for a half hour in a cell with no running water or blankets. (Doc. 57 ¶¶ 115-145). Accordingly, Plaintiff has adequately pled that Defendants were deliberately indifferent to his serious medical need.

A.    The Supervisory Defendants Are Subject to Supervisory Liability

"[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Myrick v. Fulton Cty.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)).

A causal connection may be established when:

(1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Myrick v. Fulton Cty.*, 69 F.4th 1277, 1298 (11th Cir. 2023) (quoting *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007)) (internal quotation marks and citations omitted).

Plaintiff has adequately pled prong one. The Eleventh Circuit "has long recognized that supervisors are liable for the excessive force and the deliberate indifference of their employees where the supervisors received numerous reports of prior misconduct of that nature by those same employees and did nothing to remedy the situation." *See, e.g., Greason v. Kemp,* 891 F.2d 829, 839-40 (11th Cir. 1990) (involving a claim of supervisory liability against prison warden for his employees' deliberate indifference to inmate's serious medical need); *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1443 (11th Cir. 1985) (involving a claim of supervisory liability against city public safety director for his employees' use of excessive force)." *Danley v. Allen*, 540 F.3d 1298, 1315-16 (11th Cir. 2008).

Here, the Supervisory Defendants were on notice of a custom of denying incarcerated people appropriate medical attention. Per the 2020 DOJ Report, "some nurses help correctional officers ensure that injuries caused by uses of force are concealed and not properly documented on body charts." (Doc. 57-2 at 20). Similarly, the DOJ "also found evidence that following a use of force, officers sometimes place prisoners in segregation for extended periods, so that any injuries can heal unobserved and undocumented." *Id.*

Plaintiff has also pled prong three as to Defendants Pelzer and Toney. Defendant Pelzer was the Lieutenant on duty and shift commander in charge of supervising the prison on the night of the assault. (Doc. 57 ¶102). Plaintiff alleges

that, as part of the ADOC's custom and practice of retaliating against incarcerated people in solitary confinement who assert their constitutional rights, Defendant Pelzer enabled Defendant Jones to organize an assault on Plaintiff. *Id.* Moreover, before Defendants assaulted Plaintiff, Plaintiff's attorney called Defendant Pelzer and warned him of the risk Plaintiff. *Id.* at ¶¶ 105-108. Plaintiff's attorney then sent a cease-and-desist letter to Defendants Pelzer and Toney on the night of the assault informing them of the risk Plaintiff faced and requesting that they provide him with medical treatment. *Id.* ¶ 142. Defendants failed to act to stop their subordinates from acting unlawfully by allowing them to continue to deny Plaintiff medical care. *Id.*

## B.    Defendants Are Not Entitled to Qualified Immunity

Defendants are not entitled to qualified immunity. Given the facts in *Danley*, which, as discussed, are like those here, the Eleventh Circuit ruled that "reasonable jailers would have been aware that the conduct that *Danley* alleges violated his clearly established rights." *Danley*, 540 F.3d at 1313 (internal citations omitted).[8]

---

[8] It is worth noting the factual distinctions between *Danley* and the two cases the Eleventh Circuit cited to show that the law was clearly established as to the unconstitutionality of the defendants' failure to decontaminate the plaintiff. The first, *Bozeman v. Orum*, involved officers applying their weight to an incarcerated person and pushing down on his head until he could no longer breathe despite his plea to stop. 422 F.3d 1265, 1269 (11th Cir. 2005). The second, *McElligott v. Foley*, involved the correctional staff failing to appropriately respond to the plaintiff's complaints of abdominal pain, vomiting, and weight loss, which delayed his diagnosis with cancer. 182 F.3d 1248, 1254 (11th Cir. 1999). Both cases are more similar to the instant matter than *Danley*, as here officers applied their weight to Plaintiff (Doc. 57 ¶¶124-133) and obstructed his breathing, like *Bozeman*, and refused him treatment for his pain and exposure to cancer-causing agents (Doc. 57 ¶¶114-151), like *McElligott*. Nonetheless, the *Danley* court ruled that *Bozeman* and *McElligott* created clearly established law for the pepper-spray in confinement claim at issue there, which is also at issue here. *Danley v. Allen*, 540 F.3d 1298, 1313 (11th Cir.

Moreover, as to the supervisory defendants in *Danley*, the Eleventh Circuit recounted that it "has long recognized that supervisors are liable for the excessive force and the deliberate indifference of their employees where the supervisors received numerous reports of prior misconduct of that nature by those same employees and did nothing to remedy the situation." *Danley,* 540 F.3d at 1315-16 (11th Cir. 2008) (citing *Greason v. Kemp,* 891 F.2d 829, 839-40 (11th Cir. 1990) (involving a claim of supervisory liability against prison warden for his employees' deliberate indifference to inmate's serious medical need)).[9] As discussed, the facts of *McNeeley* and *Danley* are similar to those here, and therefore none of the Count VII defendants are entitled to qualified immunity.

