FILED

2024 Aug-30  AM 09:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

DONDERRIOUS WILLIAMS,     )
    )
        Plaintiffs,     )
    )
        vs.     )    Case No.  5:24-cv-00706-HNJ
    )
JEREMY PELZER, et al.,     )
    )
        Defendants.     )

## MEMORANDUM OPINION AND ORDER

This case proceeds before the court on Plaintiff's motion for entry of default against Defendant John Ketteman (Doc. 80), and Ketteman's motion for partial joinder and adoption of the other Defendants' motion to dismiss.  (Doc. 97).  As explicated more fully herein, the court finds Ketteman demonstrated good cause for his failure to timely respond to Plaintiff's Third Amended Complaint, and the delay in filing a responsive pleading resulted from excusable neglect.  Accordingly, the court will **DENY** Plaintiff's motion for entry of default, and it will **GRANT** Ketteman's motion for partial joinder.

## BACKGROUND

Donderrious Williams, a person incarcerated by the Alabama Department of Corrections (ADOC), filed this case on June 30, 2023, in the United States District Court for the Middle District of Alabama.  (Doc. 1).  On December 19, 2023, Williams served the then-operative Complaint on Defendant John Ketteman, making

Ketteman's answer due January 9, 2024.  (Doc. 54).  Ketteman did not answer, and Williams twice amended his Complaint – first on January 11, 2024 (Doc. 57), and again on February 16, 2024.  (Doc. 66).  The February 16, 2024, Third Amended Complaint asserts eleven federal statutory and constitutional causes of action against fourteen defendants, including Ketteman, a former corrections officer for ADOC.  (*Id.*).  On February 27, 2024, all Defendants but Ketteman filed a motion to dismiss Williams's claims.  (Doc. 67).

On April 18, 2024, United States District Judge R. Austin Huffaker, Jr., entered an order providing as follows:

> Defendant John Ketteman was served on December 19, 2023, and the deadline for him to respond to the then-operative complaint was January 9, 2024. . . .  On January 11, 2024, Plaintiff filed a Second Amended Complaint . . . and then, on February 16, 2024, he filed the now-operative Third Amended Complaint (TAC) . . . .  Ketteman's deadline to respond to the TAC was March 8, 2024.  To date, Ketteman has not appeared in the case or otherwise responded to the operative complaint.

(Doc. 79).  Judge Huffaker ordered Williams to show cause why he had not sought a default judgment against Ketteman, why the court should not dismiss Ketteman as a Defendant due to Williams's failure to prosecute, or if Williams had not properly effected service on Ketteman, why the court should not dismiss Williams's claims against Ketteman for lack of timely service.  (*Id.*).

On April 24, 2024, Williams filed a motion for entry of default against Ketteman. (Doc. 80).  He also filed a response to the show cause order, stating he did not earlier

seek a default because he knew of no deadline for seeking default or default judgment against a non-responsive defendant; he anticipated a delay in Ketteman's response as Ketteman resigned from his position at ADOC due to unrelated criminal charges against him; and he desired to proceed to discovery on the merits rather than pursue a default judgment.  (Doc. 81, at 2-4).  Williams argued he should receive a default judgment rather than a dismissal of Ketteman from the case.  (*Id.* at 5-6).

On May 22, 2024, the Middle District of Alabama transferred the case to this court.  (Docs. 88, 89).  Judge Huffaker did not rule on the motion for default or act on Williams's response to the show cause order prior to the transfer.  On July 24, 2024, Williams's attorneys gained admission to practice pro hac vice in this court.  (Doc. 93).  On that same date, the parties consented to the exercise of Magistrate Judge jurisdiction.  (Doc. 94).  On July 25, 2024, attorneys appeared on behalf of Ketteman (Docs. 95-96), and on July 26, 2024, those attorneys filed the motion for partial joinder and adoption of the other Defendants' motion to dismiss.  (Doc. 97).

On August 8, 2024, Ketteman filed an opposition to the motion for entry of default (Doc. 99), and on August 19, 2024, Williams filed a reply.  (Doc. 103).  On August 9, 2024, Williams opposed Ketteman's motion for joinder (Doc. 101), and on August 16, 2024, Ketteman filed a reply.  (Doc. 102).

# DISCUSSION

Both Plaintiff's motion for default and Ketteman's motion for joinder present the same central issue:  should the court permit Ketteman to remain in this litigation and assert substantive arguments?  As discussed below, the answer to that question may proceed under various standards, though all standards lead to an affirmative answer.

