FILED
2025 Jul-31  AM 08:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| DONDERRIOUS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  5:24-cv-00706-HNJ |
| | ) | |
| JEREMY PELZER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Donderrious Williams seeks the court's leave to continue the deadline for amending pleadings (Doc. 118) and to file a Fourth Amended Complaint.  (Doc. 121).  Defendants oppose both motions.  (Docs. 120, 123).  As discussed herein, Williams demonstrated good cause pursuant to Federal Rule of Civil Procedure 16 for extending the amended pleadings deadline.  He also satisfied the more liberal standard of Federal Rule of Civil Procedure 15 for amending pleadings, except with regard to his requests for monetary damages pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* (RLUIPA), in Count II, and his claim for procedural due process in Count IX.  Permitting the amendment as to those claims and requests for relief would constitute an exercise in futility, as those claims and requests for relief cannot ultimately succeed.  Accordingly, the court will **GRANT** Williams's motion to continue the deadline for amending pleadings and **PARTIALLY GRANT** his motion to file a Fourth Amended Complaint.

# BACKGROUND

Williams filed his initial Complaint in this case on June 30, 2023.  (Doc. 1).  His Third Amended Complaint, filed February 16, 2024, asserted the following causes of action:

1.    Retaliation for engaging in protected speech pursuant to the First and Fourteenth Amendments against Defendants Pelzer, Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, Smith, and Simpson (Count I).

2.    Violation of the right to free exercise of religion, pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* (RLUIPA), against Defendants Pelzer, Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, Smith, and Simpson (Count II).

3.    Violation of the Sixth and Fourteenth Amendment right to counsel against Defendants Pelzer and Jones (Count III).

4.    Cruel and unusual punishment – excessive force in violation of the Eighth and Fourteenth Amendments against Defendants Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, Smith, and Simpson (Count IV).

5.    Cruel and unusual punishment – failure to protect in violation of the Eighth and Fourteenth Amendments against Defendants Hamm, Toney, Streeter, and Pelzer (Count V).

6.    Cruel and unusual punishment – failure to intervene in violation of the Eighth and Fourteenth Amendments against Defendants Pelzer, Hines, Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, Smith, and Simpson (Count VI).

7.    Cruel and unusual punishment – deliberate indifference to a serious medical need in violation of the Eighth and Fourteenth Amendments against Defendants Toney, Streeter, Pelzer, Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, Smith, and Simpson (Count VII).

2

      8.     Racial discrimination in violation of the Fourteenth Amendment against Defendants Pelzer and Jones (Count VIII).

      9.     Religious discrimination in violation of the Fourteenth Amendment against Defendants Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, Smith, and Simpson (Count IX).

      10.    Fourteenth Amendment due process violations against Defendants Toney, Streeter, Pelzer, and Jones (Count X).

      11.    Deliberate indifference to a serious risk of harm in violation of the Eighth and Fourteenth Amendments against all Defendants (Count XI).

(Doc. 66).

Defendants moved to dismiss all of Williams's claims (Doc. 67), and on December 13, 2024, this court partially granted Defendants' motion. (Doc. 108; *see also* Doc. 107 (Memorandum Opinion)). The court dismissed Counts II, III, and X in their entirety; partially dismissed Counts I, VI, and XI; and permitted Counts IV, V, VII, VIII, and IX to proceed in their entirety. (*Id.*).

On January 22, 2025, the court entered a Scheduling Order pursuant to Federal Rule of Civil Procedure 16, stating, in pertinent part: "No causes of action, defenses, or parties may be added by plaintiff or defendant after **March 14, 2025**." (Doc. 114, ¶ 1 (emphasis in original)). The Scheduling Order also established a fact discovery deadline of March 20, 2026, an expert discovery deadline of July 15, 2026, and a dispositive motion deadline of July 31, 2026. (*Id.* ¶¶ 2, 4(b)).

On March 12, 2025, Williams filed a motion to continue by 31 days the March

14, 2025, deadline for amending pleadings and the March 28, 2025, deadline for initial disclosures. (Doc. 118). On March 13, 2025, the court granted the motion to extend the deadline for initial disclosures, as Defendants did not oppose that request, and stayed the deadline for amending pleadings pending briefing on the motion. (Doc. 119). On March 20, 2025, Defendants filed an objection to the motion to extend the deadline for amending pleadings. (Doc. 120).

On March 24, 2025, Williams filed a motion for leave to file a fourth amended complaint, and he attached a proposed fourth amended complaint to the motion. (Doc. 121). On March 26, 2025, the court ordered Defendants to respond to the motion for leave, and specifically advised Defendants to address the Rule 16 good cause standard for amending Scheduling Order deadlines. (Doc. 122). On March 31, 2025, Defendants responded to Williams's motion to amend (Doc. 123), and on April 7, 2025, Williams filed a reply. (Doc. 124).

## DISCUSSION

### I.    Williams Satisfied Rule 16's Good Cause Standard by Demonstrating He Diligently Pursued His Fourth Amended Complaint.

Generally, the more liberal standard of Federal Rule 15(a) governs proposed amended pleadings. However, the court must first apply Federal Rule 16(b) – imposing a good cause standard – in cases where the motion to amend postdates an applicable scheduling order deadline. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified

4

only for good cause and with the judge's consent"); *see also Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1366 (11th Cir. 2007) ("[W]here a party's motion to amend is filed after the deadline for such motions, as delineated in the court's scheduling order, the party must show good cause why leave to amend the complaint should be granted.") (citations omitted); *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."); *Roberson v. BancorpSouth Bank, Inc.*, No. 12-0669-WS-N, 2013 WL 4870839, at *1 (S.D. Ala. Sept. 12, 2013) ("The scheduling order deadline is neither aspirational nor advisory…. Were the law otherwise, scheduling orders would be trivialized to the point of meaninglessness.").[1]

To establish good cause, the party seeking to amend its pleading must demonstrate it diligently pursued its case. *See* Fed. R. Civ. P. 16 advisory committee's note (noting "the court may modify the schedule on a showing of good cause if it cannot

---

[1] The court's March 13, 2025, order staying the deadline for amending pleadings granted neither an extension of the pleadings deadline nor leave for Williams to file a Fourth Amendment Complaint during the stay. As one district court has observed, "[a] stay order 'means only to hold [something] in abeyance pending some future instruction,' . . . [a]s opposed to a motion for an extension of time, which gives the Parties additional time to conduct an action after the original deadline has passed." *Grimes v. Howard*, No. 1:20-CV-2045-SCJ, 2023 WL 11904077, at *1 (N.D. Ga. Feb. 3, 2023) (second alteration in original) (quoting *Dorelien v. U.S. Att'y Gen.*, 317 F.3d 1314, 1321 (11th Cir. 2003) (Barkett, J., dissenting)). Rather, as discussed herein, the standards of Rules 15 and 16 govern Williams's request to amend his pleading.