## VIII. Plaintiff Has Sufficiently Set Forth a Racial Discrimination Claim

Defendants Pelzer and Jones discriminated against Plaintiff on the basis of his race, treating him differently from similarly situated people, in violation of the Equal Protection Clause of the Fourteenth Amendment. Incarcerated people "are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff*, 418 U.S. at 556. In moving to dismiss Count

---

2008). Accordingly, the violations in this case were even more clearly established and qualified immunity should be denied.

[9] *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1443 (11th Cir. 1985) (involving a claim of supervisory liability against city public safety director for his employees' use of excessive force). In *McNeeley*, the Eleventh Circuit found that "*Danley* clearly established that [McNeeley's] allegations articulate[d] an Eighth Amendment violation, and thus [supervisory defendants] were not entitled to summary judgment on the supervisory liability claim. 649 F. App'x 717, 724 (11th Cir. 2016).

VIII, Defendants repeatedly cite cases in which courts applied much higher burdens than the plaintiff's relatively low burden to defeat a motion to dismiss. (Motion at 24) (citing *Jones v. Ray*, 279 F. 3d 944, 946-47 (11th Cir. 2001) (summary judgment); *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986) (writ of habeas corpus); *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006) (judgment as a matter of law after trial); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1264 (11th Cir. 2010) (summary judgment)). Nonetheless, even the *Damiano* court held that plaintiff's allegation that the prison system had "failed to treat him as other prisoners similarly situated," sufficiently pled a disparate treatment claim, that the claim should not have been dismissed, and ordered discovery. *Damiano v. Fla. Parole & Prob. Com.*, 785 F.2d 929, 932 (11th Cir. 1986). The claims here should proceed to discovery as well.

Here, Plaintiff has specifically alleged a variety of incidents of Defendants Pelzer and Jones engaging in disparate treatment with invidious discrimination based on his race. Plaintiff pled that at the outset of his relationship with Defendant Pelzer, Defendant Pelzer immediately assumed Plaintiff was in a gang because he was Black, stating his custom of using an express racial classification to determine how he treats incarcerated people. (Doc. 57 ¶ 37). Express classifications are "immediately suspect" and subject to strict scrutiny. *Johnson v. California*, 543 U.S. 499, 509, 125 S. Ct. 1141, 1148 (2005) (subjecting to strict scrutiny a prison policy

whereby, upon receiving new transferees, prison would evaluate their cell placement based on their race).

Defendant Pelzer continued to treat Black people disparately based upon their race. Plaintiff adequately pleads that, with discriminatory intent, Defendant Pelzer targeted him for disparate treatment by charging him with baseless discipline violations in concert with Defendant Jones. (Doc. 57 ¶ 201-02). After opening Plaintiff's legal mail outside his presence, Defendant Pelzer charged Plaintiff with "facilitat[ing] the introduction of contraband at Limestone Correctional Facility" and "delaying, hindering, or interfering with an employee in the performance of his duty." *Id.* ¶ 69. The vagueness and overbreadth of the "delaying/hindering" charge give correctional officers license to arbitrarily use the charge to punish incarcerated people for doing anything (or, as in Plaintiff's case, nothing) that the officer disapproves of or is inconvenienced by.  *Id.* ¶ 80. Defendant Pelzer has declined to charge similarly situated White incarcerated people with delaying/hindering. *Id*. ¶ 81-82.

In a recent case applying the equal protection clause to claims of discrimination, the Alabama Northern District Court found that where a plaintiff alleged that she was paid less than the White men in her position, based on her race and gender, including specifics as to who, what, when, and where the discrimination occurred, she had sufficiently stated a claim for an Equal Protection Claim. *Chames*

*v. Wade*, No. 1:21-cv-1571-CLM, 2023 U.S. Dist. LEXIS 137776, at *14 (N.D. Ala. Aug. 8, 2023). The "who" here – as in the comparators – consist of the white people whom Defendant Pelzer has or has not put in disciplinary segregation in contrast to Plaintiff (and all or nearly of the other Black people Defendant Pelzer put in disciplinary segregation). (Doc. 57 ¶82). Plaintiff has also identified the what: Defendant Pelzer did not use the vagueness and overbreadth of the delaying/hindering charge to arbitrarily punish white people with "delaying and hindering" disciplinary charges, as he did to Black people. *Id.* Further, as to the when – Plaintiff alleged that on July 1, 2021 Defendant Pelzer charged Plaintiff with "delaying and hindering." *Id.* at ¶¶ 64-82. Finally, Plaintiff has identified the where as the Limestone Correctional Facility and specifically, its disciplinary segregation units. *Id.*

The delaying and hindering disciplinary violation is unconstitutionally vague and permits its use as a tool of invidious discrimination which must be nullified. In the landmark Supreme Court case *Yick Wo v. Hopkins*, a facially-neutral city ordinance was found to have been used nearly exclusively to imprison Chinese people. 118 U.S. 356 (1886). The Supreme Court found that the ordinance conveyed a "naked and arbitrary power" on city supervisors to determine who would receive a permit and who would not. Nearly all of the people denied permits were Chinese and if they continued to operate without a permit, they were subject to arrest. The