## I.   The Prison Litigation Reform Act May Prevent Entry of Default, But Even If It Does Not, Good Cause Warrants Denying Plaintiff's Motion for Default

Pursuant to a strict, textual interpretation, the Prison Litigation Reform Act (PLRA), which applies to this case asserting violations of an incarcerated person's constitutional rights, may prevent the entry of default.  The PLRA allows a defendant to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 of this title or any other federal law."  42 U.S.C. § 1997e(g)(1).  Such a waiver "shall not constitute an admission of the allegations contained in the complaint," though "[n]o relief shall be granted to the plaintiff unless a reply has been filed."  *Id.  See also Jones v. Bock*, 549 U.S. 199, 216 (2007) (Section 1997e(g) "specifies that defendants can waive their right to reply to a prisoner complaint without the usual consequence of being deemed to have admitted the allegations in the complaint.").  The waiver allows defendants to avoid unnecessarily expending resources to respond to frivolous complaints.  *See Ravan v. Talton*, No. 5:19-CV-00161-TES-TQL, 2019 WL 13513744, at *1 (M.D. Ga. Dec. 3, 2019), *report and*

4

*recommendation adopted*, No. 5:19-CV-00161-TES-CHW, 2019 WL 13513747 (M.D. Ga. Dec. 31, 2019) ("Defendants are required to respond only to those claims, if any, that survive the Court's preliminary screening.").[1]  Therefore, "[t]he court may require any defendant to reply to a complaint brought under this section if it finds that the plaintiff has a reasonable opportunity to prevail on the merits."  42 U.S.C. § 1997e(g)(2).

The statute does not specify whether it automatically bars entry of default in all cases, or whether a defendant wishing to invoke the waiver must affirmatively do so. However, two district court decisions within the Eleventh Circuit favor an automatic bar.  *See Walker v. Smokes*, No. 6:15-CV-57, 2016 WL 4099255, at *2 (S.D. Ga. Aug. 2, 2016) (Section 1997(e)(g) "is designed to prevent the entry of default in favor of a prisoner-plaintiff against any defendant who does not file a timely responsive pleading to a complaint.") (citing *Bell v. LeSure*, CIV-08-1255-R, 2009 WL 1290984, at *4 (W.D. Okla. May 6, 2009)); *Sears v. Williams*, No. CIV.A. 11-00719-KD-B, 2014 WL 3396060,

---

[1] Though the expenditure of unnecessary resources may occur more often in cases involving pro se prisoner plaintiffs, courts have also applied the waiver provision of 42 U.S.C. § 1997e(g) in cases involving represented plaintiffs.  *See Ravan v. Talton*, No. 5:19-CV-00161-TES-TQL, 2019 WL 13513744, at *1 (M.D. Ga. Dec. 3, 2019), *report and recommendation adopted*, No. 5:19-CV-00161-TESCHW, 2019 WL 13513747 (M.D. Ga. Dec. 31, 2019) ("The remaining defendants are also not in default.  Under the Prison Litigation Reform Act (PLRA), '[a]ny defendant may waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 . . . or any other federal law,' and 'such waiver shall not constitute an admission of the allegations contained in the complaint.'") (citing 42 U.S.C. § 1997e(g)); *Schwindler v. Owens*, No. 1:11-CV-1276-TCB-LTW, 2011 WL 13157127, at *9 (N.D. Ga. Dec. 30, 2011), *report and recommendation adopted in part*, No. 1:11-CV-1276-TCB-LTW, 2012 WL 12925713 (N.D. Ga. Mar. 6, 2012) (upholding a § 1997e(g) waiver of reply in a case involving a plaintiff represented by counsel).

at *1 (S.D. Ala. July 11, 2014) (denying motion for default in a PLRA case when the court had not yet ordered the defendant to file a responsive pleading).