reasonably be met despite the diligence of the party seeking the extension"); *MidAmerica C2L Inc. v. Siemens Energy Inc.*, No. 20-11266, 2023 WL 2733512, at *13 (11th Cir. Mar. 31, 2023) ("We have recognized that Rule 16's good cause standard precludes modification of the scheduling order unless the schedule cannot be met despite the diligence of the party seeking the extension." (quoting *Sosa*, 133 F.3d at 1418 (in turn quoting Fed. R. Civ. P. 16 advisory committee's note)) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If a party was not diligent, the good cause inquiry should end."))) (cleaned up); *ConSeal Int'l Inc. v. Neogen Corp.*, No. 19-CV-61242, 2020 WL 2494596, at *6 (S.D. Fla. May 14, 2020) (citing *Northstar Marine, Inc. v. Huffman*, No. 13-0037-WS-C, 2014 WL 3720537, *3 (S.D. Ala. July 28, 2014); *TIC Park Ctr., 9 LLC v. Cabot,* No. 16-24569-CIV, 2018 WL 4828435, at *4 (S.D. Fla. Aug. 28, 2018)) ("The burden of establishing good cause and diligence rests squarely on the party seeking relief from the scheduling order." (cleaned up)).

> The Eleventh Circuit has
>
> considered several factors to demonstrate a party's lack of diligence, including the month-long pendency of a motion for summary judgment before the filing of the motion to amend, . . . and the fact that the information providing the basis for the proposed amendment was available to the party before the deadline.

*Green Island Holdings, LLC v. Brit. Am. Isle of Venice (BVI), Ltd.*, 521 F. App'x 798, 800 (11th Cir. 2013) (citing *Smith*, 487 F.3d at 1367).

Williams asserts he could not satisfy the March 14, 2025, deadline for amending

pleadings "due to barriers to his communication with counsel." (Doc. 124, ¶ 1). On January 8, 2025, officers at Donaldson Correctional Facility, which currently houses Williams, placed Williams under administrative segregation. (Doc. 118, ¶ 3; Doc. 120-1, at 1; Doc. 121, at 4; Doc. 124, ¶ 2). On January 21, 2025, officers sentenced Williams to 45 days in disciplinary segregation, with an anticipated release date of February 22, 2025. (Doc. 118, ¶ 3; Doc. 121, at 4; Doc. 124, ¶ 2).

The facility did not release Williams from segregation on February 22. On March 12, 2025, the date Williams's counsel filed the motion to continue the amended pleading and initial disclosure deadlines, Williams remained in segregation, and he suspected he may remain there six to nine additional months. (Doc. 118, ¶ 4; Doc. 121, at 5). However, the facility released Williams from segregation on March 14, 2025, "due to disciplinary time being served and his designated enemy being placed in a restricted housing unit." (Doc. 120-1, at 2; *see also* Doc. 121, at 5; Doc. 124, ¶ 8).

During Williams's administrative segregation period, the facility refused him access to confidential legal calls, consistent with the facility's security policy. (Doc. 118, ¶ 5; Doc. 120-1, at 1-2). Williams asserts his inability to communicate with his attorney by telephone impeded his attorney's ability to prepare a Fourth Amended Complaint. (Doc. 118, ¶ 6). As Williams's attorney anticipated Williams's release from administrative segregation on February 22, 2025, the attorney "anticipated the resumption of [Williams's] access to his counsel via confidential legal calls long enough

in advance of the then-March 14, 2025 deadline to amend the pleadings." (Doc. 124, ¶ 2).

Though Williams lacked access to confidential attorney phone calls during his segregation period, he retained full access to confidential in-person attorney visits. (Doc. 120-1, at 1). Williams's attorney visited him on January 23, 2025, yet they devoted most of their visit to discussing the circumstances surrounding Williams's placement in administrative segregation and his ensuing health complications. (Doc. 124, ¶ 3). On February 27, 2025, Williams again met with his attorney "to prepare the amendments despite Mr. Williams's ongoing segregation." (*Id.* ¶ 5). Williams's attorney intended to meet with him a third time on March 11, 2025, yet "the combination of the distance between counsel's office and the clutch in counsel's car breaking rendered them unable to meet that day." (*Id.* ¶ 6).

These circumstances depict Williams's counsel diligently pursued an amended pleading prior to the expiration of the Scheduling Order deadline. Assuming the court's December 13, 2024, order on Defendants' motion to dismiss prompted Williams to attempt a Fourth Amended Complaint, his attorneys knew of that order only 26 days before officers placed Williams under administrative segregation, and the intervening winter holidays slowed the pace of practice for all attorneys in the case.[2] During a

---

[2] On December 21, 2024, Defendants filed an unopposed motion to continue their deadline for answering the Third Amended Complaint from December 27, 2024, to January 27, 2025, "[g]iven the

January 7, 2025, Rule 26(f) discovery conference, Williams's attorney "informed Defendants' counsel that [Williams] intended to amend the complaint to cure issues that the Court identified in the Order partially granting and partially denying Defendant's [*sic*] motion to dismiss." (Doc. 121, at 4).

Throughout Williams's administrative segregation period, he could not communicate with his attorney by telephone, significantly impeding counsel's ability to prepare a Fourth Amended Complaint. Though Williams personally met with his attorney on January 23, 2025, the failure to thoroughly discuss a Fourth Amended Complaint during that meeting resulted not from lack of diligence, but from the pressing need to discuss the circumstances and results of the segregation. This assessment also flows from the consideration that Williams's attorney anticipated Williams's release from segregation on February 22, 2025, which should have allowed discussion of the amended pleading well in advance of the impending deadline.

Though the facility extended Williams's segregation period, Wiliams met with his attorney again on February 27, 2025, specifically to discuss the Fourth Amended Complaint. The attorney planned another meeting for March 11, 2025, which still could have allowed time to prepare a Fourth Amended Complaint prior to the deadline, but

---

Christmas and New Years Holidays." (Doc. 110, ¶ 1). The motion also cited "scheduling conflicts relating to the Christmas and New Years Holidays" as a reason for extending the deadline for conducting a Rule 26(f) conference. (*Id.* ¶ 2). The court granted Defendants' motion. (Doc. 111).

transportation problems prevented the meeting.  The very next day, Williams's attorney filed a motion to continue the March 14, 2025, deadline for amending pleadings, and by March 24, 2025, Williams's attorney prepared a proposed Fourth Amended Complaint and attached it to the motion for leave.  (*See id.* at 5 ("In the ten days since Plaintiff's release from solitary confinement, Plaintiff has been able to confer with Plaintiff's counsel and prepare the amended complaint on an expedited basis to minimize the delay caused by his solitary confinement.")).