Court found that "whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, and thus representing the State itself, with a mind so unequal and oppressive as to amount to a practical denial by the State of that equal protection of the laws." *Id.* at 373. The Court held that "an ordinance which clothes a single individual with such power hardly falls within the domain of law, and we are constrained to pronounce it inoperative and void." *Id.* The delayed and hindered disciplinary violation is similar to the *Yick Wo* ordinance in that its vagueness and overbreadth give correctional officers "license to arbitrarily use the charge to punish incarcerated people for doing anything (or, as in Plaintiff's case, nothing) that the officer disapproves of or is inconvenienced by." *Id.* ¶ 80. The delaying and hindering violation gives Defendant Pelzer a similarly "naked and arbitrary power" which he has similarly used "with a mind so unequal and oppressive as to amount to a practical denial by the State of that equal protection of the laws." *Yick Wo*, 118 U.S. at 373. Therefore, the delaying and hindering disciplinary violation should be pronounced inoperative and void.

Plaintiff has also alleged that Defendants violated his right to equal protection by allowing people not associated with Black culture to grow out their hair and by using excessive force to forcibly shear his hair. (Doc. 57 ¶ 100). Defendants have allowed followers of Odinism, a Nordic religion often practiced by white supremacists, to grow their hair longer than Plaintiff's while incarcerated at

Limestone. In contrast, as discussed above, *supra* § III, after Plaintiff informed Defendants of the cultural importance of his hair as a Black man, the Count IX Defendants used excessive force to shave his hair. *Id*. ¶101. Plaintiff also alleges Defendants perpetrated this assault with the invidious purpose of "humiliat[ing] Plaintiff and counteract[ing] the example he provided of an incarcerated Black leader standing up for his rights." *Id*. at 144. Plaintiff made clear to Defendants that his religion was associated with his African cultural heritage and, demonstrating discriminatory motive, Defendant Smith told Plaintiff he needed to change his religion. *Id.* at ¶¶ 97, 153. Accordingly, Plaintiff has given Defendants fair notice of what the equal protection claim is and the grounds upon which it rests and the motion to dismiss should be denied.

A.    Defendants Are Not Entitled to Qualified Immunity for Race Discrimination

In the Eleventh Circuit, it is "beyond doubt" that the "right to be free from intentional racial discrimination" is clearly established. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991). As discussed above, Defendant Pelzer openly and intentionally discriminated against Plaintiff, and Defendant Jones enabled him to do so. (Doc. 57 ¶¶ 64-82). Therefore, as Defendants Pelzer and Jones have engaged in intentional racial discrimination they are not entitled to qualified immunity.

## IX.    Plaintiff Sufficiently Sets Forth a Religious Discrimination Claim

Count IX alleges that Defendants Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, Smith, and Simpson subjected Plaintiff to religious discrimination as well, in violation of the equal protection clause. The legal standards applicable to religious discrimination and race discrimination are very similar, as are the facts underlying these claims in this matter. "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006).

Here, Plaintiff has pled that as a person associated with Islam and Metu Neter, he was treated worse than others who are not. This situation is substantially similar to the facts in *Cruz v. Beto*.  In that matter, a Buddhist incarcerated person alleged that because of his religious beliefs, he was denied permission to purchase certain religious publications and denied other privileges enjoyed by other incarcerated people. 405 U.S. 319 (1972).[10] The Supreme Court reversed dismissal of the motion to dismiss, ruling that if plaintiff was a "Buddhist and if he was denied a reasonable

---

[10] *Cruz v. Beto* was later superseded by RFRA which *strengthened* the religious rights of incarcerated people. *Ganther v. Ingle*, 75 F.3d 207, 211 (5th Cir. 1996).

opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts, then there was palpable discrimination by the State." *Id.* at 322.

So too, here, Plaintiff made his beliefs about the spiritual vitality of his hair clear to each of the same Count IX Defendants who have permitted several people incarcerated at Limestone who were non-Black and/or unaffiliated with Islam or Metu Neter to maintain hair and beards longer than Plaintiff's. (Doc. 57 ¶100). Specifically, followers of Odinism, a religion often practiced by white supremacists, were permitted to grow their hair longer than Plaintiff's was while incarcerated at Limestone. *Id.* Defendants did not require Odinists or other incarcerated people in Plaintiff's situation to fully shave their heads or beards. *Id.* However, as adequately pled and discussed above, *supra* § III, after Plaintiff informed Defendants of the religious and spiritual nature of his hair, the Count IX Defendants used excessive force to shave his hair.  *Id.* ¶¶ 96-144. Due to his beliefs, Defendants denied him the right to freely express his religion through his hair, a right enjoyed by other incarcerated people such as the Odinists. (Doc. 57 ¶ 100).