Thus, even though Ketteman did not submit a formal waiver of his right to respond to the Second Amended Complaint, the PLRA may prevent the entry of default, as the court has not yet ordered Ketteman to file a responsive pleading.  *See Price v. Howard*, No. 1:10-CV-374, 2011 WL 1212238, at *1 (W.D. Mich. Jan. 18, 2011), *report and recommendation adopted*, No. 1:10-CV-374, 2011 WL 1212234 (W.D. Mich. Mar. 31, 2011) ("While § 1997e(g) allows a Defendant to wait to respond until directed to do so . . . it is not accepted that § 1997e(g) permits a Defendant to ignore a court order directing a response") (citation omitted); *Bell*, 2009 WL 1290984, at *4 ("In Section 1997e(g)(1), Congress unambiguously prevented relief to a prisoner suing under federal law when the defendant has failed to respond to the complaint. The statutory language forecloses entry of a default judgment to Mr. Bell even though Judge LeSure has apparently failed to timely respond to the complaint after substantial compliance with the state's service requirements and entry of an order to timely respond."); *Halpin v. David*, No. 4:06-CV-457-RH/WCS, 2008 WL 5663943, at *2 (N.D. Fla. Dec. 8, 2008), *report and recommendation adopted*, No. 4:06-CV-457-RH/WCS, 2009 WL 455354 (N.D. Fla. Feb. 19, 2009) ("While § 1997e(g) allows a Defendant to wait to respond until directed to do so, 'without being deemed to have admitted the complaint's allegations,' it is not accepted that § 1997e(g) permits a Defendant to ignore a court order directing

a response.") (quoting *Kettering v. Larimer County Detention Center,* No. 06-CV-01989-REB-KLM, 2008 WL 324127, 1 (D. Colo. Feb. 5, 2008) (recognizing that under the PLRA, "defendants do not have to respond to a complaint covered by the PLRA until required to do so by the court, and waiving the right to reply does not constitute an admission of the allegations in the complaint.")).[2]

However, even if the PLRA does not prevent the entry of default, Federal Rule of Civil Procedure 55 at least indirectly warrants denial of Williams's motion for entry of default.  Rule 55 requires entry of default upon the record "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  Though the rule states that the Clerk of Court should enter a party's default (*see id.* ("[T]he clerk must enter the party's default.")), the court also may effect the entry.  *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2682 (4th ed. 2024) ("The fact that Rule 55(a) gives the clerk authority to enter a default is not a limitation on the power of the court to do so.").  "'A district judge's decision about whether he or she should perform the ministerial function of entering default that is assigned to the clerk by the text of Rule 55(a) is vested within the judge's sound discretion.'"  *Progressive Specialty Ins. Co. v. Est. of Mock*, No. 1:16-CV-220-MHT-WC,

---

[2] Judge Huffaker's April 18 order recited the deadlines for Ketteman to respond to William's various pleadings, but he never explicitly ordered Ketteman to file a responsive pleading.

2017 WL 3953147, at *1 (M.D. Ala. Jan. 25, 2017), *report and recommendation adopted*, No. 1:16-CV-220-MHT, 2017 WL 3953146 (M.D. Ala. Feb. 9, 2017) (quoting *Liberty Mut. Ins. Co. v. Fleet Force, Inc.*, No. CV-09-S-773-NW, 2013 WL 3357167, at *2 (N.D. Ala. July 1, 2013)). In exercising that discretion, the court should consider whether the defaulting party could succeed on a subsequent motion to set aside the default. *Liberty Mut. Ins. Co.,* 2013 WL 3357167, at *2.

Rule 55(c) allows the court to "set aside an entry of default for good cause." The Eleventh Circuit has

> Said that "'good cause' is not susceptible to a precise formula, but some general guidelines are commonly applied." *Compania Interamericana* [*Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*], 88 F.3d 948, 951 (11th Cir. 1996). Courts have considered these three factors: (1) "whether the default was culpable or willful," (2) "whether the defaulting party presents a meritorious defense," and (3) "whether setting [the default] aside would prejudice the adversary." *Id.* "These factors are not 'talismanic.'" *Id.* For example, "courts have examined other factors including . . . whether the defaulting party acted promptly to correct the default." *Id.*

*Savoia-McHugh v. Glass*, 95 F.4th 1337, 1342 (11th Cir. 2024) (cleaned up). Thus, pursuant to Rule 55, the court could decline to enter default if it determines Ketteman satisfied the good cause standard.

Ketteman submitted a declaration stating:

> 2. The allegations against me in the above lawsuit arise from conduct occurring during my employment with the State of Alabama, in its Department of Corrections ("ADOC").

3.     At the time this suit was filed, I was no longer employed by the State, and no ADOC supervisors informed me that a defense through the Attorney General's office was available.

4.     I was reluctant to contact the Attorney General about a defense in view of the criminal charges pending against me, made by the State of Alabama, even though none of the allegations against me in this action relates to the factual allegations underlying the criminal charges.

5.     Nonetheless, on July 15, 2024, I made inquiry to the Attorney General's office about a defense in this action, after being contacted by the Plaintiff's counsel.

6.     The Alabama Attorney General's office appointed Albert L. Jordan to represent me as a Deputy Attorney General on July 23, 2024. Two days later, he noticed his appearance as [my] counsel and the following day, moved for me to join in the co-defendants' pending Motion to Dismiss.