Considering the intervening winter holidays (which also prompted Defendants to request deadline extensions), the burdens on attorney-client communication Williams's administrative segregation imposed, and the prompt action of Williams's attorney to prepare a proposed Fourth Amended Complaint after Williams left segregation, the court concludes Williams's attorney exercised diligence in seeking to extend the deadline for amending pleadings, and in subsequently seeking leave to file the Fourth Amended Complaint.  Accordingly, Rule 16 permits an amendment.

## II.  Williams Also Satisfies the Rule 15 Standard for Amending Pleadings, Except With Regard to Monetary Damages Under RLUIPA, in Count II, and Procedural Due Process in Count IX.

As Williams has satisfied Rule 16's diligence standard, the inquiry proceeds to whether Rule 15 permits filing of his Fourth Amended Complaint.  Rule 15 advises courts to "freely give leave [to amend a complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2).   "When deciding whether to grant leave to amend, a court considers

10

five factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, and (5) futility." *Blackburn v. Shire US Inc*, 18 F.4th 1310, 1317-18 (11th Cir. 2021), *certified question answered sub nom. Blackburn v. Shire U.S., Inc.*, 380 So. 3d 354 (Ala. 2022) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 11th Cir. 1999)).

None of the first four factors would prevent amendment in this case.  First, for the reasons articulated in the analysis of Rule 16, Williams did not unduly delay in seeking to file the Fourth Amended Complaint.

Second, Defendants have not argued Williams displayed bad faith or a dilatory motive, and no evidence exists he has done so.

Third, Williams has not repeatedly failed to cure deficiencies by amendment. Defendants correctly point out the court has already granted Williams three opportunities to amend his Complaint, and on February 16, 2024, after granting Williams leave to file a Third Amended Complaint, the judge in the Middle District of Alabama who previously presided over the case stated:  "The Court will look unfavorably upon any future motions to amend the operative complaint.  Plaintiff has now received four bites at the pleading apple and will not receive another absent exceptional circumstances and good cause." (Doc. 65, at 1).  However, Williams's First Amended Complaint only corrected the spelling of a Defendant's name.  (Docs. 37, 39,

11

43, 44, 49). Though Williams's Second Amended Complaint presented substantive changes (Docs. 55-57), the Third Amended Complaint only corrected an editing error in the Second Amended Complaint. (Docs. 61, 65-66). Thus, the court concludes Williams's previous amendments do not represent a repeated failure to cure deficiencies in his pleading. Moreover, in his current proposed amendment, Williams seeks to address this court's December 13, 2024, opinion and order, which presents an exceptional circumstance and good cause warranting the amendment.

Fourth, Defendants will not suffer undue prejudice from defending against the claims in the Fourth Amended Complaint. *See Gordon v. Nat'l Seating & Mobility, Inc.*, No. 4:20-CV-00018-JPB, 2022 WL 21320597, at *4 (N.D. Ga. Mar. 2, 2022) ("National's argument of undue prejudice because it would have to defend the claim does not justify denial of leave to amend."); *Queen Virgin Remy Co. McKinley v. Thomason*, No. 1:15-CV-1638-SCJ, 2016 WL 4267801, at *1 (N.D. Ga. Apr. 15, 2016) ("While Defendant may suffer prejudice in having to defend against additional claims, this is not the undue prejudice contemplated by Rule 15."). Though Williams originally filed the case on June 30, 2023, the parties have until March 20, 2026, to complete discovery, and until July 31, 2026, to file dispositive motions. *Cf. Schiller v. Viacom, Inc.*, No. 1:15-CV-22129-UU, 2016 WL 11593113, at *3 (S.D. Fla. Mar. 14, 2016) ("Plaintiff's untimely Motion would also cause undue delay and undue prejudice to Defendants," as the parties had "engaged in extensive discovery and motion practice, including dispositive

motions," and the court had set the case for trial).

However, assessing the futility of Williams's proposed amendments requires further consideration. "'[A] district court may properly deny leave to amend the complaint . . . when such amendment would be futile." *Swinford v. Santos*, 121 F.4th 179, 192 (11ᵗʰ Cir. 2024) (alterations in original) (quoting *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11ᵗʰ Cir. 2004)). "Amendment would be futile when a proposed amended complaint would still be dismissed." *Id.* (citing *Hall*, 367 F.3d at 1262-63).

The court will separately assess the potential futility of each count of Williams's proposed Fourth Amended Complaint.[3]

## A. Permitting Count I, for First Amendment Retaliation, Will Not Constitute an Exercise in Futility.

Count I of the proposed Fourth Amended Complaint asserts a claim of retaliation for engaging in protected speech, in violation of the First and Fourteenth Amendments, against Defendants Pelzer, Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, Smith, and Simpson. (Doc. 121-1, ¶¶ 156-69). That Count includes the following paragraph:

---

[3] In addition to the claims discussed below, Williams's proposed Fourth Amended Complaint deleted his former Count III, a claim for violation of the right to counsel pursuant to the Sixth and Fourteenth Amendments, against Defendants Pelzer and Jones. (*See* Doc. 66, ¶¶ 176-78). On December 13, 2024, the court dismissed Count III, as Williams did not state a viable claim for relief. (Doc. 107, at 45-46). Defendants complain that Williams' proposed Fourth Amendment Complaint continues to rely on facts related to the former Sixth Amendment claim. (Doc. 123, ¶ 9). However, Williams's reliance upon facts that previously supported his Sixth Amendment claim does not undermine the viability of any of his other proposed claims.

> In December 2018, Plaintiff complained to Defendant Pelzer that Defendant Pelzer was racist because Defendant Pelzer had derided and accused Plaintiff of belonging to a gang immediately after meeting Plaintiff, even confirming that he had concluded Plaintiff was a gang member because he was Black. Following that complaint, Defendant Pelzer identified Plaintiff as someone who would protest Defendant Pelzer's and other officers' discriminatory conduct and mistreatment of incarcerated individuals and advocate for the constitutional rights of incarcerated individuals.

(Doc. 121-1, ¶ 158).

On December 13, 2024, the court held Williams did not state a viable First Amendment retaliation claim based upon his December 2018 complaint to Pelzer about racism, as the statute of limitations barred any claims that Williams's interaction with Pelzer in 2018 resulted in fabricated charges in March 2021 or an inadequate disciplinary hearing in April 2021. Moreover, as to allegations of persistent retaliation that may support a timely continuing violation claim, the court held Williams's Complaint lacked sufficient detail to connect any of the named Defendants to a continuing pattern of retaliatory action. (Doc. 107, at 37-40).

Defendants protest that Williams improperly relies on information related to his December 2018 complaints of racism despite the court's dismissal of any retaliation claim based upon those complaints. (Doc. 123, ¶ 9). However, as the court noted in its previous opinion, the facts surrounding events occurring prior to June 30, 2021, may bear relevance as background evidence of a timely claim, or as evidence of a continuing violation. (*See* Doc. 107, at 23 n.5 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

101, 113 (2002); *Wainberg v. Mellichamp*, 93 F.4th 1221, 1227-28 (11th Cir. 2024)).  Though Williams may not assert an independent First Amendment retaliation claim based upon events occurring in 2018, he does may include facts related to the 2018 incident as background for his other retaliation claims.  Accordingly, permitting Williams's proposed Count I will not constitute an exercise in futility.