Similarly, in *Lofton v. Williams*, the plaintiff alleged that the defendant told him "I run the show around here, y'all Muslims think you're smart – let's see how smart you are when I put you over in my Tier II program." *Lofton v. Williams*, No. CV415-146, 2016 U.S. Dist. LEXIS 3195, at *4 (S.D. Ga. Jan. 11, 2016)

(greenlighting equal protection claim). The court found that statement to evidence both intent to discriminate and that the plaintiff singled out Muslims for the adverse action. *Id.* Relatedly and of note, the Defendants in this case went even further than the facts alleged in *Lofton*. They demeaned Plaintiff's religious beliefs, specifically his praying for help from God while they assaulted him, and charged him with a disciplinary violation on the basis that his Islamic prayers were curses. (Doc. 57 ¶152). Plaintiff has alleged that after the assault, Defendant Smith told him, "you need to change your religion." *Id.* at ¶153. Moreover, even other correctional officers affirmed that Defendants, who had already expressed their dislike of Plaintiff's religion, were motivated in their assault by "ego sh*t".  *Id.* ¶ 146. Accordingly, Plaintiff has adequately pled a religious discrimination claim.

A.    Defendants Are Not Entitled to Qualified Immunity

It has been clearly established law that religious discrimination violates the Constitution since before the time of Defendant's discriminatory actions beginning in 2018. As discussed above, *Cruz v. Beto*, established the principle that a prison unconstitutionally discriminates against a person by denying them reasonable opportunities to pursue their faith comparable to the opportunity afforded fellow incarcerated people of other faiths. 405 U.S. 319 (1972). Accordingly, the unconstitutionality of Count IX Defendants' religious discrimination against Plaintiff by denying him the reasonable opportunity to grow two to three inches of

hair, as was afforded to people of other faiths, is clearly established and Defendants are not entitled to qualified immunity.

## X.     Plaintiff Sufficiently Sets Forth a Due Process Claim

Plaintiff's amended Count X asserts a Fourteenth Amendment due process claim against Toney, Streeter, Pelzer, and Jones based on their respective roles in sentencing Plaintiff to an unlawful term of solitary confinement. *See* Doc. 57 ¶¶ 208-212 (summarizing how the Count X Defendants' actions deprived Plaintiff of his liberty interest in being free from such a punishment "without penological justification"); *see also id.* ¶¶ 44-52 (describing how Pelzer and Jones colluded to ensure that Plaintiff was sentenced to solitary confinement on a false charge that he injured his cellmate, despite his cellmate's repeated denials and a total lack of evidence as to the underlying incident, while also violating Plaintiff's rights to have a Hearing Officer not involved in the underlying investigation, to call witnesses on his behalf, and to a speedy disciplinary hearing, in violation of ADOC regulation 403); ¶¶ 56-86 (describing how Pelzer and Jones colluded to manufacture false charges that Plaintiff's attorney mail from Perkovich was actually illegal contraband; how Pelzer destroyed the so-called evidence of the offense in violation of ADOC regulation 408; and how Jones once again served as Hearing Officer and relied improperly on Pelzer's false, uncorroborated testimony in order to extend Plaintiff's stay in solitary confinement by another 75 days); ¶¶ 77-83 (describing

how Toney and Streeter failed to address Plaintiff's filed grievance detailing their

subordinates' repeated violations of his constitutional rights).

A.    Defendants Fail to Show That Plaintiff's Claim is Insufficiently
Pleaded, And Instead Seek Refuge in an Incorrect Reading of *Edwards v.
Balisok*

Defendants do not even attempt to meet their burden of demonstrating that

Plaintiff has failed to show all of the elements of a due process claim, and the Court

will search their motion in vain for any statement of what those elements are.[11]

Instead, in the scant two paragraphs they devote to attempting to defeat this claim,

Defendants argue only that Plaintiff's claim is barred by *Edwards v. Balisok*, 520

U.S. 641, 645 (1997) (holding that a plaintiff cannot sue for injunctive relief or

money damages over procedures used to deprive him of good time credit toward

early release, regardless of whether the plaintiff actually seeks restoration of the lost

credits) and its predecessor case, *Heck v. Humphrey,* 512 U.S. 477, 486 (1994)

(applying the bar outside the prison-disciplinary context).

Defendants' argument is unavailing, as *Balisok* and *Heck* do not apply to this

case.  As asserted in the Second Amended Complaint, Plaintiff is serving, by dint of

his conviction of a crime allegedly committed when he was 20 years old, a

"mandatory sentence of life without parole."  (Doc. 57 ¶¶ 56-60).  The vast majority

---

[11] For the record, a plaintiff challenging a prison disciplinary proceeding states a due process claim when he can show both that the challenged punishment creates an "atypical and significant hardship," and that the State has granted its inmates a protected liberty interest by avoiding that form of punishment.  *Sandin v. Conner,* 515 U.S. 472, 484 (1995).