(Doc. 102-1, at 1-2).

Ketteman delayed months in seeking representation, and he may have done so willfully in an effort to protect himself in the unrelated criminal charges pending against him.  Even so, the court cannot characterize Ketteman's delay as a culpable effort to avoid participating in this litigation, especially considering that he eventually took action to gain representation, and attorneys appeared on his behalf only days later.  The court further observes that the delay in Ketteman's participation may have partly resulted from the transfer of the case to this court from the Middle District of Alabama, and the subsequent waiting period for the parties to elect Magistrate Judge jurisdiction.  The court will not penalize Ketteman for any confusion those procedural changes caused.

Ketteman has presented potentially meritorious defenses as he seeks to join the other Defendants' motion to dismiss, which raises multiple arguments for dismissal of the claims against them.  In addition, Ketteman references the Eleventh Circuit's July 10, 2024, en banc decision in *Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024), which clarified the legal standard for establishing liability on an Eighth Amendment deliberate-indifference claim as requiring that a defendant acted with "'subjective recklessness as used in the criminal law,' . . . and . . .  was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Id.* at 1262 (citing *Farmer v. Brennan*, 511 U.S. 825, 839, 844-45 (1994)).  As Williams's Third Amendment Complaint asserts claims for deliberate indifference to serious medical needs (Count VII) and deliberate indifference to a serious risk of harm (Count XI) against Ketteman and other Defendants, the *Wade* decision – which the Eleventh Circuit entered after briefing closed on the other Defendants' motion to dismiss – may affect the outcome of those claims.

Finally, Williams will suffer no prejudice, other than the requirement to pursue his case against Ketteman on the merits, if the court permits Ketteman to remain in the case.  Discovery has not yet commenced, as the case only recently transferred to this court, and Defendants' motion to dismiss remains pending.  *See Delta Airlines, Inc. v. Am. Travel & Tours of Miami, Co.*, No. 1:17-CV-24097-UU, 2018 WL 7820216, at *1 (S.D. Fla. May 7, 2018) ("Setting aside the default would not prejudice Plaintiff as no

discovery has occurred . . . .”); *Slaughter v. Gramiak*, No. 5:15-CV-90, 2018 WL 1937353, at *2 (S.D. Ga. Apr. 24, 2018) (finding no prejudice in setting aside a default when “no answer has yet been filed and discovery has not commenced”); *In re Phelps*, 329 B.R. 904, 910 (Bankr. M.D. Ga. 2005) (“The only prejudice to Respondents is that they will be required to defend the claim on the merits, which is no prejudice at all.”).

Moreover, in response to Judge Huffaker’s April 18, 2024, show cause order, Williams acknowledged he had not yet sought a default against Ketteman because he knew Ketteman’s pending criminal charges might cause a delay in his answer, and he preferred to proceed to discovery on the merits.  Though Williams may change his position on Ketteman’s appearance as circumstances evolve, his previous statement expressing tolerance of the delay and preference to proceed with the merits of the claim weighs against a finding of prejudice.

The Eleventh Circuit has long expressed disfavor for defaults and a preference for determining cases on the merits.  *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003) (“[T]here is a strong policy of determining cases on their merits and we therefore view defaults with disfavor.”).  Moreover, in cases involving jointly liable or similarly situated defendants, the Eleventh Circuit disfavors entering judgment against a defaulting party if another defendant may prevail on the merits.  *Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §

11

2690 (4ᵗʰ ed. 2024) ("As a general rule . . . , when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted. . . .  [That rule] probably can be extended to situations in which joint liability is not at issue but several defendants have closely related defenses.")

This court heeds the inclination for deciding cases on the merits and the desire to avoid the "incongruous and unfair" result of entering inconsistent judgments.  *See Gulf Coast Fans,* 740 F.2d at 1512.  For these reasons, and because the balance of the Rule 55(c) factors discussed above would support setting aside for good cause any default the court may enter, the court will deny Williams's motion for entry of default against Ketteman.

## II.   Excusable Neglect Justifies Ketteman's Delay in Responding to Williams's Third Amended Complaint

Federal Rule of Civil Procedure 6 governs Ketteman's motion for joinder.  *See Perez v. Wells Fargo N.A.,* 774 F.3d 1329, 1338 n.8 (11ᵗʰ Cir. 2014) ("Rule 6(b)(1)(B) applies generally, when a more precise rule does not govern the situation."); *Fisher v. Off. of State Att'y 13th Jud. Cir. Fla.,* 162 F. App'x 937, 939 (11ᵗʰ Cir. 2006) ("Although the State's and the DOC's motion was captioned as a 'Motion to Join Motion to Dismiss Out of Time,' it is appropriately characterized as a Rule 6(b) motion for enlargement of time because it asked the district court to allow the submission of a responsive pleading

12

after the expiration of time for a response.").