### B.    Permitting Count II, for RLUIPA Violations, Will Not Constitute an Exercise in Futility, Insofar as Williams Seeks Injunctive Relief.

Count II of the proposed Fourth Amendment Complaint alleges a claim against Defendants Simpson and Hamm for violations of the right to the free exercise of religion pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. (RLUIPA).  (Doc. 121-1, ¶¶ 170-74).

Williams also asserted a RLUIPA claim in the Third Amended Complaint against Defendants Pelzer, Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, Smith, and Simpson.  He alleged Smith violated his right to free exercise of religion under RLUIPA when he ordered Williams to change his religion, and Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, Smith, and Simpson violated his RLUIPA rights when they forcibly sheared his hair and beard.  He also averred Pelzer violated his RLUIPA rights when he instructed and/or permitted the other Defendants to forcibly shear his hair and beard.

On December 13, 2024, this court held that RLUIPA did not permit Williams to

obtain monetary damages against Smith, Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Smith, or Simpson, as Williams sued those Defendants in their individual capacities only, and the statute does not permit money damages against state officials in their individual capacities. (Doc. 107, at 30-32). For the same reasons, the court also dismissed Williams's RLUIPA claim against Defendant Charley in his individual capacity. (*Id.* at 32). As to Williams's official capacity claim against Charley, the court held sovereign immunity barred a RLUIPA claim for money damages. (*Id.*). Finally, Williams could not obtain injunctive relief against Charley in his official capacity under RLUIPA because "Williams no longer reside[d] at Limestone, the facility that employed Charley." (*Id.*). Accordingly, the court dismissed Williams's RLUIPA claim in its entirety. (*Id.* at 34).

Williams attempts to revive his RLUIPA claim in Count II of his proposed Fourth Amended Complaint, but this time only against Simpson in both his individual and official capacities and Hamm in solely his official capacity. (Doc. 121-1, ¶¶ 6, 14). He alleges:

> 171. The ADOC maintains a policy, Administrative Regulation 462,[4] which substantially burdens Plaintiff's exercise of his religion by

---

[4]    ADOC Administrative Regulation 462 addresses Religious Program Services. https://doc.alabama.gov/docs/AdminRegs/AR462.pdf, last visited July 29, 2025. The regulation includes a "Facial Hair Exception," which states:

> All inmates are allowed to grow facial hair no more than (1/2 inch) in length. Facial hair must be kept clean, trimmed, and maintained to present a healthy appearance. Shaved lines, numbers, letters, words, signs, symbols, designs, etc. in facial hair are

subjecting him to punishment for growing his hair. Count II Defendants were aware or should have been aware of Plaintiff's religious beliefs, listed in his ADOC files, including his background in Islam and Metu Neter and his sincerely-held spiritual beliefs associated with his beard and hair. Nonetheless, the ADOC, overseen by Defendant Hamm, has a culture of discrimination against Islamic and African spiritual expressions, pursuant to which Defendant F. Allen ordered Plaintiff to change his religion. Then, the Excessive Force Defendants,[5] including Defendant Simpson, violated Plaintiff's rights and chilled his right of religious expression and belief by using grossly excessive force to forcibly shear his head and facial hair, which were expressions of his spiritual beliefs.

172. The Count II Defendants had no compelling government interest in using such excessive force, as evidenced by the Count II Defendants' permitting inmates not affiliated with Islam or Metu Neter to wear their hair as they chose. Their conduct substantially burdened a practice of Plaintiff's religion and prevented him from engaging in conduct or having a religious experience which his faith mandated. Moreover, the Count II Defendants could have used several less restrictive means including simply serving Mr. Williams with a disciplinary report pursuant to the process set forth in ADOC Administrative Regulation 403.[6]

173. As a direct and legal result of the Count II Defendants' actions and/or omissions, Plaintiff has suffered and continues to suffer damages

---

strictly prohibited. Non-compliance with this policy is considered a violation of institutional rules and regulations and subject to disciplinary action, which may include a requirement to revert to clean shaven for 30 days before beginning to regrow facial hair.

(*Id.* at 4, § V(A)(7)). Williams alleges that by early 2022, he "had grown his hair and beard to about two to three inches in length." (Doc. 121-1, ¶ 98).

[5] Williams collectively refers to Defendants Jones, Parker, Cottles, C. Allen, F. Allen, Ketteman, Charley, Smith and Simpson as the "Excessive Force Defendants," as those Defendants allegedly perpetrated the assault that serves as the basis for his excessive force claim. (Doc. 121-1, ¶¶ 109, 176-79).

[6] ADOC Administrative Regulation 403 sets forth procedures for inmate rule violations. https://doc.alabama.gov/docs/AdminRegs/ar403.pdf, last visited July 29, 2025.

including, without limitation, physical injury; pain and suffering; emotional, psychological, and physical distress; violation of dignity; and other pecuniary losses not yet ascertained.

174.    By engaging in the aforementioned acts and/or omissions and/or in ratifying such acts or omissions, the Count II Defendants engaged in willful, malicious, intentional, and/or oppressive conduct, and/or acted with willful and conscious disregard of the rights, welfare, and safety of Plaintiff, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

(*Id.* ¶¶ 171-74).

Williams also alleges he

continues to be under threat of further violations of his rights from Defendants.  After February 5, 2022, the ADOC promoted Defendant Simpson from a sergeant to a lieutenant and transferred him to Donaldson.  On or about March 14, 2025, Defendant Simpson again assaulted an incarcerated person, held them down, and forcibly sheared their hair, humiliating them and substantially burdening their self-expression.

(*Id.* ¶ 155).

In his motion for leave to file a Fourth Amended Complaint, he asserts the proposed amendment to his RLUIPA claim "ensures that the claim is made only against Defendants who either work at or oversee the prison where Plaintiff is incarcerated," (Doc. 121, at 10), and he cites the Supreme Court's decision in *Holt v. Hobbs*, 574 U.S. 352 (2015), for the proposition that a "director of [a] state prison [was] properly sued under RLUIPA in [an] official capacity for injunctive relief."  (*Id.* at 10-11).