of courts to consider the issue have held that "*Balistok* does not apply where the disciplinary hearing at issue has no impact on the fact or duration of the prisoner's confinement in prison." *Osterback v. Crosby*, 2003 U.S. Dist. LEXIS 13803, at *56 (N.D. Fla., Mar. 5, 2003) (quotation omitted). Indeed, a sister court of this Circuit provided a survey of the law in *Osterback,* beginning with the directive in *Balisok* that the procedural bar applies only where the disciplinary sentence imposed would result in the loss of good time credits, or "gain time." *Id.* at *55-*59 (collecting cases and noting that the only Circuit to apply to *Balisok* when an inmate did not lose good-time credits did so in a case that "was wrongly decided") (citing *Huey v. Stine*, 230 F.3d 226, 229 (6th Cir. 2000)). Accordingly, the court in *Osterback* refused to apply *Balisok* to a due process claim where, as a result of his "life sentence, [the plaintiff] cannot earn gain time, no matter how exemplary his conduct may be while incarcerated." *Id.* at *63-*64 (finding plaintiff's being "virtually unaffected" by loss of gain time to be a "compelling reason" to determine that *Balisok* did not apply).

The logic of this Court's sister court in *Osterback* mirrors that of all but one of the federal appellate courts to consider the issue. *See, e.g., Muhammad v. Close,* 540 U.S. 749, 751 (2004) (holding that *Heck* is not "implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence"); *Wilkerson v. Wheeler,* 772 F.3d 834, 840 (9th Cir. 2014) (holding that

*Heck* and *Balisok* did not bar a § 1983 suit to restore good time credits to plaintiff serving an indefinite life sentence because "[a]ny loss of good-time credits could not extend his potential term, which is life in prison"); *Jenkins v. Haubert,* 179 F.3d 19 (2d Cir. 1999) (finding that the Supreme Court "has never announced that the *Heck* rule bars a prisoner's challenge under § 1983 to an administrative or disciplinary sanction that does not affect the overall length of his confinement"); *Brown v. Plaut,* 327 U.S. App. D.C. 313 (D.C. Cir. 1997) (same); *DeWalt v. Carter,* 224 F.3d 607 (7th Cir. 2000) (*Heck* and *Balisok* did not apply because plaintiff's suit did "not challenge the fact or duration of confinement, but only a condition of his confinement"); *Leamer v. Fauver,* 288 F.3d 532, 542 (3rd Cir. 2002) ("there is a logical and coherent progression of Supreme Court jurisprudence clarifying when § 1983 is unavailable…. when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate"); *Ramirez v. Galaza*, 334 F.3d 850, 855-56 (9th Cir. 2003) (availability of suit "turns solely on whether a successful § 1983 action would necessarily render invalid a … administrative sanction that affected the length of the prisoner's confinement").

Accordingly, because the weight of authority from the Supreme Court and the federal courts of appeals demonstrates that *Balisok* does not apply where even a successful outcome of the plaintiff's suit would not impact the duration of the

plaintiff's confinement, Defendants' argument on this point should be rejected. Because Defendants further fail to meet their threshold burden of showing that Plaintiff has failed to state a due process claim, this claim should survive dismissal.

      B.      <u>Defendants Are Not Entitled to Qualified Immunity</u>

      A long line of Supreme Court precedent establishes that "though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff,* 418 U. S. at 556. An incarcerated individual "may not be deprived of life, liberty, or property without due process of law." *Id*. (citing *Haines v. Kerner*, 404 U. S. 519 (1972); *Wilwording v. Swenson,* 404 U. S. 249 (1971); *Screws v. United States*, 325 U. S. 91 (1945)). "The fundamental requirement of due process is the opportunity to be heard and it is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

      Here, Plaintiff defeats qualified immunity because (1) he sets forth a due process claim arising out of an alleged disciplinary violation, and (2) Defendants' liability was clearly established as of April 6, 2021, the date of his first disciplinary hearing. *See* Doc. 57 ¶ 50.

An inmate is deprived of a liberty interest such that due process is required when he can show that "the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Kirby v. Siegelman,* 195 F.3d 1285, 1290-91 (11th Cir. 1999) (per curiam). Once the threshold requirement of an "atypical and significant hardship" is shown, a plaintiff must demonstrate that he did not receive the level of due process outlined by *Wolff,* 418 U.S. at 563-67, which requires that inmate plaintiffs must receive, *inter alia,* "an opportunity … to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals." *See O'Bryant v. Finch,* 637 F.3d 1207, 1213 (11th Cir. 2011). Procedural due process is only satisfied is if there is "some evidence" in the disciplinary record to support the finding of guilt. *Superintendent v. Hill,* 472 U.S. 445, 454 (1985).

Here, Plaintiff has alleged a deprivation of an initial sentence to 591 days in solitary confinement, compounded by an imposition of an additional 75 days following his equally flawed second disciplinary hearing. (Doc. 57 ¶¶ 52-53, 76). The Eleventh Circuit has repeatedly held that lesser sanctions than these constitute "atypical and significant hardships," including the 365-day stint in solitary confinement suffered by a prisoner in *Williams v. Fountain*, 77 F.3d 372, 373, 374

n. 3 (11th Cir. 1996), and the 500-day stint in administrative segregation experienced by a pretrial detainee in *Magluta v. Samples*, 375 F.3d 1269, 1282 (11th Cir. 2004). Consequently, Plaintiff meets the threshold showing of alleging a deprivation of his liberty interest.