Pursuant to that Rule:  "When an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).[3]

> The Supreme Court has generally instructed courts to consider four factors in determining whether a party has shown excusable neglect: (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

*EarthCam, Inc. v. OxBlue Corp.*, 703 F. App'x 803, 813 (11th Cir. 2017).  "In *Pioneer,* the Supreme Court accorded primary importance to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration in determining whether the district court had abused its discretion" in assessing excusable neglect. *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996) (citing *Pioneer,* 507 U.S. at 395).

---

[3] Williams's brief cites cases applying the stricter Rule 16 standard for submitting a filing after a Scheduling Order deadline expires, which requires a showing that the party seeking the extension exercised due diligence in attempting to meet the deadline. (*See* Doc. 101, ¶ 3 (citing *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 944 (11th Cir. 2015); *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008))).  However, the court has not entered a Scheduling Order, and no judge entered an order setting a deadline for Ketteman to file a motion to dismiss.  Therefore, the default Rule 6 standard applies.

Admittedly, Ketteman could have joined the litigation earlier, as he does not deny he received service of at least one version of Williams's Complaint.  He chose not to seek representation from the Alabama Attorney General due to concerns over his criminal liability, but those concerns did not prevent him from seeking other representation or even representing himself.  Though the resulting delay fell within Ketteman's control, Ketteman's actions do not evince bad faith avoidance of the judicial process, especially considering Ketteman eventually sought counsel, and attorneys promptly entered an appearance on his behalf.

Moreover, the primary factors of prejudice and judicial efficiency weigh in Ketteman's favor.  As previously discussed in detail, Williams will suffer little to no prejudice if the court permits Ketteman to remain in the case and join the other Defendants' motion to dismiss.  Williams argues he has suffered prejudice because he "incurred considerable burden in identifying and serving Defendant Ketteman and then contacting him to provide him with the information necessary to participate in this Action."  (Doc. 101, ¶ 6).  However, those efforts represent only the requirements necessary to serve Ketteman pursuant to Federal Rule of Civil Procedure 4; they do not demonstrate prejudice.  Williams also argues he will suffer prejudice because his deadline for responding to the motion to dismiss already expired.  (*Id.* ¶ 5) ("Plaintiff has already filed his response to the Other Defendants' Motion and the deadline for an opposition has also long-since passed. . . .  Therefore, were Defendant Ketteman to

join the Other Defendants' Motion to Dismiss, Defendant Ketteman would be able to move to dismiss Plaintiff's complaint and Plaintiff would be unable to oppose that motion."). However, the court can cure any prejudice that may have resulted by allowing Williams the opportunity to file additional briefing in response to Ketteman's joinder in the motion to dismiss.

In addition, as discussed previously, not much delay has resulted or will result from Ketteman's joinder. Discovery has not commenced; Ketteman moved to join the motion to dismiss only two days after the parties consented to Magistrate Judge jurisdiction; and the undersigned could not have ruled on the motion to dismiss until after he obtained such consent. Moreover, Ketteman's joinder will promote efficient judicial administration by ensuring the court decides all claims on the merits and avoids inconsistent rulings.

In summary, Ketteman has demonstrated his failure to respond to Williams's Third Amended Complaint within the time allotted by the Federal Rules of Civil Procedure resulted from excusable neglect, and thus, good cause excuses the delay. Accordingly, pursuant to Rule 6(b), the court will permit Ketteman to join the other Defendants' motion to dismiss Williams's Third Amended Complaint. To avoid prejudice, the court will permit Williams the opportunity to submit any additional argument he desires to assert regarding Ketteman's claims.

## CONCLUSION AND ORDERS

In accordance with the foregoing, the court **DENIES** Plaintiff's motion for entry of default for Defendant John Ketteman.

The court **GRANTS** Ketteman's motion for partial joinder and adoption of the other Defendants' motion to dismiss.  If Plaintiff desires to submit any additional briefing based upon Ketteman's joinder in the motion to dismiss, the court **ORDERS** him do so within fourteen (14) days of the date of this order.  Ketteman may file any reply within seven (7) days of Plaintiff's response.

**DONE** and **ORDERED** this 30th day of August, 2024.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE

16