The Prayer for Relief at the end of the proposed Fourth Amended Complaint

18

requests judgment

    a.    For injunctive relief enjoining Defendants, their agents, employees, officials, and all persons acting in concert with them under color of state law:

        i.    To update, develop, and/or adopt the ADOC's and all the ADOC facilities' policies, procedures, practices and structures to:

            A.    comply with the Religious Land Use and Institutionalized Persons Act and other federal and state laws protecting the free expression of religion;

            B.    prohibit the spraying of pepper spray into locked disciplinary segregation cells;

            C.    prohibit the locking, chaining, or other confinement of people who been exposed to pepper spray for longer than reasonably necessary to address immediate danger; and

            D.    prohibit the locking, chaining, or other confinement of people under circumstances where they are exposed to danger or pain due to the temperature or other environmental conditions.

        ii.    To rescind and remove any and all disciplinary reports from Plaintiff's file that arise from Defendants' misconduct in this matter;

        iii.    From subjecting Plaintiff to the illegal and unconstitutional conditions, acts, omissions, and practices set forth above;

    b.    For declaratory relief stating that the acts, omissions, policies, and practices of the Defendants, their agents, employees, officials, and all persons acting in concert with them under color of state law or otherwise, described herein are in violation of the rights of Mr. Williams under the United States Constitution, which grant[s]

protection to Mr. Williams;

c.    For compensatory, general, and special damages, in an amount to be determined at trial;

d.    For punitive damages in an amount to be proven at trial;

e.    For reasonable attorneys' fees and cots to Plaintiff pursuant to 42 U.S.C. § 1988;

f.    For trial by jury; and

g.    Such other relief as the Court finds appropriate in the interest of justice.

(Doc. 121-1, at 65-66).

As the court previously determined, Williams cannot obtain monetary damages from a state official in his individual capacity, and sovereign immunity bars RLUIPA claims for money damages against a state official in his official capacity.  (Doc. 107, at 31-32).  Accordingly, permitting Williams to seek monetary damages under RLUIPA in his Fourth Amended Complaint would constitute an exercise in futility.[7]

---

[7] As set forth previously, Williams's RLUIPA claim mentions physical, emotional, and psychological distress; pain and suffering; and other pecuniary losses, all of which represent types of compensatory damages.  He also alleges Defendants acted willfully, maliciously, intentionally, and/or oppressively, and they willfully and consciously disregarded his rights, welfare, and safety, thereby suggesting a request for an award of punitive damages.  (Doc. 121-1, ¶¶ 173-74).

The court notes on June 23, 2025, the Supreme Court granted certiorari in a case in which the Fifth Circuit held RLUIPA did not permit an award of money damages against officials sued in their individual capacities.  *Landor v. Louisiana Dep't of Corr. & Pub. Safety*, 82 F.4th 337, 339, 345 (5th Cir. 2023), *cert. granted sub nom. Landor v. LA DOC*, No. 23-1197, 2025 WL 1727386 (U.S. June 23, 2025). However, unless and until the Supreme Court holds otherwise, binding Eleventh Circuit precedent prohibits an award of money damages against state officials in their individual capacities under RLUIPA.  *See Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007) (concluding "section 3 of RLUIPA – a provision that derives from Congress' Spending Power – cannot be construed as creating a private

Even so, drawing all reasonable inferences in Williams's favor,[8] his proposed Fourth Amended Complaint also requests injunctive relief for his RLUIPA claim. *See Gardner v. Riska*, 444 F. App'x 353, 355 (11th Cir. 2011) (quoting *Sossamon v. Texas,* 563 U.S. 277, 282 (2011)) ("RLUIPA creates an express private cause of action for injunctive and declaratory relief against the government, which includes 'States, counties, municipalities, their instrumentalities and officers, and persons acting under color of state law.'"). He requests an injunction requiring Defendants to update ADOC facilities, policies, procedures, practices and structures to comply with RLUIPA. (Doc. 121-1, at 65). He also requests "[s]uch other relief as the Court finds appropriate in the interest of justice." (*Id.* at 66).[9]

---

action against individual defendants for monetary damages"), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277, 286-87 (2011), *overruled on other grounds by Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021) (en banc); *see also Hathcock v. Cohen*, 287 F. App'x 793, 798 (11th Cir. 2008) (per curiam) ("[T]his Court concluded that RLUIPA does not create a private action for monetary damages against prison officials sued in their individual capacity." (citing *Smith*, 502 F.3d at 1275)); *Sossamon*, 560 F.3d at 329 ("[A]s a matter of statutory interpretation and to avoid the constitutional concerns that an alternative reading would entail, we decline to read Congress's permission to seek 'appropriate relief against a government' as permitting suits against RLUIPA defendants in their individual capacities.").

[8] *See Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in the plaintiff's favor.).

[9] No reasonable question exists that Defendant Hamm, as ADOC's Commissioner, constitutes a proper Defendant to Williams's requests for injunctive relief under RLUIPA, as Williams alleges Hamm "is responsible for heading the ADOC, for the independent direction, supervision, and control of the ADOC, and for approving and issuing administrative regulations and changes." (Doc. 121-1, ¶ 14); *see also Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318 (11th Cir. 2019) (quoting *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) ("'A state official is subject to suit in his official capacity when his office imbues him with the responsibility to enforce the law or laws at issue in the suit.'"); *Ginochio v. Andre*, No. 2:24-CV-1731 CSK P, 2025 WL 1040948, at *3 (E.D. Cal. Apr. 8, 2025) (citing

Williams also has pleaded sufficient facts to establish his standing to pursue injunctive relief by demonstrating "a 'real or immediate threat that [he] will be wronged again,' or, in other words, a 'likelihood of substantial and immediate irreparable injury.'" *Wilson v. Sec'y, Dep't of Corr.*, 54 F.4th 652, 668 (11th Cir. 2022) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983)). "In cases where a plaintiff seeks injunctive relief, pointing only to past injuries and speculating that such harm will 'inevitabl[y]' occur again is insufficient to establish standing." *Wilson*, 54 F.4th at 668 (citing *Lyons,* 461 U.S. at 102) (alteration in original). However, Williams's proposed Fourth Amended Complaint alleges that he continues to experience the threat of further RLUIPA violations because Defendant Simpson now works at Donaldson, where Williams currently resides, and on March 14, 2025, Simpson "assaulted an[other] incarcerated

---

*Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015)) ("The proper defendant for a RLUIPA claim is the official who could appropriately respond to a court order on injunctive relief should one be issued."); *Davis v. Baldwin State Prison*, No. 5:20-CV-00378-MTT-MSH, 2021 WL 1614325, at *5 (M.D. Ga. Apr. 26, 2021) ("Defendant Ward is the commissioner of the Georgia Department of Corrections, which is an entity capable of being sued for injunctive relief under RLUIPA. . . . Thus, Plaintiff's RLUIPA claims against Defendant Ward in his official capacity only shall therefore proceed for further factual development."). Defendant Simpson, a corrections officer, may not possess sufficient authority to alter the ADOC policies Williams alleges violate RLUIPA. As Simpson did not raise any challenge to his ability to effect injunctive relief, the court will not address at this stage Simpson's ability to provide such relief. However, Williams will need to establish Simpson's ability to effect changes to ADOC policies to ultimately prevail against Simpson on his claim for injunctive relief. *Atha v. Washburn*, No. 3:19-CV-00544, 2019 WL 13395032, at *11 (M.D. Tenn. July 18, 2019) ("The Court is unable to determine from the present record which Defendants have the authority to decide which types of meals are provided to inmates at SCFF and TTCC in general or to Plaintiff in particular. Accordingly, the Court will not dismiss Plaintiff's RLUIPA claims at this stage in the proceedings, and the issue of which of these Defendants are appropriate defendants for Plaintiff's RLUIPA claims will be resolved in due time after Defendants have been made aware of this lawsuit and the record is more developed.").