Second, Plaintiff has sufficiently pleaded that both of his disciplinary hearings failed to meet the level of process guaranteed to inmates by *Wolff*, 418 U.S. at 563-67. At a bare minimum, Plaintiff has pleaded that he was not permitted to call witnesses at either hearing as required by *Wolff*, with the result that Defendant Jones, his Hearing Officer on both occasions, relied on only the patently false testimony of Defendant Pelzer in arriving at his sentence. *See* Doc. 57 ¶¶ 48, 75. Moreover, a deciding court could reasonably conclude that there was not even "some evidence" in support of either disciplinary conviction, particularly the second conviction, for which Jones extended Plaintiff's stay in solitary confinement notwithstanding Pelzer's admitted destruction of potentially exculpatory evidence. *See supra.* Moreover, *Balistok* and its progeny clearly establish that a plaintiff is only procedurally barred from pursuing a due process claim challenging his conditions in confinement when the outcome can impact the duration of his sentence. *See supra*.

Thus, based on all of the foregoing, Plaintiff has more than sufficiently alleged both the deprivation of a liberty interest and the Defendants' failure to provide minimum due process. Because Plaintiff has set forth the elements of a

procedural due process claim, and because it was clearly established law, via *Wolff*, *Williams*, and *Magluta*, that Defendants' conduct was unconstitutional, qualified immunity should be denied to the Count X Defendants.

## XI.    Plaintiff Adequately Pled a Deliberate Indifference Claim Regarding the Use of Pepper Spray on People in Solitary Confinement

All Defendants were deliberately indifferent to the substantial risk of serious harm and injury due to the use of pepper spray on people confined in solitary confinement. In the Eleventh Circuit, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010) (citing *Townsend v. Jefferson County*, 601 F.3d 1152, 1158 (11th Cir. 2010)).

The Eleventh Circuit has considered the use of pepper spray on people with mental health conditions in solitary confinement and found the practice to constitute deliberate indifference in violation of the Eighth Amendment. In a very similar 2010 case arising from a Florida State Prison, *Thomas v. Bryant*, the plaintiff alleged that when he requested mental health support or experienced symptoms of his mental health conditions, such as suicidal ideation, during his stay in solitary confinement, prison staff would often fail to provide him with mental health care and instead spray pepper spray through his trayhole. 614 F.3d 1288, 1295-99 (11th Cir. 2010). The district court found that the use of chemical agents on incarcerated people "may

cause both physical and psychological injury beyond the pain intended by their proper use. *Id.* (citing *Thomas v. McNeil*, No. 3:04-cv-917-J-32JRK, 2009 U.S. Dist. LEXIS 1208, [WL] at *4). The district court further found that more severe physical injury may occur "when ventilation is limited [or] when proper decontamination procedures are not timely followed." *Id*. The district court also found that "psychological injuries may also be suffered by exposure to chemical agents," which may include, "feelings of intense helplessness, fear of dying, attempts at suicide and exacerbation of other symptoms of mental illness." *Id*. Accordingly, the district court found that prison officials acted with deliberate indifference to the severe risk of harm the plaintiff faced when officers repeatedly sprayed him with chemical agents for behavior caused by his mental illness. *Id*. at 1313.

Plaintiff appropriately brings a claim alleging deliberate indifference to a substantial risk of serious harm without having suffered that particular harm. Here, Plaintiff was sprayed in retaliation for expressing his religious beliefs, among other things, rather than for seeking mental health support. However, he need not have been sprayed for seeking mental health support himself in order to bring this claim. While an incarcerated person "need not await a tragic event before seeking relief, he must at the very least show that a condition of his confinement poses an unreasonable risk of serious damage to his future health or safety." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 35

(1993). As alleged, Limestone officers continuously pepper-sprayed people with mental health issues who were incarcerated in solitary confinement. Plaintiff was himself a person with diagnosed mental health issues incarcerated in solitary confinement. (Doc. 57 ¶ 92). Horrifyingly, Defendants' pattern of race discrimination, retaliation, deliberate indifference to serious risks of harm, and excessive put Plaintiff at severe risk of suicide as he nearly committed suicide two weeks after Defendant Pelzer sentenced him to prolonged solitary confinement for receiving legal mail. *Id.* ¶95. Therefore, Plaintiff has adequately pled a claim for deliberate indifference to the substantial risk of serious harm due to Defendants' policy of pepper spraying people in solitary confinement.

A.    <u>Excessive Force Defendants</u>

Defendants Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, and Simpson have each personally deployed pepper spray through the tray holes of people with mental health conditions in solitary confinement, shut the tray holes and left. (Doc. 57 ¶¶ 90, 92). As discussed above, this alone constitutes deliberate indifference to a substantial risk of serious harm. *Thomas*, 614 F.3d at 1313.