person, held them down, and forcibly sheared their hair" – a very similar incident to the assault Williams alleges occurred at Limestone. (*See* Doc. 121-1, ¶¶ 96-155). By those allegations, Williams establishes "a history of past misconduct[ by Simpson], which gives rise to an inference that future injury is imminent." *Thomas v. Bryant*, 614 F.3d 1288, 1318 (11th Cir. 2010) (citations omitted). Thus, Williams has pled a basis for the issuance of injunctive relief "'to prevent a substantial risk of serious injury from ripening into actual harm.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

In addition to requesting proper relief, Williams's proposed Fourth Amended Complaint states a viable claim under RLUIPA.

> RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" – including state prisoners – "even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

*Ramirez v. Collier*, 595 U.S. 411, 424-25 (2022) (quoting 42 U.S.C. § 2000cc-1(a)).

Williams alleges Defendants forced him to choose between shaving his beard and facial hair, which would seriously violate his religious beliefs, and suffering serious disciplinary action. That forced choice imposed a substantial burden on his religious exercise. (Doc. 121-1, ¶ 172 ("[Defendants'] conduct substantially burdened a practice of Plaintiff's religion and prevented him from engaging in conduct or having a religious experience which his faith mandated."); *see also Holt v. Hobbs*, 574 U.S. 352, 361 (2015)

23

("The Department's grooming policy requires petitioner to shave his beard and thus to 'engage in conduct that seriously violates his religious beliefs.' If petitioner contravenes that policy and grows his beard, he will face serious disciplinary action. Because the grooming policy puts petitioner to this choice, it substantially burdens his religious exercise.") (cleaned up).[10]

Williams also alleges Defendants "had no compelling government interest" in forcibly removing his head and facial hair, "as evidenced by [their] permitting inmates not affiliated with Islam or Metu Neter to wear their hair as they chose." (Doc. 121-1, ¶ 172). Moreover, he alleges Defendants "could have used several less restrictive means including simply serving Mr. Williams with a disciplinary report pursuant to the process set forth in ADOC Administrative Regulation 403." (*Id.*).

For all of the foregoing reasons, permitting Williams to seek injunctive relief under RLUIPA against Hamm and Simpson would not constitute an exercise in futility.

---

[10] In addition, under RLUIPA, "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015) (citing *Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682, 717 n.28 (2014)). Williams alleges his

> hair and beard length are an expression of his spiritual purity and growth, his belief that God is present within all of us, and his African cultural heritage. In particular, Metu Neter places immense spiritual importance on hair, teaching that wearing one's hair the way Mr. Williams wore his represents one's spiritual and physical health, wisdom, and social status in the community.

(Doc. 121-1, ¶ 98). Defendants have not challenged whether Williams sincerely held a religious belief that he should maintain long hair and a beard.

Accordingly, the court will allow Williams to reassert the RLUIPA claim in his Fourth Amended Complaint, with the caveat that he may only seek injunctive relief against the named Defendants.[11]

### C.    Permitting Count IX, for Procedural Due Process, Will Constitute an Exercise in Futility.

Count IX of the proposed Fourth Amended Complaint alleges a claim against Defendants Toney, Streeter, Pelzer, and Jones for violation of the right to procedural due process under the Fourteenth Amendment.  (Doc. 121-1, ¶¶ 204-08).   On December 13, 2024, this court held the statute of limitations barred any due process claims arising from Williams's April 6, 2021, disciplinary hearing, and Williams failed to state a viable procedural due process claim as to his July 1, 2021, hearing.  (Doc. 107, at 25, 71-76).  As to the July 1 hearing, Williams did not adequately plead that he possessed

---

[11] Defendants have raised concerns that if Williams advances any new claims related to events occurring at Donaldson Correctional Facility, "witnesses in Bessemer, Alabama would potentially be outside of the 100-mile radius to compel court attendance via a subpoena."  (Doc. 120, at 3).  Defendants also point out "the reason for the transfer [of this case] to the Northeastern Division of the Northern District of Alabama [from the Middle District of Alabama] was for the convenience of witnesses and that seemingly all relevant actions occurred in the Northeastern Division."  (*Id.*). However, Williams's proposed new claims do not actually challenge events occurring at Donaldson. Rather, Williams complains of the treatment he received at Limestone, and he alleges facts regarding Simpson's alleged assault of another inmate at Donaldson only to demonstrate he suffers a risk of imminent substantial harm, thereby establishing standing to request injunctive relief.

Moreover, as Williams may seek only injunctive relief under RLUIPA, not monetary damages, the court need not consider whether the defense of qualified immunity applies. *See Pearson v. Callahan*, 555 U.S. 223, 242-43 (2009) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 841, n. 5 (1998)) ("Most of the constitutional issues that are presented in § 1983 damages actions and *Bivens* cases also arise in cases in which that defense is not available, such as . . . § 1983 cases against individuals where injunctive relief is sought instead of or in addition to damages."); *Lewis,* 523 U.S. at 841, n. 5 (observing qualified immunity would not "be available to block a determination of law" in "a suit to enjoin future conduct").

a constitutionally protected liberty or property interest because he did not demonstrate the circumstances of his segregation imposed an "'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" (*Id.* at 72 (citing *Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999) (citations omitted)).[12]

In the Third Amended Complaint, Williams described the conditions of his

---

[12] As the Eleventh Circuit has recognized, "[d]etermining whether one was deprived of liberty presents a unique challenge with prisoners, who are already deprived of their liberty in the ordinary understanding of the word." *Kirby v. Siegelman*, 195 F.3d 1285, 1290 (11th Cir. 1999).

> The Supreme Court has identified two situations in which a prisoner can be further deprived of his liberty such that due process is required. The first is when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995); *Vitek v. Jones*, 445 U.S. 480, 492-93, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second situation is when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300; *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process). In the first situation, the liberty interest exists apart from the state; in the second, the liberty interest is created by the state. *Bass*[ *v. Perrin,*], 170 F.3d [1312,] 1318[ 11th Cir. 1999)].

*Kirby*, 195 F.3d at 1290-91.