B.    <u>Supervisory Defendants</u>

Defendants Pelzer, Toney, Streeter, and Hamm are also subject to supervisory liability for their deliberate indifference to the risk of harm arising from the use of pepper spray on people in solitary confinement, due to the causal connection

between their actions and the constitutional deprivation.  A causal connection may

be established when:

> A history of widespread abuse puts the responsible supervisor on notice
> of the need to correct the alleged deprivation, and he or she fails to do
> so; (2) a supervisor's custom or policy results in deliberate indifference
> to constitutional rights; or (3) facts support an inference that the
> supervisor directed subordinates to act unlawfully or knew that
> subordinates would act unlawfully and failed to stop them from doing
> so.

*Myrick v. Fulton Cty.*, 69 F.4th 1277, 1298 (11th Cir. 2023) (quoting *Mathews*

*v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007)) (internal quotation marks and

citations omitted).

   Here, Defendants Pelzer, Toney, Streeter, and Hamm all have causal

connections due to the history of widespread abuse putting them on notice of the

need to correct the deprivation and their failure to do so. If a prison or police

department has a pattern of excessive force, supervisors' failure to redress it can

establish their supervisory liability. In *Fundiller v. Cooper City*, the complaint

alleged that a supervisor was "responsible for disciplining police officers and setting

police department policy, […] that Cooper City police officers have engaged in a

pattern of excessive force in effectuating arrests[,…] and that [a supervisor] failed

to take corrective steps although he was aware of police use of unlawful, excessive

force." 777 F.2d 1436, 1443 (11th Cir. 1985). In these circumstances, the Eleventh

Circuit held that dismissal of the complaint against Pozar was inappropriate."

*Fundiller v. Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985). Here, the Second

Amended Complaint shows a widespread practice by alleging that

> [i]t is also common for officers in Alabama's prisons to use chemical
> spray on prisoners in locked cells. These uses of force often occur when
> prisoners place their arm in a tray door, even though the prisoners are
> secure in a cell and pose no danger to others. Rather than contacting a
> supervisor before spraying a chemical agent, officers frequently use
> chemical spray on prisoners in these circumstances.
> (Doc. 57-2 at 16). Moreover, the Complaint alleges that
>
> under the supervision and with the knowledge of Defendants Streeter
> and Pelzer, Limestone officers – including Defendants Jones, Parker,
> Cottles, C. Allen, F. Allen, Ketteman, Charley, and Simpson – have
> used the same types of excessive force described above against over 40
> people between the dates of Plaintiff's arrival at Limestone in
> December 2018 and his eventual violent assault by the named
> Defendants in February 2022.  Upon information and belief, each of
> these 40+ victims either requested mental health support or otherwise
> complained about the conditions of their confinement.
> (Doc. 57 ¶93). This widespread pattern of excessive force put each

supervisory defendant on notice of the crisis. However, none of them took necessary

actions to redress the issue. *Id.* at 36.

In *Thomas v. Bryant*, the district court found that the Secretary of the

Department of Corrections and the Warden of the prison at issue recklessly

disregarded the risk of psychological harm to incarcerated people such as the

plaintiff. *Thomas v. Bryant*, 614 F.3d 1288, 1315 (11th Cir. 2010). They reached this

conclusion based on the existence of notice from the Florida Correctional Medical

Authority Reports of a risk of harm to incarcerated people with mental illness. *Id.*

Moreover, the Florida DOC chose not to adopt the report's recommendation to take

into consideration an inmate's mental health history, prior to administering chemical agents, enabling the court to find more than gross negligence. Similarly, here, Defendants Hamm, Streeter, Toney, and Pelzer were on notice of the risk of serious harm. Defendant Hamm receives information about the ongoing litigation brought by the Department of Justice, which included the notice provided to his office by the 2019 and 2020 DOJ Reports which are exhibits to the complaint. (Doc. 57 ¶35, Exhs. 1-2). The 2020 DOJ Report specifically provided Defendant Hamm's office with notice that

> ADOC correctional officers often ignore ADOC's regulation and use chemical spray inappropriately. Prisoners who do not present a danger are frequently sprayed with chemical agents. In those cases, officers seem to punish prisoners for not complying with a verbal order. Chemical spray is regularly used as retribution. These kinds of applications of chemical agents violate the Constitution.
> (Doc. 57-2 at 15) (citing *Thomas*, 614 F.3d at 1311). The 2020 DOJ Report

lists multiple instances of the use of pepper spray in circumstances that violated the Eighth Amendment. *Id.* at 16. The report further explains that

> [i]t is also common for officers in Alabama's prisons to use chemical spray on prisoners in locked cells. These uses of force often occur when prisoners place their arm in a tray door, even though the prisoners are secure in a cell and pose no danger to others. Rather than contacting a supervisor before spraying a chemical agent, officers frequently use chemical spray on prisoners in these circumstances.
> *Id*. Accordingly, Defendant Hamm was on notice of the substantial risk of

serious harm.