> As Williams serves a sentence of life without the possibility of parole (Doc. 66, ¶ 56), his time in disciplinary segregation could not alter the length of his sentence. Therefore, he argues segregation imposed an atypical and significant hardship, which may result if an extended segregation period imposes significantly different conditions from those experienced by inmates in general population, administrative segregation, or protective custody. *See Sandin*, 515 U.S. at 486 ("The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody."); *Al-Amin v. Donald*, 165 F. App'x 733, 738 (11th Cir. 2006) ("Confinement to administrative segregation, under conditions substantially similar to those experienced by the general population of the prison, does not implicate liberty interests.").

solitary confinement as follows:

> Mr. Williams was classified as "close custody," the most restrictive custody level, for nearly all of his time in disciplinary segregation.  During this time, Mr. Williams was confined to a six foot by nine foot cell for an average of approximately 23 hours and 56 minutes per day; could only participate in one educational program; could not exercise without being shackled and having his hands cuffed behind his back; was unable to have his daughters and grandson visit for months at a time; and was deprived of nearly all direct human to human contact.

(Doc. 66, ¶ 53).  He did not plead any facts demonstrating how his conditions differed from those experienced by inmates in general population, administrative segregation, or protective custody at the Limestone facility.  (Doc. 107, at 74).

The proposed Fourth Amended Complaint provides more factual detail:

> Mr. Williams was classified as "close custody," the most restrictive custody level, for nearly all of his time in disciplinary segregation, which further deprived him of freedom and caused severe hardships.  In general population, Mr. Williams was confined to a cell for fewer than 5 hours per day.  In contrast, in disciplinary segregation, the ADOC confined Mr. Williams to a six-foot by nine-foot cell for an average of over 23 hours and 30 minutes per day.  In general population, Mr. Williams could shower every day, while in disciplinary segregation, the ADOC only allowed Mr. Williams to shower at most three days per week.  The ADOC also denied Mr. Williams access to nearly all the hygiene products he had access to in general population such as lotion and hair products, causing significant damage to his skin and hair health.  In general population, Mr. Williams could participate in as many of Donaldson's educational programs as he wanted, while in disciplinary segregation, the ADOC only allowed Mr. Williams to participate in one educational program.  In general population, Mr. Williams was able to exercise for approximately 11 hours a day, including lifting weights, playing sports, and moving around a yard with an area larger than a football field.  In disciplinary segregation, the ADOC only allowed Mr. Williams outside for 45 minutes twice a week, during which time he was shackled with his hands cuffed behind his back in an

27

approximately seven-foot by eight-foot cage, so that the only exercise he could engage in was walking around this small space. In general population, Mr. Williams had access to air conditioning and heaters. In disciplinary segregation, the ADOC confined Mr. Williams in a cell that would exceed 100 degrees Fahrenheit in the summer, with no air conditioning and negligible ventilation other than the tray hole, and drop below 20 degrees Fahrenheit in the winter due to inadequate heating. In general population, Mr. Williams was able to interact directly with dozens of other human beings each day and have visits with his daughters and/or grandson at least once a month. In contrast, in disciplinary segregation he was unable to have even one single visit with any family member, and the prison deprived him of nearly all direct human contact for the entire 591 days. While being confined in general population restricted his ability to take care of himself, being confined in disciplinary segregation took nearly all of his liberty away, leaving him helpless and depending upon correctional staff, many of whom had already demonstrated their indifference to his and others' rights. The difference in conditions between general population and disciplinary segregation caused Mr. Williams severe stress and mental anguish, aggravated his diagnosed anxiety, and nearly led him to commit suicide.

(Doc. 121-1, ¶ 53).

The court must consider the length of time – 75 days – Williams spent in segregation as a result of the July 1 hearing. *See Delgiudice v. Primus*, 679 F. App'x 944, 947 (11th Cir. 2017) (citing *Magluta v. Samples*, 375 F.3d 1269, 1282 (11th Cir. 2004)) ("Both the period of time and the severity of the hardships must be taken into consideration.").[13] In *Rodgers v. Singletary*, 142 F.3d 1252 (11th Cir. 1998) (per curiam),

---

[13] Williams alleges he spent a total of 591 days in disciplinary segregation. (Doc. 121-1, ¶ 52). However, any segregation days resulting from the April 1, 2021, hearing cannot serve as the basis for a procedural due process claim due to the statute of limitations bar. Williams specifically alleged he received 75 additional segregation days as a result of the July 1, 2021, hearing. Therefore, all other days must have resulted from the April 1, 2021, hearing, or from other incidents not the subject of this claim.

the Eleventh Circuit found an inmate's 60-day administrative confinement period did not deprive him of a constitutionally protected liberty interest. *Id.* at 1253. The undersigned considers the 75 days Williams spent in segregation more akin to the 60-day administrative confinement period found typical of ordinary prison life in *Rodgers*, as opposed to the atypical and significant hardships posed by an inmate's 365-day stint in solitary confinement in *Williams v. Fountain*, 77 F.3d 372, 373, 374 n. 3 (11th Cir. 1996), and a pretrial detainee's 500-day stint in administrative segregation in *Magluta v. Samples*, 375 F.3d 1269, 1282 (11th Cir. 2004)). *See also Lekas v. Briley*, 405 F.3d 602, 611 (7th Cir. 2005) (90-day confinement did not present an atypical and significant hardship); *Williams v. Gonzalez*, No. 3:24-CV-355-LC-HTC, 2025 WL 715755, at *4 n.5 (N.D. Fla. Feb. 20, 2025), *report and recommendation adopted*, No. 3:24-CV-355-LC-HTC, 2025 WL 711532 (N.D. Fla. Mar. 5, 2025) (citations omitted) (same); *Smith v. Salter*, No. CV 16-0588-CG-N, 2017 WL 3142081, at *3 (S.D. Ala. June 26, 2017), *report and recommendation adopted*, No. CV 16-0588-CG-N, 2017 WL 3142063 (S.D. Ala. July 21, 2017) (citations omitted) (same); *Joe v. Nelson*, No. 5:14-CV-0184-MTT-CHW, 2014 WL 2930856, at *3 (M.D. Ga. June 27, 2014) (same); *Dubose v. Allen*, No. 7:13-CV-152 HL, 2014 WL 287501, at *3 n.3 (M.D. Ga. Jan. 24, 2014) (citations omitted) (74-day confinement did not present an atypical and significant hardship); *Baer v. Abel*, No. 5:11-CV-00248-MP-CJK, 2012 WL 4466349, at *6-7 (N.D. Fla. Sept. 26, 2012) (71-day confinement did not present an atypical and significant hardship).