The report also gave Defendant Hamm several recommendations for how to redress this issue. The recommendations included modifications to use of force or chemical agents regulations including timely medical assessments after use of force; limitations on use of chemical agents to when incarcerated person is armed, self-barricaded, and/or a danger to themselves or others and a delay in bringing the situation under control would create a serious hazard); and prohibitions on the use of force in retaliation. (Doc. 57-2at 24, 25. 36).     Nonetheless, Defendants have failed to take action to redress these well-known issues, and conditions have remained the same or in some cases worsened. (Doc. 57 ¶36). As in *Thomas*, this establishes gross negligence and completes the requirements to plead deliberate indifference. *See also Hope*, 240 F.3d at 978-79 (relying on evidence that the Alabama DOC ignored a DOJ report on the constitutional infirmity of the use of the hitching post as a means of inmate discipline to support an inference that the DOC was aware of a substantial risk of harm and disregarded such risk).

C.    <u>Defendants Are Not Entitled to Qualified Immunity</u>

The law setting forth the unconstitutionality of Count XI Defendants' actions was clearly established in the Eleventh Circuit by the time of the patterns discussed in the Complaint. As discussed above, *Thomas v. Bryant* clearly established that a pattern or practice of using pepper spray on people in solitary confinement constituted deliberate indifference to a serious risk of harm, in violation of the Eighth

Amendment. As discussed, the events here track nearly identical sets of fact. Accordingly, Count XI Defendants are not entitled to qualified immunity.

## XII.  All of Plaintiff's Claims Accrued Within the Statute of Limitations

All of Plaintiff's claims accrued within the relevant statutes of limitations. Per the Supreme Court, in §1983 cases such as this, it is "the standard rule that accrual occurs when the plaintiff has 'a complete and present cause of action,'" that is, when "the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095 (2007) (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund* v. *Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).  Moreover, "'the statute [of limitations] does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987). Thus, Section 1983 actions do not accrue until the plaintiff knows or has reason to know that he has been injured. *Id.*  The statute of limitations for a §1983 case in Alabama is two years. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).

Plaintiff filed his original Complaint on June 30, 2023. (Doc. 1). Therefore, the statute of limitations is tolled as of June 30, 2021. Though certain elements of three of Plaintiff's claims did occur before then, the remaining elements in those claims did not accrue until *after* June 30, 2021. As to Count VIII, Defendant Pelzer

first expressed his racially discriminatory suspicion of Plaintiff, which Plaintiff complained about, in December 2018. (Doc. 57 ¶ 37). That incident is also relevant to Count I for retaliation, which specifically states that "Defendant Pelzer's actions on July 1, 2021 completed the first chronological act of retaliation giving rise to Count I." *Id.* ¶163. As discussed *supra* § I, a retaliation claim is only complete when an adverse action has been taken and therefore the claim did not accrue until Defendant Pelzer destroyed Mr. William's legal mail on July 1, 2021, which is within the statute of limitations. The same analysis applies to Count VIII for racial discrimination, which did not accrue until Defendant Pelzer charged Plaintiff with delaying and hindering after July 1, 2021. *Id.* ¶ 69. Similarly, Count X did not accrue until Defendants Pelzer and Jones denied Plaintiff due process in July 2021. *Id.* ¶ 211.

Accordingly, all of the claims accrued within the statute of limitations and no claims should be dismissed as time-barred.

## XIII. Defendants Are Not Entitled to Eleventh Amendment Immunity from Claims for Prospective Relief in Their Official Capacity

Plaintiff seeks prospective relief in the form of injunctions. The Supreme Court has made clear that Eleventh Amendment immunity cannot be invoked in §1983 actions to bar declaratory or injunctive relief. *Mitchum v. Foster,* 407 U.S. 225 (1972) ("The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights -- to

protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'"); *see also Ex Parte Young,* 209 U.S. 123 (1909), (official capacity suits for prospective relief to enjoin state officials from enforcing unconstitutional acts are not deemed to be suits against the state and thus are not barred by the Eleventh Amendment); *Scott v. Taylor,* 405 F.3d 1251, 1255 (11th Cir. 2005) (same); *Hunt v. Myers*, No. 12-00752-WS-B, 2015 U.S. Dist. LEXIS 150880, at *13 n.8 (S.D. Ala. Sep. 30, 2015) (same). Here, Plaintiff seeks both injunctive and declaratory relief. (Doc. 57 at 43) (Plaintiff's Prayer for Relief). Accordingly, Plaintiff's suit against Defendants in their official capacities is proper.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.

Respectfully submitted this 15th day of February, 2024.

/s/ *Alexander Brooks*
Felicia Medina
(CA Bar No. 255804) (pro hac vice)
Alexander Brooks
(CA Bar No. 340178) (pro hac vice)
Medina Orthwein LLP
230 Grand Ave, Suite 201
Oakland, CA 94610
510-823-2040
fmedina@medinaorthwein.com
abrooks@medinaorthwein.com

Lauren Faraino
(AL Bar No. 8098C65A)
FARAINO, LLC
205-737-3171
2647 Rocky Ridge Lane
Birmingham, AL 35216
lauren@farainollc.com

*Attorneys for Plaintiff Donderrious*
*Williams*

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will electronically send notification of such filing to all counsel of record.

*/s/ Alexander Brooks*