Moreover, other courts have held that inmates do not have protected liberty interests in visitation privileges. *See Overton v. Bazzetta*, 539 U.S. 126, 131, 134 (2003) (upholding a two-year restriction on visitation privileges and noting that prison confinement requires the surrender of liberties and privileges enjoyed by other citizens); *Fuller v. Gates*, 656 F. App'x 944, 946 (11th Cir. 2016) (unpublished) (per curiam) (concluding the revocation of plaintiff's telephone and visitation privileges for 45 days following a disciplinary infraction "did not impose an 'atypical and significant hardship on' [plaintiff] or affect the duration of his sentence" (quoting *Kirby*, 195 F.3d at 1291); *Charriez v. Sec'y, Fla. Dep't of Corr.*, 596 F. App'x 890, 896 (11th Cir. 2015) (per curiam) (holding loss of visitation privileges for unspecified duration did not amount to a deprivation of a constitutionally protected liberty interest); *Moulds v. Bullard*, 452 F. App'x 851, 854-55 (11th Cir. 2011) (unpublished) (per curiam) (temporary loss of privileges and disciplinary confinement did not deprive the plaintiff of a constitutionally protected liberty interest that would trigger due process protections); *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (special housing unit confinement for nine days and loss of commissary privileges for 30 days did not implicate a protected liberty interest); *Carey v. Tunstall*, No. 2:19-cv-01636-LSC-SGC, 2021 WL 3009738, at *7 (N.D. Ala. June 10, 2021) ("In any event, the sanctions [plaintiff] suffered – 30 days of segregation and 30 days of loss of canteen, visitation, and telephone privileges – do not rise to the level of 'atypical and significant hardship,' such that a constitutional violation is stated."

30

(collecting cases)), *report and recommendation adopted*, 2021 WL 2982100 (N.D. Ala. July 15, 2021); *Bass v. Wilson*, No. 14-0521-CG-B, 2015 WL 4742473, at *1, *5-6 (S.D. Ala. Aug. 10, 2015) (adopting report and recommendation which concluded the loss of phone and canteen privileges for 45 days, loss of visiting privileges for 180 days, and confinement to disciplinary segregation for 30 days did not amount to deprivation of a constitutionally protected liberty interest). Nor is there any state-created liberty interest in telephone, canteen, or visitation privileges in Alabama. *See Dumas v. State*, 675 So.2d 87, 88-89 (Ala. Crim. App. 1995).

Less frequent showers, limited access to preferred hygiene products, and temporary location in a smaller cell generally do not present atypical and significant hardships that trigger due process protection. *See Smith v. Deemer*, 641 F. App'x 865, 867 (11th Cir. 2016) (Inmate did not allege atypical and significant hardships when, among other issues, "he was confined to a relatively small cell with a cellmate who had not been screened for compatibility; . . . he was deprived of some personal property, including medicated shampoo; he had fewer changes of clothing and opportunities to shower than the regular prison population; [and ]he was not provided a toothbrush and toothpaste."). Nor do exercise restrictions, as long as the facility allows the inmate some exercise. *See Anthony v. Warden*, 823 F. App'x 703, 707-08 (11th Cir. 2020) (no atypical and significant hardship from lack of daily outdoor exercise when inmate could sometimes walk, restrained, outside his cell, and he could exercise inside his cell

31

whenever he desired); *Bunch v. Lumpkin Cty. Det. Ctr.*, No. 2:21-CV-0109-RWS-JCF, 2022 WL 22297112, at *3 (N.D. Ga. Jan. 31, 2022), *report and recommendation adopted sub nom. Bunch v. Lumpkin Cnty. Det. Ctr.*, No. 2:21-CV-109-RWS-JCF, 2022 WL 22296932 (N.D. Ga. Feb. 22, 2022) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) ("Plaintiff's lack of access to outdoor recreation is also not an 'atypical and significant hardship.'"); *Fernandez v. Dep't of Homeland Sec.*, No. 17-21455-CIV, 2017 WL 2191020, at *3 (S.D. Fla. Apr. 24, 2017), *report and recommendation adopted*, No. CV-17-21455-CIV, 2017 WL 2189599 (S.D. Fla. May 17, 2017) ("[C]ourts have held that changes in custody status, classification levels, or even certain privileges are generally not atypical deprivations which implicate a constitutionally protected liberty interest for due process purposes."); *Ferris v. Jones*, No. 4:14-CV-454-RH/GRJ, 2015 WL 4668297, at *7 (N.D. Fla. Aug. 5, 2015) (Inmate's "temporary loss of recreation, chapel, visitation, canteen, chow hall and law library privileges [did not] cause[] atypical and significant hardships.").

In addition,

> [t]he law is well settled that an inmate has no constitutionally protected interest in trade school or other educational program as the failure to place an inmate in any such program does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Thompkins v. Hayes*, No. 2:06-CV-1106-MEF, 2007 WL 128797, at *2 (M.D. Ala. Jan. 12, 2007) (quoting *Sandin,* 515 U.S. 472); *see also Eddins v. Carter*, No. 210-CV-188-TMH, 2010 WL 2232171, at *1 (M.D. Ala. Apr. 19, 2010), *report and recommendation adopted*, No.

210-CV-0188-TMH, 2010 WL 2232166 (M.D. Ala. June 3, 2010) ("[A]n inmate has no constitutionally protected interest in rehabilitative or educational programs . . . .").

Though other cases have held that extensive isolation can create an atypical and significant hardship, they have only done so when the isolation period lasted much longer than William's 75-day segregation.  *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (indefinite confinement in a cell 24 hours a day and deprivation of almost all human contact contributed to the creation of an atypical and significant hardship); *Magluta*, 375 F.3d at 1276 (detainee confined "in solitary confinement (under conditions unlike other pretrial detainees or even convicted prisoners), locked in an extremely small, closet-sized space, and with minimal contact with other human beings for a prolonged time exceeding 500 days" suffered an atypical and significant hardship); *Williams*, 77 F.3d at 374 n.3 (assuming a full year of solitary confinement represented an atypical and significant hardship).

Considering the combination of all alleged conditions of Williams's disciplinary segregation – but especially the fact that the disciplinary period resulting from the challenged hearing on July 1, 2021, lasted only 75 days – the court concludes Williams has not alleged he suffered an atypical and significant hardship exceeding the ordinary conditions of prison life.  Accordingly, Williams did not possess a protected liberty interest that required due process prior to deprivation.  Permitting his procedural due process claim, even as restated in Count IX of the proposed Fourth Amended

Complaint, would constitute an exercise in futility.

### D.    Permitting the Remaining Counts Will Not Constitute an Exercise in Futility.

Williams's proposed allegations for the remaining counts in the Fourth Amended Complaint mirror those asserted for the applicable claims in the Third Amended Complaint. On December 13, 2024, this court found Williams asserted viable claims as to those causes of action. (Doc. 107, at 46-50). Accordingly, permitting Williams's proposed counts as to those claims will not constitute an exercise in futility.

### CONCLUSION AND ORDER

In accordance with the foregoing, the court court will **GRANT** Williams's motion to continue the deadline for amending pleadings and **PARTIALLY GRANT** his motion to file a Fourth Amended Complaint. The court **ORDERS** Williams to file a Fourth Amended Complaint that conforms with the requirements of this order within seven (7) days. The Fourth Amended Complaint may not contain any requests for monetary damages pursuant to RLUIPA, and it may not contain a claim for procedural due process.

**DONE** and **ORDERED** this 31st day of July, 2025.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE